Marc E. Albert, No. 345181
Tracey M. Ohm, No. 982727
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 728-3020
Fax (202) 572-9943
marc.albert@stinson.com
tracey.ohm@stinson.com

and

Bethany R. Benes (Va. Bar No. 85408; DC Bar No. 1686123)
*Admitted Pro Hac Vice*
BETHUNE BENES, PLLC
3975 Fair Ridge Drive
South Terrace Suite 25C
Fairfax, Virginia 22033
Tel.: (703) 260-9322
bbenes@bethunebenes.com

*Counsel for Karl Garcia*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 7 |
| | ) | |
| 819D LLC, | ) | Case No. 22-00101-ELG |
| | ) | |
| Debtor. | ) | **Hearing Date: Sept. 7, 2023** |
| | ) | **Hearing Time: 9:00 a.m.** |

**MOTION OF KARL GARCIA TO DISMISS CHAPTER 7 CASE**

Karl Garcia ("**Mr. Garcia**"), by counsel and pursuant to 11 U.S.C. § 707(a) and

Rule 1017 of the Federal Rules of Bankruptcy Procedure, hereby files this motion (the

"**Motion**") seeking dismissal of this proceeding filed by 819D LLC (the "**Debtor**" or

"**819D**"). In support thereof, Mr. Garcia respectfully represents as follows:

### I.   INTRODUCTION

819D is a far cry from the honest debtor in need of the "fresh start" afforded by

the Bankruptcy Code. When it filed a Chapter 11 petition, 819D had no ability to

reorganize.  The Debtor had not engaged in business operations for years, had no employees, did not file taxes in 2021, and remained in existence only to address the litigation described below.  819D has had no business income since 2017, and the funding to file the Chapter 11 case was provided by a related entity and co-defendant in litigation to avoid fraudulent and improper voluntary transfers that was pending in Fairfax County Circuit Court, which has been removed to the Bankruptcy Court.  Post-conversion efforts by 819D's insiders were designed to pressure the Chapter 7 Trustee to end the litigation for a small sum, including filing a declaratory judgement action against the trustee of an estate with no liquid assets on the same issues covered by the removed action.  The parties who stand to benefit from 819D's bankruptcy filing are not creditors or even the Debtor itself, but those entities and persons controlling the Debtor pre-conversion.  Such use of bankruptcy by the Debtor and its insiders is unfair to creditors and inconsistent with the fundamental purpose of bankruptcy.  Dismissal of this case is appropriate for "cause" under Bankruptcy Code § 707(a), based on the absence of good faith.

## II.    RELEVANT FACTS

### A.    The Property.

1.      The Debtor was the developer and owner of a building known as "The Sanctuary", with an address of 819 D Street NE, Washington, DC (the "**Property**").  *See* the Declaration of Karl Garcia (hereafter "Garcia Decl.") attached hereto, ¶ 4.

2.      In or around April 2017, Mr. Garcia purchased Unit 34 within the Property from 819D.  As an owner of a unit within the Property, Mr. Garcia is also a member of homeowners' association known as The Sanctuary Condominium Unit Owners

Association (the "**Association**") and has certain rights with regards to the Property's Common Area Elements, as defined by the Association's governing documents. Garcia Decl., ¶ 5.

3.      While the legal title of Unit 34 transferred from 819D to Mr. Garcia, 819D's officers Andrew Rubin ("**A. Rubin**") and Michelle Tygier ("**Ms. Tygier**") and related entity The Rubin Group, LLC ("**The Rubin Group**") were intricately involved during the purchase process between 819D and Mr. Garcia. Garcia Decl., ¶ 6.

4.      Unbeknownst to Mr. Garcia at the time, A. Rubin, Tygier, 819D, and The Rubin Group were aware that the Property suffered from serious defects prior to the transfer of Unit 34 to Mr. Garcia. Garcia Decl., ¶ 7.

5.      After moving into Unit 34, Mr. Garcia uncovered multiple defects within Unit 34 and the Property through professional inspections and analysis, including but not limited to extremely high humidity and moisture levels (80-90% moisture inside the unit); a large, gaping hole in Unit 34's HVAC closet exposing the Unit to the outside elements; missing mortar on the façade's exterior; missing portions of the Property's brick chimney stack; a pigeon infestation in the Property's attic including evidence of feces built up over many years, causing significant health risks to the residents and guests of the Property; and a significant and reoccurring water leak in the Property's bell tower, resulting in downpours of water infiltrating Unit 34. Garcia Decl., ¶ 8.

6.      Mr. Garcia and the Association provided notice of the defects to the Debtor and its principals with the expectation that the issues would be resolved. Despite these efforts, the defects remained. Garcia Decl., ¶ 9.

### B.    Litigation Regarding the Property.

7.    On or about December 11, 2018, Mr. Garcia filed a formal structural
defect warranty claim relating to Unit 34 with the Department of Housing and
Community Development in the District of Columbia.  Garcia Decl., ¶ 10.

8.    Mr. Garcia subsequently filed an action in the Superior Court of the
District of Columbia asserting claims against 819D d/b/a The Rubin Group and other
parties, including the Association and the realtor Long & Foster d/b/a Urban Pace, in an
action titled *Karl Garcia v. 819D LLC, et al.,* Case No. 2020 CA 002540 B (the "**Garcia
Property Action**") on or about May 18, 2020.  Garcia Decl., ¶ 11.

9.    The Garcia Property Action includes claims for breach of warranty, fraud,
violations of the DC Consumer Protection Act, and rescission and seeks damages totaling
no less than Four -Million, Five Hundred and Seventy-Five Thousand Dollars
($4,575,000.00), plus interest, punitive damages, and attorneys' fees.  *Id.*

10.    As a result of the defects to the Property caused by 819D, the Association
also filed suit against the Debtor in the Superior Court of the District of Columbia
alleging breach of warranty claims and damages, in an action titled *The Sanctuary Unit
Owners Association v. 819D*, Case No. 2021 CA 004683B (the "**Association Property
Action**" and collectively with the Garcia Property Action, the "**Property Actions**").

11.    In fact, litigation permeates every aspect of the Property and 819D as its
developer.  In addition to the Garcia Property Action and the Association Property
Action, 819D hired a general contractor to revamp the Property, and wound up with a
default judgment of dubious collectability against Potomac Construction Group, LLC
following allegations of fraud and breach of contract, including breach of warranty.

CORE/3525930.0002/182459654.3

819D hired a real estate agent for the Property, and that agent, Long & Foster Real Estate d/b/a Urban Pace, filed a cross-claim against 819D in the Garcia Property Action. The litigation even extends among the Debtor's insiders and related parties. Father Robert Rubin ("**R. Rubin**"), mother Ms. Tygier, and son A. Rubin (collectively, the "**Rubin Family**") and the eleven companies they own and operate (the "**Entity Defendants**") have engaged in litigation with each other, and within that litigation have alleged improper distributions relating to a variety of entities, including 819D.[1]

12.     Even a co-defendant in the Improper Transfers Action described below (and purported member of the Debtor) has raised allegations of fraud and identify theft in connection with 819D. Christos Economakis, who is listed as a Class B member of 819D, has contacted the Trustee alleging that he never had a membership interest in the Debtor and that he was taxed for transfers (subject to the fraudulent/improper transfer litigation described below) that were distributed to a third party. *See* **Ex. A**: Email from Christos Economakis to Trustee Ross and his counsel claiming "this company was set up on false pretenses." *See also* **Ex. B**: Email from Christos Economakis to the accountant who distributed the 819D funds in question, claiming, "This was a fraud perpetrated by someone inside the company to hide assets."

C.     **Improper Transfer Litigation.**

13.     From and after April 2017, the Debtor and its insiders transferred away substantially all of the proceeds relating to the Property.

---

[1] Since 2019, the Rubin Family has filed no less than four lawsuits against each other in DC, Maryland, and Virginia. *See Andrew Rubin v. Michelle Tygier,* DC Superior Court Case No. 2019 CA 004364B; *Canal View Holdings and Andrew Rubin v. Tygier and TR Holdings,* DC Superior Court Case No. 2019 CA 004365B; *Canal View Holdings v. TR Holdings & The Rubin Group,* Fairfax Circuit Court Case No. CL-2019-9270; and *TR Holdings v. Andrew Rubin,* Anne Arundel Circuit Court Case No. C-02-CV-21-641.

14.    On October 30, 2020, Mr. Garcia filed a complaint in the Fairfax County Circuit Court (the "**Fairfax Court**") relating to the improper conveyances made by Ms. Tygier, R. Rubin, A. Rubin, and the eleven entities they own, operate, and/or control including 819D (the "**Rubin Defendants**") to siphon away what was believed at that time to total approximately half of a million dollars, initiating an action titled *Karl Garcia v. The Rubin Group, et al.,* Case No. CL-2020-17040 (the "**Improper Transfers Action**"). Garcia Decl., ¶ 12.

15.    During the course of discovery, Mr. Garcia learned of additional transfers made by the Rubin Defendants, as well as additional grantees involved in the transfers. Garcia Decl., ¶ 13.  As a result, with leave of Court, Mr. Garcia amended his claims on February 26, 2021, November 18, 2021, and March 23, 2022.  Mr. Garcia's current pleading, the Third Amended Complaint, asserts improper transfers between the Rubin Defendants and six additional Defendants totaling more than $6 million.  *Id.  See* **Ex. C**: Third Amended Complaint.

16.    While the Improper Transfers Action proceeded in the Fairfax Court for over a year and a half, the Rubin Defendants forced an endless need for motions practice, including no less than 54 motions filed in the Court as a result of their gamesmanship. Garcia Decl., ¶ 14.  Out of the 35 motions determined by the Court, <u>all motions were granted in favor of Mr. Garcia[2], including the dismissal by the Virginia Supreme Court of the Rubin Defendants' interlocutory appeal</u>.  The litigation was not limited to heavy motions practice; the litigation involved extensive discovery including subpoenas to 17

---

[2] A. Rubin filed a Motion to Compel against Mr. Garcia, which the Court found "moot" as Mr. Garcia had complied with his discovery obligations to date.

different third-parties, more than 519,000 pages of documents produced, and numerous depositions, including 819D's deposition scheduled to begin on June 20, 2022. *Id.*

17.     Throughout the course of the litigation in the Improper Transfers Action, the Rubin Defendants continuously violated the Rules of the Virginia Supreme Court, forcing Mr. Garcia to file multiple motions to compel each step of the way to obtain discoverable materials for which Mr. Garcia was entitled. Garcia Decl., ¶ _. For example, although a file purportedly containing books and records was eventually produced, Mr. Garcia was never provided with a password to allow access to the Quickbooks file. *Id.*

18.     In addition to compelling the respective Rubin Defendants to comply with discovery, the trial court finally awarded Mr. Garcia monetary sanctions against A. Rubin (including a finding by the Court that A. Rubin has "stonewalled" discovery (see **Ex. D**: Order dated March 29, 2021), and against 819D in the amount of $9,532.50 (*see* **Ex. E**: Order dated May 20, 2022). Garcia Decl., ¶ 16. The Fairfax Court's May 20, 2022 sanctions Order reserved for determination whether 819D's defenses would be struck as requested by Mr. Garcia as a result of 819D's persistent and intentional discovery violations and ordered the sanctions be paid by June 20, 2022.

19.     On June 17, 2022, the Fairfax Court also granted in part a Motion for Sanctions against 11 of the Rubin Defendants, compelling each to provide full and complete responses to discovery responses pursuant to two prior Court Orders by Friday, June 24, 2022 or face further sanctions (*see* **Ex. F**: Order dated June 17, 2022). Garcia Decl., ¶ 17.

CORE/3525930.0002/182459654.3

D.    **Chapter 11 Bankruptcy.**

20.    After 8:00 pm on June 19, 2022 – the night before 819D was to pay the sanctions award and appear for its scheduled deposition in the Improper Transfers Action – 819D filed a voluntary Chapter 11 petition initiating the above-captioned bankruptcy proceeding.

21.    The filing fee and retainer for Debtor's counsel totaling $26,738.00 was paid by Canal View Holdings LLC ("**Canal View**"), an entity owned by A. Rubin, both co-defendants in the Improper Transfers Action.  [Dkt. No. 22[3]].

22.    The assets listed by the Debtor included cash in the amount of $356.06, restricted funds in the amount of $365,008.42 that secure the warranty bond relating to the Property, expired insurance policies owned by Potomac Construction Group with Erie Insurance (with a total policy value of $16,200,000), an insurance policy with Hartford Mutual Insurance group valued at $3,000,000 in the aggregate, and an uncollectable default judgment against defunct entity Potomac Construction Group in the amount of $339,384.13. [Dkt. No. 18].

23.    In response, the Fairfax County Circuit Court took the position that the Improper Transfers Action was stayed with regards to 819D only pursuant to 11 U.S.C. § 362 and was set to proceed against all non-debtor defendants.  Garcia Decl., ¶ 18. Accordingly, on June 22, 2022, 819D filed a Notice of Removal pursuant to 28 U.S.C. § 1452 to remove the Improper Transfers Action in its entirety and against all defendants to this Court.  *Id.* [Dkt. No. 40].

---

[3] Unless otherwise indicated, docket entries are references to Case No. 22-00101.

CORE/3525930.0002/182459654.3

24. In response to 819D's Notice of Removal, the Rubin Defendants and Jeffrey Houle filed improper Motions to Dismiss Mr. Garcia's Third Amended Complaint. [Dkt. Nos. 1, 15, 16, Adv. Proc. No. 22-10009]. Not only were the Motions filed without any proper procedural basis, they were near mirror images to Demurrers and Motions to Dismiss filed by the respective Rubin Defendants that had already been rejected by the Fairfax County Circuit Court on numerous occasions. The filings made it clear that the defendants are simply taking advantage of the forum shopping they have engaged in through their bankruptcy filing on behalf of 819D and are hoping for a different result here. The motions, along with Mr. Garcia's motion to strike the motions to dismiss [Dkt. No. 20, Adv. Proc. No. 22-10009], remain pending in the Improper Transfers Action adversary proceeding, Adv. Proc. No. 22-10009-ELG.

25. The Debtor later also removed the Garcia Property Action and the Association Property Action to the Bankruptcy Court. [Dkt. Nos. 53, 102].

26. Mr. Garcia filed a motion to dismiss the Chapter 11 bankruptcy. [Dkt. No. 41, withdrawn post-conversion at Dkt. No. 147]. Once in the courtroom, and at the start of the October 12, 2022 hearing set on that motion (after all other parties in interest and the Court had prepared for the hearing), 819D converted its case to Chapter 7. [Dkt. No. 111].

27. Bryan S. Ross ("**Trustee Ross**") was appointed as trustee of the Debtor's Chapter 7 estate. [Dkt. No. 111].

28. According to the fee application filed by Debtor's counsel, the Debtor incurred fees and expenses of $157,931.08 in the four months that the defunct company

CORE/3525930.0002/182459654.3

was in Chapter 11, exceeding the retainer paid by Canal View by well over $100,000.

[Dkt. No. 166].

### E.    Chapter 7 Bankruptcy.

29.    Following conversion to Chapter 7, the Rubin Defendants and other

defendants to the Improper Transfers Action lost the ability to smother the Improper

Transfers Action by directly controlling the actions of the Debtor.  They then turned their

attention to engaging in strong-arm tactics to place pressure on Trustee Ross and

otherwise attempt to control the direction of the bankruptcy case.

30.    On March 3, 2023, A. Rubin and Canal View filed a complaint against

Trustee Ross seeking a declaratory judgment that the plaintiffs did not engage in any

fraudulent or avoidable transfers, the same issues before the Court in the Improper

Transfers Action.  The complaint initiated Adversary Proceeding No. 23-10009 (the

"**Declaratory Judgment Action**").  [Dkt. No. 128].

31.    After the complaint was filed TR Holdings LLC, The Rubin Group LLC,

Robert Rubin, and Michelle Tygier moved to intervene in the Declaratory Judgment

Action and then filed a third party complaint also seeking a declaratory judgment that the

plaintiffs did not engage in any fraudulent or avoidable transfers.  [Dkt. Nos. 5, 13, Adv.

Proc. No. 23-10009].

32.    In order to preserve the potential to recover any assets for the estate,

Trustee Ross was then forced to defend the Declaratory Judgment Action with no assets

in the estate with which to do so.

33.    In a similar vein, after Trustee Ross indicated that he would be filing a

motion seeking approval of an agreement to sell/settle with Mr. Garcia, the Rubin

Defendants filed motions for summary judgment in the Improper Transfers Action.  [Dkt. Nos. 27, 53, Adv. Proc. No. 22-10009].

34.    One week before the hearing on the motion to approve the settlement with Mr. Garcia, the majority of the defendants in the Improper Transfers Action: The Rubin Group, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore Partners LLC, TRG Development LLC, 638 Newton Partners LLC, A. Rubin, Ms. Tygier, R. Rubin, Canal View, Gregory Auger, II, Gregory Auger, III, Thomas D. Madison and Jeffrey Houle (collectively, the "**Settling Defendants**"), made an offer to Trustee Ross to settle the Improper Transfers Action. Despite acknowledging through counsel that this appears to be a "catch and kill bankruptcy" intended to end the Improper Transfer Action litigation, Trustee Ross accepted the offer and filed a motion to approve that settlement [Dkt. No. 142].

35.    The Settling Defendants' agreement with the Trustee involves them paying a total of $150,000, $75,000 of which would go to the Debtor's estate, and $75,000 of which would go to supplement the warranty bond that secures the warranty claim relating to the Property that have been filed with the Department of Housing and Community Development in the District of Columbia by Mr. Garcia and the Association.[4]  The Settling Defendants also release their claims against Trustee Ross and the bankruptcy estate, including the Declaratory Judgment Action and the proofs of claim filed by Ms. Tygier, A. Rubin and Canal View.  [Dkt. No. 142, ¶ 2-3].

---

[4] Debtor's counsel Hirschler Fleischer, P.C. has opposed this element of the Settling Defendants' proposed agreement with Trustee Ross that directs $75,000 to supplement the warranty bond on the grounds that it violates Sections 507(a) and 726(b) of the Bankruptcy Code to the detriment of administrative claimants such as itself.

36.    In return, all of the defendants in the Improper Transfers Action will receive global releases and waivers, including releases of any fraudulent conveyance claims.  [Dkt. No. 142, ¶ 4].

37.    The Rubin Defendants have even extended their efforts to control the direction of the bankruptcy case by weighing in on stay relief motions relating to litigation to which they are not parties.  In late May 2023, Michelle A. Tygier, Robert Rubin, The Rubin Group LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, 638 Newton Partners LLC, and K Street Holdings LLC (the "**Tygier Parties**") filed a joinder to a motion for relief from the automatic stay filed by the Debtor pre-conversion, seeking stay relief in connection with arbitration and a related appeal in the Garcia Property Action.[5] [Dkt. No. 136].

38.    The Tygier Parties are not defendants in the Garcia Property Action.  Nor is resolution of the Improper Transfers Action dependent on the resolution of the Garcia Property Action (*see* **Ex. G**: Order dated April 29, 2021, Ex. A, p. 10).

39.    On June 23, 2023, Trustee Ross resigned as Chapter 7 Trustee for 819D, and Wendell Webster ("**Trustee Webster**") was appointed as replacement trustee.  [Dkt. No. 162].  Trustee Webster retained the same counsel as his predecessor, McNamee Hosea, P.A. [Dkt. No. 163].

40.    On July 5, 2023, Debtor's counsel, Hirschler Fleischer, P.C., filed a first and final application for allowance and authorization of payment of fees and expenses

---

[5] A group of the Rubin Defendants styled as "The Eleven Defendants" and consisting of 2233-40th Partners, LLC, 638 Newton Partners, LLC, 819 Capital LLC, K Street Holdings, LLC, Michelle Tygier, Robert Rubin, South Glebe, LLC, The Rubin Group LLC, TR Holdings LLC, TRG Development, LLC and Woodmore Partners, LLC also filed a response in support of the motion in September 2022 [Dkt. No. 105]. None of The Eleven Defendants are defendants in the Garcia Property Action.

CORE/3525930.0002/182459654.3

totaling $157,931.08 incurred between 819D's June 19, 2022 Chapter 11 bankruptcy

filing and conversion of the case to Chapter 7 on October 12, 2022.  [Dkt. No. 166].

41.     The Acting United States Trustee for Region 4 (the "U.S. Trustee") filed a

limited objection to the fee application [Dkt. No. 175], noting, *inter alia*, that "[i]t is also

unclear if these actions were for the benefit of the estate or for the benefit of an insider."

Limited Objection, P. 23.  Trustee Webster and Mr. Garcia filed joinders to the U.S.

Trustee's limited objection.  [Dkt. Nos. 176 and 177, respectively].

## III.  **ARGUMENT**

Mr. Garcia seeks dismissal of 819D's bankruptcy case for "cause" under § 707(a)

of the Bankruptcy Code on the basis of bad faith.

### A.     **Legal Standard.**

Section 707(a) of the Bankruptcy Code provides that "[t]he Court may dismiss a

case under this chapter only after notice and a hearing and only for cause…"  11 U.S.C.

§ 707(a).  As this Court explained in *In re Campbell*, 634 B.R. 647 (Bankr. D.D.C. 2021),

"bankruptcy courts routinely treat dismissal for prepetition bad-faith conduct as implicitly

authorized by the words 'for cause.'"  *Id.* at 653 (citing *Marrama v. Citizens Bank*, 549

U.S. 365, 373 (2007).  When ruling on a motion to dismiss under Section 707(a), the

court has discretion and should be guided by equitable principles.  *Id.* (citing *Smith v.*

*Geltzer*, 507 F.3d 64, 73 (2d. Cir. 2007).  An evaluation of bad faith requires the

consideration of "the totality of the circumstances underlying each case to determine

whether a debtor has acted in bad faith."  *Id.* (citing *Janvey v. Romero*, 883 F.3d 416, 412

(4th Cir. 2018).  In doing so, "courts look at the totality of the circumstances leading up

to the filing of the case including the debtor's motive in filing, the purposes which will be

achieved in the case, and whether the debtor's motive and purposes are consistent with the purpose of Chapter 7." *In re Boca Village Ass'n, Inc.*, 422 B.R. 318 (Bankr. S.D. Fla. 2009). "The Third Circuit has also stated that "Bankruptcy Courts may reasonably find that bad faith exists where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose." *In re Crest by the Sea, LLC*, 522 B.R. 540, 547 (Bankr. D. N.J. 2014) (citing *In re Myers*, 491 F.3d 120,125 (3d Cir. 2007)) (internal citations omitted); *see also In re Lots by Murphy, Inc.*, 430 B.R. 431, 435 (Bankr. S.D. Tex. 2010) (in evaluating whether a Chapter 7 corporate debtor filed in bad faith noting common fact patterns presented in cases where filing in bad faith was found – "[g]enerally these cases involved an asset poor debtor, with no employees other than the principals involved, no cash flow, often only one creditor, and a pending state court suit between the debtor and a creditor") (citing *Little Creek Dev. Co. v. Commonwealth Mort. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1073 (5th Cir.1986)).

In considering the totality of the circumstances in connection with alleged bad faith filing by an individual debtor in *Campbell*, this Court found the following factors most relevant:

(1) the improper or unexplained transfers of assets prior to filing;

(2) the debtor's lack of candor and completeness in statements and schedules, such as misstatements of assets, income or expenses to disguise financial condition of debtor or estate;

(3) the debtor has sufficient resources to repay debt(s) that stand to be discharged;

(4) the debtor failed to attempt to repay creditors, despite having means to do so;

(5) the debtor maintains a lavish lifestyle, with excessive expenditures;

(6) the debtor's use of bankruptcy relief would be unfair to creditors and inconsistent with the fundamental purpose of bankruptcy to afford a fresh start to

14

> an honest but unfortunate debtor, including, but not limited to whether: (a) the
> debtor's petition is part of a pattern to evade a single creditor; (b) the debtor paid
> all but one creditor prior to filing the petition; and (c) the debtor paid insider
> creditors prior to filing the petition.

*Campbell*, 634 B.R. at 654-655.

Courts considering bad faith in the context of corporate debtors have found the following factors to be relevant: "whether (1) the case was filed in response to a judgment; (2) there is an intent to avoid a large, single debt; (3) the debtor transferred assets; and (4) the debtor employed a deliberate and persistent pattern of evading a single major creditor." *In re Atlas Red-D Mix, Inc.,* 544 B.R. 648, 653-54 (Bankr. S.D. Ind. 2015). The "overarching inquiry is whether 'the bankruptcy code is being used properly' or whether the bankruptcy case implicates 'any of the policies underlying the chapter in which the debtor seeks protection.'" *Id.* at 654 (quoting *In re American Telecom Corp.*, 304 B.R. 867, 869 (Bankr. N.D. Ill. 2004). When discussing the fundamental purposes of bankruptcy, courts sometimes refer to the "twin pillars", consisting of "(1) the discharge of the debtor, in order to obtain a "fresh start"; and (2) the satisfaction of valid claims against the estate." *Lots by Murphy*, 430 B.R. at 436. However, "the objective of providing the honest but unfortunate debtor with a fresh start is not served in a corporate Chapter 7 case because corporate debtors are ineligible for discharge." *Boca Village Ass'n*, 422 B.R. at 324 (citing 11 U.S.C. § 727(a)(1)). As a result, "the only purpose served in a corporate Chapter 7 case is the fair and orderly liquidation of corporate assets to creditors." *Id.*

### B.      Dismissal of this Bad Faith Filing is Appropriate.

As set forth below, the motives for which the 819D bankruptcy case was filed are inconsistent with the fundamental policy of Chapter 7 corporate bankruptcy, and the case

serves no bankruptcy purpose.  Upon consideration of the totality of the circumstances surrounding the case, cause exists to dismiss the 819D bankruptcy case on the basis of bad faith.

From the start 819D was an assetless debtor (but for the pending Improper Transfers Action), with no employees other than the principals/co-defendants involved, and no cash flow.  There was no possibility of rehabilitation nor of reorganization.  There was, however, a pending state court suit between the Debtor and a creditor where sanctions were issued against the Debtor and its co-defendant insiders with the strong possibility that their defenses would be struck in a case involving damages upwards of $6,000,000.00 and the risk of judgments against the parties personally.

1.    Improper Prepetition Transfers Occurred

One of the factors to be considered in evaluating bad faith is the occurrence of improper transfer of assets prior to filing.  *See Campbell*, 634 B.R. at 654-655.  At the time it filed Chapter 11 bankruptcy, 819D no longer had even the one tangible asset underlying the purpose for which it was formed, the Property.  No hard assets are listed on its Schedule B.  In fact, the majority of 819D's alleged assets are expired insurance policies of third parties and an uncollectable judgment.  The remaining assets of approximately $365,000 are funds being held in escrow pursuant to D.C. Code § 42-1903.16 to satisfy any warranty claims against 819D.

The Debtor already voluntarily and intentionally distributed all of its assets to insiders, with no concern over previously known claims held by creditors with superseding claims to payment.  This is the subject of the Improper Transfers Action, which was initiated by Mr. Garcia prepetition.  Due to the timing of the transfers years

16

prior, a bankruptcy filing wherein a Chapter 7 trustee seeks to avoid improper transfers

provides no advantage to creditors as opposed to the Improper Transfers Action by Mr.

Garcia.  Although the Commonwealth of Virginia applies the law of laches to fraudulent

conveyances, as of the date of the bankruptcy petition, the five-year statute of limitations

to avoid improper voluntary conveyance pursuant to Virginia Code § 55.1-40 had run as

to bar recovery of several of the transfers at issue.  *See* Va. Code § 8.01-253.  Nor, given

the nature of the remedies available in the Improper Transfers Action, would one creditor

benefit at the expense of all others – if the Improper Transfers Action is successful the

improper transfers would be unwound to the benefit of all creditors – arguably satisfying

one of the pillars of bankruptcy better than the bankruptcy proceeding itself.

> 2.    Debtor's Use of Bankruptcy Is Inconsistent with the Fundamental
Purpose of Bankruptcy

Not only did improper transfers occur prior to the 819D bankruptcy filing, the

quashing of Mr. Garcia's efforts to recover those improper transfers was the impetus of

that filing.  Avoiding the Improper Transfers Action litigation was the motivating factor

behind 819D's Chapter 11 petition, for 819D, but as much, if not more so, for the non-

debtor defendants to the Improper Transfers Action/819D insiders.  It is obvious that the

timing of 819D's bankruptcy was chosen to avoid (i) the sanctions award entered against

it (and for which payment was due the next day); (ii) the Fairfax Court's striking of

819D's defenses as a result of 819D's continued violations of the Fairfax Court's Orders

(including the most recent sanctions Order compelling full and complete disclosure of

819D's Quickbooks records for which 819D turned over a password protected file and

failed to give the required password); (iii) sitting for a deposition scheduled to be taken

CORE/3525930.0002/182459654.3

the morning after 819D's eleventh-hour bankruptcy filing; and (iv) the impending

judgment against 819D in the Fairfax Court where the Rubin Defendants were having no

success, pretrial deadlines were set to expire, and trial was set to begin three months later

in September.  However, the automatic stay stopped that litigation as to 819D.  The

Debtor's immediate filing of a notice of removal revealed the strategy employed to use

the 819D bankruptcy filing to halt the Improper Transfers Action as to all defendants and

place 819D in the plaintiff's role by asserting the right to pursue fraudulent conveyances

on behalf of the estate, thus allowing all of the defendants to avoid further litigation with

Mr. Garcia.  In essence, corporate insiders, now in control of a debtor in possession, were

in position to determine whether the estate should pursue the claims at issue in the

Improper Transfers Action (now an asset of the estate) against those same corporate

insiders in their personal capacities.  The fact that the case was converted to Chapter 7

does not change the evaluation of the totality of the circumstances leading up to the filing

of the case.  If 819D had a legitimate bankruptcy purpose in filing bankruptcy the Debtor

should have filed under Chapter 7 *initially* to avoid the obvious conflicts inherent under

Chapter 11 as to its only potential asset, not to mention the substantial legal fees 819D

incurred in its adventures as debtor-in-possession, creating a high priority claim that now

looms over the case.

No bankruptcy purpose is served by the Debtor's bankruptcy case.  There will

certainly be no fresh start for 819D.  Even if the company had not converted the case to

Chapter 7, there are no employees, no cash flow, and no available sources of income.

Nor will 819D's bankruptcy fulfill the purpose of a "fair and orderly liquidation of

corporate assets to creditors."  *Boca Village Ass'n*, 422 B.R. at 324 (discussing

fundamental purpose of corporate Chapter 7 case). The Debtor had no assets that were not already subject to litigation. The Property Actions preserve property litigation claims, and the Improper Transfers Action preserves avoidance claims, with the potential for recoveries for the benefit of all creditors. It is clear that in filing a Chapter 11 case and converting that case to Chapter 7, 819D was "pursuing some other goal" rather than the relief intended by the Bankruptcy Code. *Id.*

The beneficiaries of the 819D bankruptcy are the Settling Defendants, who have employed every possible legal maneuver, whether legitimate or not, in an attempt to squash the Improper Transfers Action - in the Fairfax Court, in the Chapter 11 case, and after conversion to Chapter 7. Describing the actual purpose of the 819D insiders behind the bankruptcy filing, even counsel for Trustee Ross (and now Trustee Webster) described the acts of the 819D insiders at the May 10, 2023 hearing as:

> Mr. Fasano: I mean, let's look at the big picture here. This is what I would call a catch and kill bankruptcy...
>
> …
>
> A catch and kill – catch and kill. They have a fraudulent conveyance action that was brought by a creditor, right? And they bring it into this Court by removal. The trustee has no funding to pursue it, because the Debtor has no assets, hasn't done business in five years, right? So how are we going to pursue -- how are we going to hire experts to pursue this cause of action? And they want us to kill it. They want us to settle it on the cheap, right?
>
> And I don't think it's appropriate to be part of that process. I don't think that they should get to remove it to this Court, substitute in a new Plaintiff who they purposely underfunded.
>
> …
>
> They don't want to deal with the well-funded plaintiff; they want to deal with poor [Trustee] Bryan and me stuck in the middle of this. And that's, in my opinion, inappropriate.

*See* **Ex. H**: Excerpts from Transcript of May 10, 2023 hearing *In re 819D, LLC*, Case No. 22-00101, Bankr. D.D.C., 27:8-28:1; 46:25-47:3.

### 3.   Debtor's Use of Bankruptcy Would Be Unfair to Creditors

Despite the words of his counsel three weeks prior (but after the Rubin Defendants filed motions for summary judgment against the cash-poor estate in the Improper Transfers Action), at the time of Trustee Ross's resignation he was amenable to settling the Improper Transfers Action "on the cheap."  On May 31, 2023, Trustee Ross accepted the Settling Defendants' offer to resolve the Improper Transfers Action for a total of $150,000, just $75,000 of which would go to the estate [Dkt. No. 142].  The Debtor's use of bankruptcy to enable a low dollar settlement of the Improper Transfers Action after the post-petition actions of the Debtor and the other Settling Defendants have resulted in significant administrative claims against the estate would be unfair to creditors of 819D.

Counsel for Trustee Ross and Trustee Webster has surely incurred significant fees that will be Chapter 7 administrative expenses.  In addition, Debtor's counsel, Hirschler Fleischer, has filed a fee application for over $150,000 in fees and expenses incurred during the Chapter 11 case.  If allowed even in part (the Office of the United States Trustee, Trustee Webster, and Mr. Garcia have raised concerns over the allowance of the fees, including the question of whether they were incurred to benefit the Debtor or third parties), there will be no distribution to general unsecured creditors.  In contrast, if the bankruptcy case is dismissed the Property Litigation Actions and Improper Transfers Action could continue, preserving the rights of and proceeding to the benefit of all valid creditors.

CORE/3525930.0002/182459654.3

A review of the creditors in this case also contributes to the totality of the circumstances surrounding 819D's bankruptcy filing.  There are ten proofs of claim filed against the estate.  Two of the claims are relatively small general unsecured claims for taxes (federal and state).  Three of the claims relate to the Property Actions: Mr. Garcia's claim No. 7, the Association's claim and Long & Foster's claim.  One claim, Mr. Garcia's claim No. 8, relates to the Improper Transfers Action.  The other four claims were filed by insiders and attorneys for the Debtor.

A. Rubin and Ms. Tygier, both co-defendants in the Improper Transfers Action, have each filed indemnity claims against the estate, pursuant to which they portray themselves as creditors of the estate.  However, the D.C. Code and 819D's Operating Agreement limit indemnification to 819D's "Manager" – TRG Development LLC, another defunct Rubin Defendants' entity.  *See* D.C. Code § 29-804.08; *see also* **Ex. I**: Amended and Restated Operating Agreement of 819D LLC, Section 5.4.  As neither A. Rubin nor Ms. Tygier are the Manager of 819D, it appears neither has grounds for recovery of their purported indemnification claims.  A. Rubin and Ms. Tygier have offered to release these claims in the Settling Defendants' agreement with Trustee Ross.  Such release provides no benefit to the estate.

Canal View has also filed a proof of claim for repayment of the funds provided to the Debtor to pay the Chapter 11 filing fee and the retainer for Debtor's counsel.  This claim is similarly set to be released in the Settling Defendant's agreement with Trustee Ross.  However, the Debtor had no assets when the money was allegedly "lent." There also appears to be no documentation that fees were a loan.  As a result, Canal View's

status as a creditor of 819D is speculative at best, and the offer to withdraw this claim per the settlement with Trustee Ross provides no benefit to the estate.

The Law Firm of Mark Crawford has filed a proof of claim for all legal fees incurred on behalf of 819D in the Improper Transfers Action and Property Litigation Actions.  Similar to the doubts raised about the beneficiary of Hirschler Fleischer's action in the Chapter 11 case, substantial question exists as to whom benefitted from Mr. Crawford's legal efforts.  In addition, the Debtor had no assets when Mr. Crawford was retained.  The only asset to potentially pay the claim is the very cause of action the firm was defending when the fees were incurred.  Nonetheless, to the extent that it is a valid claim against 819D, even Mr. Crawford's firm could benefit from the dismissal of the bankruptcy case and continuance of the Improper Transfers Action.

## IV.    <u>CONCLUSION</u>

The Bankruptcy Court was not intended to be and should not be used as a calculated litigation strategy by those controlling a defunct company to steer the company into bankruptcy for the purposes of burying litigation and receiving global releases for their own benefit.  *See Crest by the Sea, LLC*, 522 B.R. at 547-51 (dismissing case as a bad faith filing in part upon finding that case was filed to frustrate state court action).  If this case is not dismissed, the Settling Defendants will have succeeded in this abuse of the bankruptcy process to the detriment of the creditors of 819D.  For the reasons set forth above, cause exists to dismiss the Debtor's case on the basis of bad faith, and upon doing so remand all removed cases to the courts from which they were removed and dismiss all other adversary proceedings.

WHEREFORE, Karl Garcia respectfully requests that this Court enter an order:

a)      granting the Motion;

b)      dismissing the above-captioned bankruptcy case; and

c)      upon dismissal of the above-captioned bankruptcy case, remanding all
removed cases to the courts from which they were removed; and

d)      upon dismissal of the above-captioned bankruptcy case, dismissing all
non-removed adversary proceedings; and

e)      granting such further and other relief as is just and proper.

Dated: August 15, 2023                    Respectfully submitted,

                                          /s/ Tracey M. Ohm
                                          Marc E. Albert, No. 345181
                                          Tracey M. Ohm, No. 982727
                                          STINSON LLP
                                          1775 Pennsylvania Ave., N.W., Suite 800
                                          Washington, DC 20006
                                          Tel. (202) 728-3020; Fax (202) 572-9999
                                          marc.albert@stinson.com
                                          tracey.ohm@stinson.com

                                          and

                                          Bethany R. Benes (Va. Bar No. 85408;
                                          DC Bar No. 1686123)
                                          *Admitted Pro Hac Vice*
                                          BETHUNE BENES, PLLC
                                          3975 Fair Ridge Drive
                                          South Terrace Suite 25C
                                          Fairfax, Virginia 22033
                                          Tel.: (703) 260-9322
                                          bbenes@bethunebenes.com

                                          *Counsel for Karl Garcia*

CORE/3525930.0002/182459654.3

## CERTIFICATE OF SERVICE

I certify that on this 15th day of August, 2023, I caused a true and correct copy of the foregoing Motion of Karl Garcia to Dismiss Chapter 7 Case to be served via the Court's ECF system upon the attorneys for the Debtor, the U.S. Trustee, and all counsel who have entered an appearance in this case.  In addition, I have caused copies to be sent via first class mail, postage prepaid, to the following:

819D LLC
1423 Sharps Point Road
Annapolis, MD 21409

Stephen E. Leach
Kristen Elizabeth Burgers
Hirschler Fleischer PC
8270 Greensboro Dr.
Suite 700
Tysons Corner, VA 22102

Michael T. Freeman
Kristen S. Eustis
Sara Kathryn Mayson
Office of the U.S. Trustee
1725 Duke Street
Alexandria, VA 22314

Alexander McDonald Laughlin
Odin, Feldman & Pittelman, P.C.
1775 Wiehle Avenue
Suite 400
Reston, VA 20190

Christopher Allan Glaser
Jackson & Campbell, P.C.
2300 N. St. NW
Suite 300
Washington, DC 20037

Laurin H. Mills
Mansitan Sow
Brian C. Clarry
Samek Werther Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314

Christopher Rogan
Rogan Miller Zimmerman, PLLC
50 Catoctin Circle, NE
Suite 300
Leesburg, VA 20176

Mark David Crawford
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Road
Suite 210
Arlington, VA 22201

Maurice Belmont VerStandig
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, NV 89012

Douglas E. McKinley
P O BOX 7395
Alexandria, VA 22307

John A. C. Keith
William B. Porter
Ian J. McElhaney
Blankingship & Keith
4020 University Drive
Suite 300
Fairfax, VA 22030

Justin Philip Fasano
McNamee Hosea, P.A.
6404 Ivy Lane
Ste 820
Greenbelt, MD 22070

CORE/3525930.0002/182459654.3

Brendan P. Bunn
Brad M. Barna
Chadwick, Washington, Moriarty,
Elmore & Bunn, P.C.
3201 Jermantown Road, Suite 600
Fairfax, Virginia 22030

Charles B Peoples
Thomas, Thomas & Hafer, LLP
1025 Connecticut Avenue
Suite 608
Washington, DC 20036

Timothy G Casey
Law Office of Timothy G. Casey
451 Hungerford Drive
Suite 505
Rockville, MD 20850

Robert Michael Gittins
Eccleston and Wolf, P.A.
7240 Parkway Drive
4th Floor
Hanover, MD 21076

Aaron Casagrande
Ice Miller L.L.P.
100 Light Street, Suite 1350
Baltimore, Maryland 21202

/s/ Tracey M. Ohm
Tracey M. Ohm

CORE/3525930.0002/182459654.3