# EXHIBIT G

**VIRGINIA:**

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

|  |  |
|---|---|
| **KARL GARCIA,** | ) |
| **Plaintiff,** | ) |
|  | ) |
| v. | )    **Case No.: 2020-17040** |
|  | ) |
| **THE RUBIN GROUP, LLC, *et al.,*** | ) |
|  | ) |
| **Defendants.** | ) |

### ORDER

THIS MATTER having come before the Court on (1) the Demurrer of Defendants The Rubin Group LLC, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore LLC, TRG Development LLC, 638 Newton Partners LLC, Michelle Tygier and Robert Rubin (the "Moving Defendants") to Plaintiff's Amended Complaint; (2) the Demurrer of Defendant Andrew Rubin to Plaintiff's Amended Complaint; and (3) the Motion to Compel Arbitration of Defendant 819D LLC and Supplemental Memorandum of Law in support of that motion; (4) the Opposition to Moving Defendants' Demurrer filed by Plaintiff Karl Garcia; (5) the Opposition to the Demurrer of Defendant Andrew Rubin filed by Plaintiff Karl Garcia; (6) the Opposition to the Motion to Compel Arbitration of Defendant 819D LLC filed by Plaintiff Karl Garcia; (7) the Supplemental Opposition to the Motion to Compel Arbitration of Defendant 819D LLC filed by Plaintiff Karl Garcia, and (8) the oral argument of counsel on April 2, 2021 and April 23, 2021;

In consideration of the arguments contained in said pleadings and the arguments of counsel heard in open Court during the April 2, 2021 and April 23, 2021 hearings; it is hereby

ORDERED that the Demurrers of the Moving Defendants and Andrew Rubin are overruled in part and sustained in part as set forth in the transcript attached hereto as Exhibit A, which is incorporated herein *pro haec verba,* as follows: (i) overruled with respect to Counts One and Two for the reasons stated by the Court, and (ii) sustained with respect to Counts Three and Four, which shall be dismissed with prejudice; and it is hereby

ORDERED that the Motion to Compel of Defendant 819D LLC is denied for the reasons stated by the Court, as set forth in the transcript attached hereto as Exhibit A, which is incorporated herein *pro haec verba*.

Entered this __29__ day of April 2021.

The Honorable Randy I. Bellows
Judge, Fairfax County Circuit Court

2

**SEEN AND OBJECTED TO FOR THE REASONS
SET FORTH IN THE MOVING DEFENDANTS' BRIEFS AND
DURING ORAL ARGUMENT:**


___/s/ Laurin H. Mills_____
Laurin H. Mills, Esq. (Va. Bar No.79848)
Kimberly Jandrain, Esq. (Va. Bar No. 72727)
Samek Werther Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
Tel.: 703-547-4693
Facsimile: 703-547-4694
laurin@samek-law.com
kim@samek-law.com
*Counsel for Defendants Michelle Tygier;*
*The Rubin Group, LLC;*
*819 Capital LLC;*
*K Street Holdings LLC;*
*TR Holdings LLC;*
*2233-40th Partners LLC;*
*South Glebe LLC;*
*Woodmore LLC;*
*TRG Development LLC;*
*638 Newton Partners LLC; and*
*Robert Rubin*


**SEEN AND Agreed as to the Court's denial of Defendant 819D LLC's Motion to
Compel Arbitration; Seen and Agreed as to the Court's ruling overruling of the
Demurrers as to Counts I and II; Seen and Objected to as to the Court's dismissal
of Counts III and IV for the reasons set forth in the pleadings and on the record:**


_____/s/ Bethany Benes_____
Bethany R. Benes (Va. Bar No. 85408)
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
Tel.: (703) 260-9322
bbenes@bethunebenes.com
*Counsel for Plaintiff Karl Garcia*

3

**SEEN and objected to as to denial of the Motion to Compel Arbitration and Dismiss or Stay Case for the reasons stated in open court and in 819D LLC's pleadings filed in support of its position:**

/s/ Mark Crawford
_____

Mark Crawford, Esq. (Va. Bar No. 36153)
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Road, Suite 210
Arlington, Virginia 22201
Tel: 202-256-1244
Facsimile: 703-522-2264
mcrawford@mdc-law.com
*Counsel for Defendant 819D LLC*


**SEEN AND AGREED AS TO THE DECISION REGARDING COUNTS III AND IV; SEEN AND OBJECTED TO FOR THE REASONS SET FORTH IN OPEN COURT AS WELL AS IN THE MEMORADNUM IN SUPPORT OF DEMURRER AS TO COUTSN I AND II :**


/s/ Christopher Glaser
_____

Christopher A. Glaser, Esq. (Va. Bar No. 43491)
Meagan E. Roach, Esq. (Va. Bar No. 87955)
Jackson & Campbell, PC
2300 N Street, N.W., Suite 300
Washington, DC 20037
Tel: 202-457-1600
Facsimile: 202-457-1678
cglaser@jackscamp.com
mroach@jackscamp.com
*Counsel for Defendant Andrew Rubin*

# EXHIBIT A

# In The Matter Of:

*Garcia v.*
*Rubin Group*

---

*Hearing*
*April 23, 2021*

---

*Misty Klapper & Associates*
*7900 Andrus Road*
*Suite 11*
*Alexandria, VA  22306*
*703-402-7555*

Original File garcia hearing.txt
**Min-U-Script®**

1

1   V I R G I N I A :

2           IN THE CIRCUIT COURT OF FAIRFAX COUNTY

3   -----------------------------x

4   KARL GARCIA                    :

5         Plaintiff,              :

6               v.                :   Case No. 2020-17040

7   THE RUBIN GROUP, LLC, et al., :

8         Defendants.             :

9   -----------------------------x

10                               April 23, 2021

11        The above-captioned hearing was held

12  remotely, via Webex, before The Honorable Bellows,

13  Judge, in and for the Circuit Court of Fairfax

14  County, Virginia, at 11:15 a.m., taken by

15  Carla D. Siegismund, a Notary Public in and for the

16  Commonwealth of Virginia, when were present on

17  behalf of the respective parties:

18

19

20

21

22

2

1                     A P P E A R A N C E S

2

3    ON BEHALF OF THE PLAINTIFF:

4              BETHANY R. BENES, ESQ.

5              Bethune Benes, PLLC

6              4290 Chain Bridge Road, Suite 302

7              Fairfax, Virginia  22030

8              bbenes@bethunebenes.com

9

10   ON BEHALF OF THE DEFENDANT ANDREW RUBIN:

11             CHRISTOPHER A. GLASER, ESQ.

12             Jackson & Campbell, P.C.

13             2300 N Street, N.W., Suite 300

14             Washington, D.C. 20037

15             202-457-1612

16             CGlaser@JacksCamp.com

17

18

19

20

21

22   (continued)

3

1                    A P P E A R A N C E S

2                         (continued)

3

4

5    ON BEHALF OF THE DEFENDANT 819D LLC:

6              MARK CRAWFORD, ESQ.

7              Law Offices of Mark D. Crawford, PLLC

8              1005 North Glebe Road, Suite 210

9              Arlington, Virginia 22201

10             mcrawford@mdc-law.com

11

12   ON BEHALF OF THE MOVING DEFENDANTS:

13             KIMBERLY JANDRAIN, ESQ.

14             LAURIN H. MILLS, ESQ.

15             Samek, Werther & Mills LLC

16             2000 Duke Street, Suite 300

17             Alexandria, Virginia 22314

18             703-547-4694

19             kim@samek-law.com

20

21

22

4

1                    P R O C E E D I N G S

2                    - - - - - - - - - - -

3          (Whereupon, the court reporter was sworn.)

4               THE COURT:  Before the Court is the

5     motion to compel to arbitration and the demurrers.

6     I've already heard argument on the motion to compel

7     arbitration, but I requested additional briefing,

8     which I received and have reviewed.  If there's

9     anything else anyone else wants to say on the

10    arbitration issue, I'm glad to hear that now and

11    then I'll decide that issue -- announce my decision

12    on that issue.

13              So any volunteers?

14              MR. CRAWFORD:  Your Honor, Mark

15    Crawford for 819D LLC, and I guess I'll volunteer

16    since it's my motion.

17              I don't really have anything to add to

18    the supplemental written argument that was provided

19    to the Court.  I would only say, and just very

20    briefly -- and I can discuss this in more detail if

21    the Court would like -- but very briefly,

22    Plaintiff's position in the supplemental opposition

5

1  to the motion to compel is, I suggest, simply not

2  persuasive on the question of can this case be fully

3  resolved in Fairfax absent a disposition in the

4  District of Columbia or in the face of a favorable

5  verdict for 819D in the District of Columbia.

6            And the primary case relied upon by

7  Plaintiff is very significantly distinguishable from

8  our case insofar as in that case Plaintiff already

9  had a judgment in hand against that defendant

10  creditor and the sum of plaintiff judgment exceeded

11  the amount of the transfer at issue.  So there was

12  no question that the full amount of the transfer

13  would potentially be available to the plaintiff in

14  that case if plaintiff could establish a fraudulent

15  transfer.  And that's simply not our situation here.

16            The measure of any personal judgment

17  that would be awarded by the Fairfax County Circuit

18  Court to Plaintiff would have to be measured

19  by -- assuming such a judgment was proper and could

20  be entered, but it would have to be measured by the

21  disposition of the D.C. dispute and what Plaintiff

22  established in terms of his own entitlements.

6

1          This court can't award a money

2   judgment for $2 million to Plaintiff irrespective of

3   the outcome of the District of Columbia litigation.

4   And we've set forth our position, I believe, on that

5   sufficiently in our pleadings.

6          Like I said, if the Court has

7   questions or would like me to address the issues in

8   greater detail, I can.  But other than that, I'll

9   emphasize that I don't have anything further at this

10  point.

11          THE COURT:  Benes.

12          MS. BENES:  Yes, Your Honor.  Bethany

13  Benes on behalf of Karl Garcia.  First, before I say

14  anything, I do want to thank the Court and counsel

15  for everybody's accommodations last week.  Me and my

16  family very, very much appreciate the kindness that

17  everyone showed.  I want to say thank you before I

18  say anything else.

19          As far as the question about whether

20  this case can fully be resolved here, the answer is

21  yes.  And counsel's attempt to distinguish this case

22  from the Price case really is a moot point because

1    nothing in Price says that a judgment must be

2    obtained first before an in personam judgment is

3    entered against those involved.

4                Such a ruling would actually

5    contradict the language of the statutes that

6    specifically say that this can be brought before

7    obtaining a judgment and that the Plaintiff is

8    entitled to all the relief that he otherwise would

9    have and that the Court is allowed to issue an order

10   against the debtor for the full amount of the claim.

11               Nothing in the statute requires or

12   conditions the judgment upon any prior or any

13   subsequent judgment in another case.  The case law

14   is very clear that a creditor includes a potential

15   creditor.  So I think that the attempt to

16   distinguish that is really not persuasive, Your

17   Honor.

18               And I did want to note that the motion

19   or the supplemental motion briefing that was filed

20   relied upon a case called La Bella Donna.  And

21   La Bella Donna did not change the ruling in Price.

22               La Bella  Donna was actually a case

1  that involved a note, not a transfer of money, and

2  so the note was able to be voided, quite simply,

3  which the Price Court noted that such a transfer of

4  money is not so simply voided.

5           Also, La Bella Donna related to a

6  conspiracy claim.  We don't have a conspiracy claim.

7  But the La Bella Donna holding was that a fraudulent

8  conveyance is not a predicate unlawful act for

9  liability in a conspiracy claim.  So because we

10  don't have any conspiracy claim here, that case is

11  not persuasive or binding or govern the issues here.

12           What is at issue here is that

13  Mr. Garcia is a creditor and that the improper

14  conveyances occurred.  And that does not require any

15  ruling or determination in any other case.  If

16  Mr. Garcia is successful here, he will have a

17  judgment pursuant to 55.1-400, 401 and 402,

18  potentially 403, and be entitled to immediate

19  enforcement.  This is consistent with the

20  legislature's intent, which was discussed in our

21  briefing, to punish defrauders.  This is a separate

22  wrong, and with the finding of a separate wrong

1   comes a separate enforceable judgment.

2                    THE COURT:  Anything else you want to

3   say, Mr. Crawford?

4                    MR. CRAWFORD:  Yes, Your Honor.

5                    The question before the Court and the

6   question that the Court specifically asked us to

7   address in our supplemental briefing was simply not

8   before the Court in Price.  The Court in Price

9   carved out a narrow exception to the general rule

10  that one cannot obtain an in personam judgment under

11  the specific facts of that case.  And every case

12  that's discussed Price has recognized as a, quote,

13  narrow exception that was fact specific to the facts

14  and circumstances there.  Any more on that, and I'll

15  be repeating myself.

16                   Beyond that, the reliance on the

17  language in section 402, 55.1-402, simply

18  contradicts Plaintiff's position that has been

19  asserted over and over in this case by Plaintiff,

20  that this case has nothing to do with the underlying

21  dispute in the District of Columbia.

22                   But when you have to go to the word to

10

1  say, any damages -- I'm paraphrasing a bit -- any

2  damages to which Plaintiff may be entitled against

3  that creditor, you can't go there without going to

4  the underlying dispute, which for numerous reasons

5  that we've already brief, I submit, is part and

6  parcel of what's at issue here, but you can't

7  separate those two things.

8              And it simply would turn the statute

9  on its head to say that you can just pick a number

10  that the damages are measured by the transfer and a

11  plaintiff can recover the full value of any

12  transfer, whether it's $10 or $10 million,

13  irrespective of whether that particular defendant

14  owes anything on any grounds to the plaintiff.  And

15  that is essentially the position that Plaintiff's

16  taking here.

17              THE COURT:  All right.  The motion to

18  compel arbitration is denied.  The Court finds this

19  matter could be resolved without there first being a

20  resolution of the D.C. case.  An action to void

21  fraudulent conveyance may proceed without first

22  obtaining a judgment against the debtor under

1   Virginia Code 55.1-402; In Luria versus Board of

2   Directors of Westbriar, 277 Virginia 359, 2009, thus

3   a creditor includes a potential creditor if the

4   debtor has actual or adequate notice of the claim.

5   Therefore, this action may proceed if Plaintiff is a

6   potential creditor of Defendants and Defendants had

7   actual or adequate notice of the claim.  Whether

8   Plaintiff properly pled that Defendants had adequate

9   or actual notice of the claim will be addressed in

10  the demurrer.

11            The next question is whether Defendant

12  is entitled to arbitrate this dispute.  The Court

13  finds Defendants not entitled to arbitrate this

14  dispute because this dispute is not a

15  contract-generated dispute.

16            Unlike the action currently stayed in

17  D.C. Superior Court, the Amended Complaint in this

18  case does not state a claim for breach of warranty

19  or breach of contract rising out of the sale of the

20  condominium, like the D.C. Superior Court case does,

21  rather Plaintiff here alleges Defendants

22  fraudulently conveyed asset -- Defendants

1   fraudulently conveyed assets, hiding assets to

2   render themselves judgment-proof.  That act does not

3   appear to be a, quote, contract-generated dispute

4   that arises out of or is related to the purchase

5   agreement.  So that's my decision on the motion to

6   compel arbitration.

7              We'll turn now to the demurrers, and

8   I'll here argument from you, Mr. Crawford, or

9   whoever is arguing.  Ms. Jandrain.

10             MS. JANDRAIN:  Thank you, Your Honor.

11  Kim Jandrain on behalf of what we've called the

12  moving Defendants, which are all the Defendants

13  except for Andrew Rubin and 819D LLC.

14             As Your Honor already knows, is

15  familiar with this case, the Plaintiff in this case

16  is Karl Garcia.  He purchased a condominium in April

17  of 2017 from 819D LLC.

18             In May of 2020 Garcia filed an action

19  in D.C. arising out of alleged defects associated

20  with that condominium.  He sued numerous entities,

21  including some unrelated third-parties that were

22  involved in marketing and developing that property.

1          He also sued 819D and Ms. Tygier and

2     Andrew Rubin under theories of breach of warranty,

3     fraud, unfair or deceptive trade practices.  And he

4     sought to hold Ms. Tygier and Andrew Rubin

5     individually liable, as well, under an alter ego

6     theory.

7          On July 29th of 2020 the D.C. Superior

8     Court dismissed the claims against Ms. Tygier and

9     Ms. Rubin.  And we've attached a copy of that

10    Court's order from July of 2020.  And in that order

11    the Court stated, Here, the Court finds that

12    Plaintiff's complaint does not include sufficient

13    factual allegations satisfying Rule 8 to support an

14    alter ego or veil piercing theory of liability.

15         Those claims against Ms. Tygier and

16    Mr. Rubin were dismissed and the Plaintiff did not

17    amend the complaint to reassert, to reallege alter

18    ego or other claims against Ms. Tygier or Mr. Rubin.

19    Although, I understand the Plaintiff has amended the

20    complaint on two separate occasions since then for

21    other reasons.

22         So at this time Mr. Garcia does not

14

1   have any claims against Ms. Tygier or The Rubin

2   Group or any of the other Defendants that I

3   represent except for the claims in this case.

4                    In October of 2020 Mr. Garcia filed

5   this action against 819D and 12 other Defendants.

6   Immediately after filing the action, Mr. Garcia

7   issued -- or his counsel issued subpoenas to banking

8   institutions seeking all financial records relating

9   to all 13 Defendants.

10                   The focus of this case, Your Honor, is

11  on alleged improper conveyances made for the purpose

12  of hindering, delaying, or defrauding creditors.

13  The actions are brought primarily under the

14  fraudulent and voluntary conveyance statutes at

15  55.1-400 and 401.

16                   Now, according to the Supreme Court,

17  these statutory provisions target transactions

18  designed to place a debtor's assets beyond the

19  reach -- beyond his creditor's reach.  The statute

20  creates liability for debtors who make these types

21  of conveyances, and they also allow a creditor to go

22  after recipients of those transfers.

15

1            I think Mr. Crawford already

2    referenced the Price v. Hawkins case, allows for

3    in personam judgment against recipients of those

4    transfers.

5            So the key, Your Honor, to stating the

6    claim under these statutory provisions is that the

7    plaintiff must be a creditor and the defendant must

8    be a debtor or a recipient of a fraudulent or

9    voluntary transfer.

10            Now, the statute does not define what

11   a debtor is.  But the Supreme Court in Luria has

12   said that to be a debtor you must have adequate and

13   actual notice of a specific potential claim.  Here,

14   as I mentioned, the Plaintiff has claims against

15   819D which are pending in D.C. Superior Court.

16            The Plaintiff is also alleging that he

17   is the creditor of Ms. Tygier, Mr. Rubin, and the

18   Rubin Group.  Although, as I said, he doesn't have

19   claims against any of those entities.  And the alter

20   ego and veil piercing claims that were initially

21   alleged in D.C., have since been dismissed.  And the

22   standard dismissal, which Mr. Garcia cited in his

16

1   motion papers, in which the Court adopted in D.C.

2   when considering the motion to dismiss, was the

3   dismissal was only appropriate if, quote, it appears

4   beyond doubt that the Plaintiff can prove no set of

5   facts in support of his claim which would entitle

6   him to relief.  And under that standard, Your Honor,

7   the D.C. Superior Court dismissed the alter ego and

8   veil piercing claims against Ms. Tygier, Mr. Rubin.

9   And the Plaintiff did not reallege or reassert those

10  claims.

11         So the Plaintiff is taking the

12  position, Your Honor, regardless of what happened in

13  D.C., Mr. Garcia may still be a creditor of

14  Ms. Tygier, The Rubin Group, the rest of my clients,

15  because at some point in the future he may assert

16  alter ego claim.  This argument fails for at least

17  two reasons, Your Honor.

18         First, from a pure pleading standard,

19  there are virtually no factual allegations in the

20  Amended Complaint in this case that Ms. Tygier or

21  The Rubin Group are alter egos of 819D LLC.  I went

22  back and I looked through, I scoured, the Amended

17

1    Complaint last night.  There is literally one

2    paragraph -- it's paragraph 65 -- where the

3    Plaintiff alleges that the Defendant entities --

4    819D, all the other entities -- were the stooges and

5    instruments of Andrew Rubin and Tygier, Ms. Tygier,

6    and that's it.  There's no other allegations about

7    why the Plaintiff believes that Ms. Tygier is an

8    alter ego.  There's conclusory allegations and

9    there's allegations regarding certain distributions

10   among the companies, but that's not the standard for

11   asserting a claim for alter ego or veil piercing.

12            So the matter of pleading, there are

13   no allegations of an alter ego claim.  The Plaintiff

14   has not provided any notice of what that claim may

15   even look like.

16            The second issue, Your Honor, with the

17   Plaintiff's position in this case is it's

18   practically untenable.  The alter ego claims were

19   dismissed in D.C.  And the Plaintiff, in his

20   opposition to our demurrer, has said, well, Virginia

21   recognizes or allows a creditor to collect on a

22   judgment for up to 20 years.  That's the statute of

18

1   limitations for collecting on a judgment.  And at

2   some point in the next 20 years the Plaintiff may

3   have an alter ego claim against Ms. Tygier even

4   though he has not articulated a factual basis for

5   that claim and even though that claim was dismissed

6   already by the D.C. Superior Court.

7                   So, Your Honor, you can imagine a

8   situation where a plaintiff, as a potential creditor

9   of an entity, would come into Virginia, would name

10  all of the shareholders, all the members, all of the

11  affiliates of that entity, seek all of their

12  financial records under a fraudulent or improper

13  conveyance claim without even articulating the basis

14  for that claim, because at some point in the next 20

15  years he may come up with a reason to assert an

16  alter ego claim.

17                  Surely, Your Honor, that is not what

18  these statutory provisions anticipate or

19  contemplate.  It's an abuse of the system, it's an

20  abuse of the process, and it's not what's allowed

21  under the statute.

22                  The statute only allows a potential

1   creditor to initiate an action against a debtor or a

2   transferee.  The statute provides plenty of

3   protection here for Mr. Garcia.  He has asserted

4   claims against 819D and he's entitled, if he can

5   establish 819 as a debtor, to pursue discovery

6   regarding those transfers.  He has not alleged any

7   transfers to my clients in his Complaint.  For these

8   reasons, Your Honor, we submit that Moving

9   Defendants' demurrer should be sustained.

10              I believe Mr. Glaser is going to speak

11   to the arguments on behalf of his client.

12              THE COURT:  All right.  Mr. Glaser.

13              MR. GLASER:  Thank you, Your Honor.

14              First of all, Your Honor, there's no

15   opposition in the opposition to Andrew Rubin's

16   demurrer presented as to Count IV.  That's the

17   illegal distributions claim.

18              As to Count III, the breach of

19   fiduciary claim, the parties appear to be in

20   agreement that at least in a typical case, with an

21   outsider -- excuse me, Your Honor.

22              THE COURT:  At this point I don't need

20

1    to hear from you with respect to either Count 3 or

2    Count 4.  After I hear from Ms. Benes, if I need to

3    hear further from you, I'll let you know.

4              MR. GLASER:  Okay, Your Honor.  If I

5    could move on, then, to Counts 1 and 2.

6              THE COURT:  Those I do need to hear

7    from you on.

8              MR. GLASER:  In order to be a creditor

9    of 819D -- Your Honor's already noted the Luria

10   case -- there must be actual notice of a potential

11   claim.  In that regard, Karl Garcia is not a

12   creditor of Andrew Rubin.  Andrew Rubin, as

13   Ms. Jandrain mentioned, was dismissed on July 29 of

14   last year.  Karl Garcia is, at most, a potential

15   creditor of 819D.

16             In this case, Karl Garcia alleges

17   three separate notices regarding his potential claim

18   against 819D.  The first, which was either in April

19   or May of 2017, is defined in the Amended Complaint

20   as the, quote, punch list items.  The second notice

21   was August 2017, defined in paragraph 23 as the

22   common area punch list.  And the third and final

1   notice was March 2018, defined in paragraph 26 as

2   the, quote, detailed letter.  Though no details are

3   given in the Amended Complaint.

4            The Amended Complaint identifies only

5   two sets of transfers from 819D.  The first is

6   July 2017.  That's in paragraph 37.  The second is

7   October of 2017.  That's in paragraph 41.

8            Importantly, the only transfer to

9   Andrew Rubin was the July 2017 transfer, which is

10  even before the August 2017 common area punch list.

11           Punch list items are not structural

12  defects.  Structural defects are defined similarly

13  in D.C. as they are in Virginia, which is a defect

14  which reduces the stability or safety of the

15  structure.

16           As to the claims against Andrew Rubin

17  here, the Luria case is certainly central and

18  certainly squarely on point.  Luria states, quote,

19  we hold that the notice required to create creditor

20  status is actual notice of a specific potential

21  statutory warranty claim, end quote.

22                 In doing so, what Luria does is

1   confirm that notice of punch list items is not

2   actual notice of structural defects.  Karl Garcia

3   himself distinguishes in his Amended Complaint

4   between those punch list items and the purported,

5   quote, detailed letter.

6              Paragraph 23 lists the punch list

7   items.  Those are not structural.  Now, presuming,

8   but without conceding, that the March 2018 letter is

9   actually a detailed letter and does actually

10  reference structural defects, that would be the very

11  first notification, and that is after the transfers

12  from 819D.

13              As the only potential debtor in this

14  case is 819D, Andrew Rubin being dismissed from the

15  D.C. case, the transfers have to be from 819D at a

16  time in which it had actual notice.  There's no such

17  allegation in this case.  The case should be

18  dismissed.  Thank you.

19              THE COURT:  Ms. Benes.

20              MS. BENES:  Good morning, Your Honor.

21  Bethany Benes again for Plaintiff, Karl Garcia.

22              Your Honor, the matter before the

23

1   Court is a demurrer.  And I am sure Your Honor knows

2   the standard on demurrer is that all allegations

3   taken in the Complaint must be taken as true for

4   purposes of this hearing, in a determination of this

5   motion.

6            The Complaint sufficiently pleads both

7   that there was notice -- in fact, there are nine

8   different allegations of notice and I'm going to go

9   through them with your Your Honor right now -- but

10  also that the notice put Andrew Rubin, Ms. Tygier,

11  The Rubin Group, and 819D on actual notice.

12           The Defendants attempt to argue that a

13  debtor is only one in which there is a current

14  pending case made against.  First of all, that is

15  not what a debtor is.  A debtor is just somebody who

16  has notice of a claim, an anticipated claim.

17           And they also ignore that the case

18  that's currently proceeding in the D.C. Superior

19  Court is against 819D, doing business as

20  The Rubin Group.  So any argument that 819D is the

21  only debtor is misplaced and it's inaccurate.

22           As for Andrew Rubin and Ms. Tygier, it

24

1  is correct that they were dismissed at the pleading

2  stage in the District of Columbia.  The District

3  of Columbia's ruling, however, is not a final

4  determination as to their liability.  And since that

5  ruling, there is clear evidence that the corporate

6  shields should be pierced.  For example, that they

7  are no corporate formalities that were followed.

8  Their personal use of the corporate funds to pay

9  lavish personal expenses.  So the case right now in

10 D.C. is stayed, and so we cannot amend or bring

11 those parties back in right now.  I submit to Your

12 Honor that is going to probably happen once the case

13 is not stayed.

14          So the alter ego theories that

15 Ms. Jandrain was referring to, and Mr. Glaser as

16 well, are preserved.  And Virginia specifically

17 reserves those, not only while the case is pending

18 but also after the case and the judgment is

19 obtained, to allow the creditor to go after whoever

20 is really liable, whether it be 819D,

21 The Rubin Group, Ms. Tygier, or Mr. Rubin.

22          With regards to those specific

25

1   allegations in the Complaint, Your Honor, there are

2   nine different notices.  And I understand the

3   Defendants are trying to attempt to have a

4   determination as to the sufficiency of the notice

5   now, I submit to Your Honor that that is something

6   for the factfinder to decide at trial.

7              Once the actual notices and the

8   contents of the notice are put into evidence and

9   given to the jury in this case to decide what those

10  contain and whether that put the debtors on actual

11  notice.

12             But specifically with regards to the

13  demurrer, paragraph 19 alleges that Andrew Rubin,

14  Ms. Tygier, and The Rubin Group, as well as 819D,

15  restored the property at issue in the D.C. case.

16             Paragraph 20 alleges the very first

17  notice that was given to the Defendants.  And while

18  Mr. Glaser referenced structural defects, such an

19  argument ignores the fact that the D.C. case, as the

20  defects or the problems that needed to be notified

21  were, did not -- were not limited to structural

22  defects.  There's a long list, including many

1   reports, that lists all of the problems at issue.

2   So focusing in on structural defects is erroneous.

3              So paragraph 20, the first notice that

4   was given on April 22.  The second notice was

5   alleged in paragraph 21, and that was with

6   Ms. Tygier personally on May 1.  June 23, 2017,

7   there was a third notice, and that's alleged in

8   paragraph 22.  In paragraph 23, the fourth notice is

9   alleged.  In 24, the fifth notice is alleged.  In

10  26, the sixth notice is alleged.  In 28, the seventh

11  notice is alleged against The Rubin Group, 819D,

12  Mr. Rubin, and Ms. Tygier.  In paragraph 31, the

13  eighth notice is alleged.  And in paragraph 33, the

14  ninth notice is alleged.

15             And so whether any of those or all of

16  those and which one of those constitutes sufficient

17  notice will be something that the trier of fact will

18  determine once the evidence is fully before the

19  Court.

20             Counsel attempts to pinpoint this case

21  as being governed by Luria in the since that there

22  have been arguments that Luria said a punch list

27

1  cannot be a sufficient notice.  And that's a

2  stretch, Your Honor.  As Your Honor knows, and as

3  the Virginia Supreme Court has ruled, these cases

4  are heard on a fact-by-fact and case-by-case basis.

5           And so while the punch list at issue

6  in Luria may not have been sufficient, it is very

7  possible that what we term as the punch list in this

8  case is sufficient.  That is not to be determined

9  today, though.  That is to be determined at trial.

10          So taking the allegations that have

11 been pleaded for purposes of demurrer as true

12 against The Rubin Group, Ms. Tygier, Andrew Rubin,

13 and 819D, the Complaint sufficiently puts them on

14 notice of the claims that are against them as

15 debtors, by Mr. Garcia as a creditor.

16          As to the remaining Defendants, the

17 Virginia Supreme Court has established that a

18 liability extends to both the grantor and the

19 grantee.  Virginia also recognizes what it refers to

20 as badges of fraud.  And those include retention in

21 the interest of the transferring property, transfers

22 between family members for alleged debt, threat of

1   litigation by a creditor at the time of the

2   transfer, and lack of consideration for the

3   transfer.

4        The Amended Complaint not only pleads

5   that the four Defendants previously mentioned are

6   grantors, it also sufficiently and very detailedly

7   describes the transactions at issue.  It describes

8   how each of the remaining Defendants is a grantee of

9   the grantors of the improperly conveyed funds.

10        In paragraph 46 it gives a specific

11   transaction with regards to 819 capital.  As to K

12   Street Holding, the allegations of the transactions

13   are set forth in paragraphs 46, 47, 48, 52, 53, 54,

14   55, 56.  I mean, I can go on and note for Your Honor

15   all of the specific paragraphs that allege the

16   transactions.  But in some there are 11 transactions

17   between the Moving Defendants or involving the

18   Moving Defendants as either grantors or grantees.

19   And there are 19 transactions that are specifically

20   set forth involving Mr. Rubin.

21        The allegations are more than

22   sufficient to put the Defendants on notice of the

1   nature of the claims against them today.

2               I heard Your Honor mention Counts 3

3   and 4 and that he did not need to hear about those.

4   I'm not sure if Your Honor wants to hear from me as

5   to those.

6               THE COURT:  The reason I said I didn't

7   need to hear from them is I was inclined to sustain

8   the demurrer with prejudice.  So if you want to be

9   heard on those, they need to be heard now.  Based on

10  my review of the counts -- I didn't mean to give you

11  an impression I didn't need to hear -- because I was

12  so convinced of your position.  It's actually quite

13  the opposite.

14              MS. BENES:  No.  Thank you for that

15  clarification, Your Honor.  Thank you for the

16  opportunity to address them.

17              A breach of fiduciary duty claim in

18  Virginia is not limited actually to members of an

19  LLC.  And both in Luria and in Marshall, the Court

20  made it clear that a creditor of an entity is

21  entitled to a breach of fiduciary duty claim.  And

22  that is what we have here.

30

1              We have claims where Mr. Garcia is a

2    creditor of The Rubin Group, as well as the other

3    entities involved, and that managing members --

4    Mr. Rubin and Ms. Tygier -- allowed and directed

5    these funds to be improperly conveyed, including to

6    themselves, so that those funds could be kept out of

7    the hands of the debtors' creditor.  And that is a

8    breach of fiduciary --

9              THE COURT:  Ms. Benes, hasn't the

10   Supreme Court not recognized that a member of an LLC

11   owes a fiduciary duty to a third-party creditor?  In

12   Luria, they said they assume, without deciding.  So

13   they haven't decided it.

14             MS. BENES:  Yes, Your Honor, that is

15   correct that that statement was made.  However, they

16   cite to Marshall.  And in Marshall the Virginia

17   Supreme Court did hold that, and I can -- I believe

18   it was cited in our opposition, and I can pull that

19   citation for you, Your Honor.

20             THE COURT:  Marshall dealt with

21   corporate directors.  It didn't deal with an LLC,

22   right?

1          MS. BENES:  Correct.  It was prior to

2    the LLC act being enacted.  However, it is no

3    different than the issues in Marshall.

4          THE COURT:  Okay.  Well, I understand

5    that argument.  Is there anything else you want to

6    say about that --

7          MS. BENES:  As to Count 4 for illegal

8    distributions, the same argument applies.  I'm happy

9    to answer any questions that Your Honor may have.  I

10   fully understand where Your Honor is leaning

11   towards.

12          THE COURT:  The Count 4 issue from the

13   Court is one of standing.

14          The concern the Court has is that you

15   don't have standing to bring this claim because the

16   LLC is the proper Plaintiff to bring an action

17   against a member for unlawful distributions.  That's

18   the Court concern, that you just don't have

19   standing.

20          MS. BENES:  I hear Your Honor's

21   concern.  That was the exact case that was brought

22   in Luria, was that it was a creditor who brought it

32

1  for a statutory violation of making distributions to

2  keep the funds out of the hands of the creditor.

3            THE COURT:  All right.  Anything else

4  you want to say?

5            MS. BENES:  Your Honor, I believe the

6  Complaint or the Amended Complaint is sufficiently

7  pleaded according to Virginia's notice pleading

8  standard, and we ask you overrule the demurrer.  To

9  the extent that Your Honor is inclined to sustain

10  any counts or all of the Amended Complaint, we would

11  seek leave to amend, of course.

12            THE COURT:  Okay.

13            MS. BENES:  Thank you.

14            THE COURT:  All right.  Is there any

15  rebuttal?  I can give you a few minutes if there's

16  anything else that either defense counsel wishes to

17  say.

18            MS. JANDRAIN:  I don't have any to add

19  at this point, Your Honor.

20            MR. GLASER:  Your Honor, I only have

21  two minor points, and I'll make them fairly quickly.

22            The stay in the D.C. case, Ms. Benes

33

1   brought that up, I just want to explain what's going

2   on there.

3            Well after Andrew Rubin was dismissed,

4   the Superior Court ordered that action to go to

5   arbitration.  Ms. Benes' client, Karl Garcia, then

6   appeals the arbitration order and moved for a stay.

7   So to contend that there was some stay put in place

8   either over objection or by another party, I think,

9   would be misplaced.

10           The second thing to say, Your Honor,

11  there are a number of notices in the Amended

12  Complaint.  Our focus on the March 2018 notice is

13  because that is the first potential structural

14  defect notice.  And I want to underscore "potential"

15  because the Amended Complaint does not say what

16  that, quote, detailed notice is in regard to.

17           There are a number of notices after

18  that.  But, again, all of those are after

19  distributions.  So, frankly, they're simply not

20  relevant under the Luria case.

21           THE COURT:  Mr. Glaser, with respect

22  to Count 3 and 4, do you agree with the Court that

34

1   the Supreme Court has not recognized at this point

2   that an LLC -- a member of an LLC owes a fiduciary

3   duty to a third-party creditor and that the Court

4   should not extrapolate from Marshall to make that

5   finding?

6           MR. GLASER:  I do, Your Honor.  We

7   cited a number of cases in our memorandum.  Those

8   are good law.

9           THE COURT:  And with respect to

10  Count 4, I raised with Ms. Benes the concern the

11  Court had as to whether her client had standing.

12          She believes that -- I think she cited

13  Luria as establishing that her client has standing

14  in this case as a creditor.  What's your view on

15  that.

16          MR.  GLASER:  Again, Your Honor, I

17  would rely on the cases that we cited in our

18  memorandum.  I believe the Supreme Court's been very

19  clear.  Those actions must be brought as derivative

20  actions.  And that's not what was brought in this

21  action.

22          THE COURT:  All right.  The demurrer

35

1    is sustained in part and overruled in part.

2              The demurrer is overruled as to

3    Count 1, fraudulent conveyance, and as to Count 2,

4    voluntary conveyance.  For the purposes of demurrer

5    and accepting all the allegations in the Amended

6    Complaint as true, Plaintiff has pled that he is a

7    potential creditor of Defendants.

8              In the Luria case the Supreme Court

9    concluded that a creditor, under Virginia Code

10   55.1-402, includes a potential creditor if the

11   debtor has adequate or actual notice of the claim,

12   depending on the type of claim.

13             Plaintiff has sufficiently pled in his

14   Complaint that he's a potential creditor of

15   Defendants and that Defendants had either adequate

16   or actual notice of the claim.  Whether the notice

17   given to Defendants was adequate or actual is a

18   question of fact for the factfinder to resolve.

19             Regarding whether Plaintiff can obtain

20   an in personam judgment against Defendants,

21   generally a creditor obtains a lien on the assets

22   that were alleged to have been fraudulently

1  transferred once the fraudulent transfer has been

2  unwound, under 55.1-402.  However, the Supreme Court

3  carved out a narrow exception in Price versus

4  Hawkins, which the Court allowed the Plaintiff to

5  obtain an in personam judgment where the evidence

6  showed the grantees assisted the debtor in hiding

7  cash assets that the creditor otherwise would have

8  reached.

9          Whether this case falls into that

10 exception articulated in Price is a question for

11 trial.  The Court rejects Defendants' veil piercing

12 argument because the grantees of the fraudulent

13 conveyances are necessary parties to the action,

14 Tucker versus Foster at 154 Virginia 182, at 194,

15 195, 152 Southeast 376 of 1930.

16         With respect to Count 3 and 4, the

17 demurrers are sustained, and they're sustained with

18 prejudice.  The reason I'm sustaining them with

19 prejudice is I don't believe they can be fixed given

20 the current state of the law.

21         The Plaintiff is, in the Court's

22 view -- well, let me just say that the Supreme Court

37

1   at Luria used the phrase, assumed without deciding,

2   that members of an LLC may owe a fiduciary duty to

3   third-party creditors as corporate directors do

4   under the Marshall versus Fredericksburg Lumber

5   Company.

6            Because the Supreme Court has not

7   explicitly extended this duty to members of an LLC,

8   the Court declines the invitation now to impose a

9   fiduciary duty to third-party creditors on members

10  of an LLC.

11           With respect to Count 4, the demurrer

12  is also sustained with prejudice, because the Court

13  finds that the Plaintiff does not have standing to

14  bring this claim, because the LLC is the proper

15  Plaintiff to bring an action against a member for

16  unlawful distribution under Virginia Code 13.1-1036.

17           So that's the Court's decision.  If yu

18  could, Ms. Benes and Mr. Glaser and Ms. Jandrain,

19  prepare an order and just get it to the Court before

20  next Wednesday, I'll go ahead and sign that order

21  and you can note whatever your objections are.

22           MS. BENES:  Your Honor, may I make a

38

1    suggestion or ask for a suggestion?  I see that we

2    have a court reporter here today.  And to make

3    everyone's life's easier, including the court

4    reporter, I suggest that we just incorporate the

5    transcript of Your Honor's ruling into the order.

6    Is that okay with Your Honor?

7                    THE COURT:  I have no problem with

8    that at all.

9                    MS. BENES:  Great.  Thank you.  That

10   just makes everyone's lives easier.

11                   MS. JANDRAIN:  Your Honor, may I ask

12   just one point of clarification?

13                   You had mentioned in your ruling that

14   grantees are a necessary parties, and I'm just

15   trying to clarify the status of certain entities,

16   whether Your Honor is also holding that Plaintiff

17   has sufficiently alleged that Ms. Tygier,

18   The Rubin Group are debtors, or whether they were

19   grantees.  And that's all just for purposes of

20   discovery going forward.

21                   THE COURT:  I don't believe I should

22   address that at this point.  All I had before me was

39

1    the demurrer and that's all I ruled on.  And so if

2    there's some discovery issue that arises because of

3    something I said, it will have to be determined

4    through additional litigation.

5                    MS. BENES:  Thank you, Your Honor.

6                    THE COURT:  All right.  Thank you.

7                    (Time:  11:57 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

40

1                    CERTIFICATE OF REPORTER

2              I, Carla D. Siegismund, the court

3    reporter, do hereby certify that the transcript in

4    the foregoing proceedings is true and accurate, to

5    the best of my knowledge and belief; that I am not a

6    relative or employee of any attorney or counsel

7    employed by the parties thereto, nor financially or

8    otherwise interested in the outcome of the action.

9

10

11

12

13          _____

14          Carla D. Siegismund

15

16

17

18

19

20

21

22