## IN THE CIRCUIT COURT OF FAIRFAX COUNTY, VIRGINIA

| | |
|---|---|
| **KARL GARCIA,** | |
| Plaintiff, | Case No. 2020-17040 |
| v. | |
| **THE RUBIN GROUP, LLC,** *et al.* | |
| Defendants. | |

## DEMURRER

COMES NOW Defendant Andrew Rubin, by counsel, and presents this Demurrer as to the Amended Complaint filed by Karl Garcia and, for the reasons more fully set forth in the Memorandum in Support of Demurrer, states as follows:

1. The Amended Complaint fails to state a cause of action upon which relief may be granted as against Andrew Rubin. Garcia is not a "creditor" of any party in this action pursuant to *Luria v. Board of Directors of Westbriar Condominium Unit Owners Ass'n.*, 277 Va. 359, 672 S.E.2d 837 (2009).

2. Garcia lacks standing to prosecute his Breach of Fiduciary Duty and Illegal Distribution pursuant to Va. Code § 13.1-1036 claims against Andrew Rubin.

3. The Amended Complaint fails to state a cause of action upon which relief may be granted. The Amended Complaint fails to allege any transfer from Defendant 819D, LLC to Andrew Rubin or any transfer initiated by, or authorized by, Andrew Rubin from 819D, LLC.

4. The Amended Complaint fails to state a cause of action upon which relief may be granted. The Amended Complaint fails to allege any action by Andrew Rubin was made on behalf of 819D, LLC or in an effort to improperly transfer any assets from 819D, LLC.

1

WHEREFORE, Andrew Rubin respectfully requests this Honorable Court grant his Demurrer and to dismiss this present action as to him with prejudice together with any further relief deemed just and proper.

Respectfully submitted,

JACKSON & CAMPBELL, P.C.

_____
Christopher A. Glaser (VSB No. 43491)
Meagan E. Roach (VSB No. 87955)
2300 N Street, N.W.
Suite 300
Washington, DC 20037
Telephone: (202) 457-1600
Facsimile:  (202) 457-1678
Email: cglaser@jackscamp.com
         mroach@jackscamp.com

4879575v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of March, 2021, a copy of the foregoing was served via electronic mail on:

Laurin H. Mills, Esq.
Samek Werther Mills LLC
717 King St., Suite 300
Alexandria, VA 22314
laurin@samek-law.com

Bethany Benes, Esq.
Bethune Benes, PLLC
4290 Chain  Bridge Road, Suite 302
Fairfax, Virginia 22030
bbenes@bethunebenes.com

Mark Crawford
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Rd, Suite 210
Arlington, VA 22201
(703) 527-5201
mcrawford@mdc-law.com

_____
Christopher A. Glaser

4879575v.1

| KARL GARCIA, | |
|---|---|
| Plaintiff, | Case No. 2020-17040 |
| v. | |
| THE RUBIN GROUP, LLC, *et al.* | |
| Defendants. | |

## ANDREW RUBIN'S MEMORANDUM IN SUPPORT OF DEMURRER

COMES NOW Defendant Andrew Rubin ("**Andrew Rubin**"), by counsel, and presents this Memorandum in Support of his Demurrer against the Amended Complaint filed in this action by Karl Garcia ("**Garcia**").

This matter arises from the sale of a District of Columbia condominium developed by defendant 819D LLC and sold to Garcia. Garcia has alleged the existence of various construction defects and such defects are being litigated in the Superior Court for the District of Columbia as *Karl Garcia v. 819D, LLC, et al*, Civil Action 2020 CA 002540 B (the "**Superior Court Action**"). Having been previously dismissed, Andrew Rubin is not a defendant in the Superior Court Action. In the present action, Garcia asserts various causes of action arising from purported fraudulent transfers originating from 819D LLC to various members and related entities.

## 1. Garcia Lacks Standing to Allege Breach of Fiduciary Duty or Illegal Distribution.

As against Andrew Rubin, Garcia alleges Breach of Fiduciary Duty (Count III) and Illegal Distribution pursuant to Va. Code § 13.1-1036 (Count IV) alleging that improper distributions were made by various defendant entities and that, as a purported officer of those entities, Andrew Rubin is personally liable to Garcia. Importantly, Garcia has not alleged—nor

could he allege—that he is a shareholder or member in any of the entities and the claims are not brought as derivative claims.

In the Commonwealth, limited liability company members are liable only to the company for improper distributions. Va. Code § 13.1-1036 ("…the member is liable to the limited liability company …"). Even if Garcia was a member of the entities, which he is not, his claims would still need to be brought derivatively in the name of the respective entity. *Remora Investments, L.L.C. v. Orr*, 277 Va. 316, 322, 673 S.E.2d 845, 847 (2009) ("a claim for breach of fiduciary duty cannot be brought directly by one member of an L.L.C. against another member or manager, and thus [one member] did not have standing to bring this cause of action directly against [another member]."); *See also*, *Raley v. Haider*, 286 Va. 164, 167, 747 S.E.2d 812, 814 (2013) (recognizing that circuit court sustained demurrer on standing grounds as Va. Code § 13.1-1035 distribution claim may only be brought by the LLC itself and not an outsider); *Anderson v. Bundy,* 161 Va. 1, 21, 171 S.E. 501, 508 (1933).

"Virginia follows the majority rule that suits for breach of fiduciary duty against officers and directors must be brought derivatively on behalf of the corporation and not as individual shareholder claims." *Li v. Shuman*, 2015 WL 3766182, * 10 (W.D.Va 2015) ("In any event, the statutory language itself establishes that any right of recovery for a violation of § 13.1–1036 belongs to the LLC, and as plaintiffs have not complied with the requirements for bringing a derivative action in this case, they cannot maintain such a claim"); *Charles Schwab & Co., Inc. v. WS Wealth Management, LLC*, 2016 WL 7033699, * 10 (E.D.Va. 2016) ("even with respect to unauthorized distributions to members, the VLLCA [Virginia Limited Liability Company Act] lists the L.L.C. as the only entity to which a member is liable for a wrongful distribution."); In re

2

James River Coal Co., 360 B.R. 139, 171 (E.D.Va. 2007)(the right to bring fiduciary duty action belongs to the entity).

Garcia lacks standing to prosecute his Breach of Fiduciary Duty and Illegal Distribution pursuant to Va. Code § 13.1-1036 claims against Andrew Rubin. As such, Counts III and IV should be dismissed with prejudice.

**2.    Garcia is Not a "Creditor" and Cannot Pursue Fraudulent Conveyance (Count I) or Voluntary Conveyance (Count II) as Against Andrew Rubin.**

Garcia alleges that he provided a "Common Area Punch List" on or about August 9, 2017 to 819D LLC identifying purported defects in the common areas of the condominium such as "a broken attic window," "eroding mortar on the façade's exterior," and "missing portions of the Property's brick chimney stack." (Amended Complaint, ¶ 23.) Garcia further alleges that, on or about March 24, 2018, he provided his first notification to 819D LLC regarding purported defects in his individual condominium unit. (Amended Complaint, ¶ 26.) Garcia does not allege any notification of any purported claim relating to his individual condominium unit—nor relating to any purported structural defect—prior to March 24, 2018.

At present, Garcia alleges Fraudulent Conveyance pursuant to Va. Code § 55.1-400 (Count I and Voluntary Conveyance pursuant to Va. Code § 55.1-401[1] in regard to transfers which purportedly originated from 819D LLC—the sole potential "debtor" to Garcia as 819D LLC is the only party in this action that is also a party in the Superior Court Action. The sole transfers from 819D LLC alleged in the Amended Complaint occurred between July 21, 2017 and October 18, 2017. (See, Amended Complaint, ¶¶ 37 and 41.)

---

[1] Garcia's Voluntary Conveyance claim is erroneously entitled as being brought pursuant to Va. Code § 8.01-401.

4879153v.1

Garcia has no claim against Andrew Rubin relating to any transfers from 819D LLC prior to March 24, 2018, the date by which he provided notice of his potential claim relating to structural defects. *Luria v. Board of Directors of Westbriar Condominium Unit Owners Ass'n.*, 277 Va. 359, 366, 672 S.E.2d 837, 841 (2009)(As punch list items did not provide sufficient notice to condominium developer of later-claimed structural defects, "[w]e hold that the notice required to create creditor status is actual notice of a specific potential statutory warranty claim.").

In the fraudulent transfer context, the "key consideration in establishing creditor status is whether there was actual notice of a specific potential claim." *Luria*, 277 Va. at 366, 672 S.E.2d at 840. In *Luria*, the Supreme Court held that notification of a non-structural claim is insufficient to establish creditor status for purposes of demonstrating a fraudulent transfer as the,

> documents do not establish that [transferee] had actual notice of a specific potential statutory warranty claim because the problems noted were not characterized as structural defects 'which reduced the stability or safety of the structure below accepted standards or restricted the normal intended use of all or part of the structure.'

*Luria*, 277 Va. at 367, 672 S.E.2d at 841, citing Va. Code § 55–79.79.[2]

The August 9, 2017 Common Area Punch List items are not structural in nature and fail to provide notice as the Common Area Punch List items "did not notify [defendant] of any defect that reduced 'stability' or 'safety' of the [condominium]." *Luria*, 277 Va. at 367, 672 S.E.2d at

---

[2] Importantly, Va. Code § 55-79.79, now codified as Va. Code § 55.1-1955, is substantially similar to the District of Columbia warranty bond statute, D.C. Code § 42-1903.16, regarding structural defects. *See*, D.C. Code § 42-1903.16 ("the term "structural defect" means a defect in a component that constitutes any unit or portion of the common elements that reduces the stability or safety of the structure below standards commonly accepted in the real estate market, or restricts the normally intended use of all or part of the structure and which requires repair, renovation, restoration, or replacement."); *and see*, Va. Code § 55.1-1955 ("For the purposes of this subsection, structural defects shall be those defects in components constituting any unit or common element that reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of all or part of the structure and that require repair, renovation, restoration, or replacement.").

4879153v.1

841.  The next notification alleged by Garcia beyond the Common Area Punch List is the March 24, 2018 notification—for which Garcia fails to describe with any particularity.  (Amended Complaint, ¶ 26.)  Presuming, without conceding, that the March 24, 2018 notification relates to structural defects, that notification would be the first notification which could conceivably make Garcia a "creditor" of 819D LLC.  However, the sole transfers from 819D LLC alleged in the Amended Complaint occurred between July 21, 2017 and October 18, 2017, each of which predate the March 24, 2018 notification.

Garcia was not a creditor at the time of any purported transfers from 819D LLC.  As such, Counts I and III should be dismissed with prejudice.

WHEREFORE, Andrew Rubin respectfully requests this Honorable Court dismiss the Amended Complaint with prejudice, together with any further relief deemed just and proper.

Respectfully submitted,

JACKSON & CAMPBELL, P.C.

_____
Christopher A. Glaser (VSB No. 43491)
Meagan E. Roach (VSB No. 87955)
2300 N Street, N.W.
Suite 300
Washington, DC 20037
Telephone:  (202) 457-1600
Facsimile:  (202) 457-1678
Email: cglaser@jackscamp.com
         mroach@jackscamp.com

4879153v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March, 2021, a copy of the foregoing was served via

electronic mail on:

Laurin H. Mills, Esq.
Samek Werther Mills LLC
717 King St., Suite 300
Alexandria, VA 22314
laurin@samek-law.com

Bethany Benes, Esq.
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
bbenes@bethunebenes.com

Mark Crawford
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Rd, Suite 210
Arlington, VA 22201
mcrawford@mdc-law.com

_____
Christopher A. Glaser

4879153v.1

**VIRGINIA:**    **IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

Karl Garcia
_____
                    **Plaintiff**
                        **vs.**                                   Civil Action No.    **CL** 2020 - 17040

The Rubin Group, LLC, et al.
_____            Previous Chancery No.    **CH** _____
**SERVE:**                     **Defendant**


## FRIDAY MOTIONS DAY – PRAECIPE/NOTICE

**Moving Party:**  ☐ Plaintiff   ☑ Defendant   ☐ Other

**Title of Motion:** Demurrer to Amended Complaint        ☑ Attached  ☑ Previously Filed

**DATE TO BE HEARD:** April 16, 2021        **Time Estimate** (combined no more than 30 minutes): 30 min

**Time to be Heard:**  ☐ 9:00 a.m. **with** a Judge        ☐ 9:00 a.m. **without** a Judge

☑ 10:00 a.m. (Civil Action Cases)  Does this motion require 2 weeks notice?  ☑ Yes  ☐ No

☐ 11:30 a.m. (DOMESTIC/Family Law Cases)  Does this motion require 2 weeks notice?  ☐ Yes  ☐ No

**Case continued from:** _____    **continued to:** _____
                            (Date)                                        (Date)

Moving party will use **Court Call** telephonic appearance:    ☐ Yes   ☑ No

**Judge** _____ **must** hear this motion because (check one reason below):

☐ The matter is on the docket for presentation of an order reflecting a specific ruling previously made by that Judge.
☐ This Judge has been assigned to this entire case by the Chief Judge; or,
☐ The Judge has advised counsel that all future motions, or this specific motion, should be placed on this Judge's Docket; or,
☐ This matter concerns a demurrer filed in a case where that Judge previously granted a demurrer in favor of demurrant.

**PRAECIPE** by: Kimberly Jandrain                Samek, Werther & Mills LLC
              _____            _____
              Printed Attorney Name/ Moving Party Name            Firm Name
2000 Duke Street, Suite 300, Alexandria, Virginia 22314
_____
                            Address

(240) 912-3005        (240) 912-3035        72727        kim@samek-law.com
_____        _____    _____    _____
   Tel. No.                Fax No.            VSB No.        E-Mail Address

### CERTIFICATIONS

I certify that I have in good faith conferred or attempted to confer with other affected parties in an effort to resolve the subject of the motion without Court action, pursuant to Rule 4:15(b) of the Rules of the Supreme Court of Virginia; and, I have read, and complied with, each of the Instructions for Moving Party on the reverse side of this form.

                                    _____
                                    Moving Party/Counsel of Record

### CERTIFICATE OF SERVICE

I certify on the 2nd day of April _____, 2021 _____, a true copy of the foregoing Praecipe was

☐ mailed  ☐ faxed  ☑ delivered to all counsel of record pursuant to the provisions of Rule 4:15(e) of the Rules of the Supreme Court of Virginia.

                                    _____
                                    Moving Party/Counsel of Record

CCR-E-10 (Jan 2018)

# INSTRUCTIONS FOR MOVING PARTY

**DATE/TIME:** All motions should be noticed for the 10:00 a.m. Civil Action Docket or the 11:30 a.m. Domestic/Family Law Docket (All Divorce cases, adoptions and Juvenile & Domestic Relations Court Appeals) unless the moving party believes the motion will be uncontested. All motions believed to be uncontested should be noticed for 9:00 a.m. All motions noticed for 9:00 a.m. should be set <u>without a judge</u>, unless evidence will be required (e.g., *Ex Parte* Proof, Infant Settlements, Fiduciary Matters), or if it is <u>necessary</u> for the order to be entered that morning rather than in chambers at a later time. **A minimum of two weeks' notice is required for all motions for Summary Judgment, Demurrers, Pleas in Bar, motions pertaining to discovery disputes and other motions for which <u>any</u> party desires to file a memorandum.** A memorandum of points and authorities of five pages or less <u>must</u> accompany any of these pleadings and any other motion placed on the Two Week Docket. If either party believes it necessary to file a memorandum exceeding five double-spaced pages, then the parties must utilize the Briefing Schedule procedure: contact opposing counsel or the opposing party and by agreement conduct a telephone conference call with the Calendar Control Judge, (703) 246-2221; or, if agreement is not possible, give advance notice of an appearance before the Calendar Control Judge to establish a Briefing Schedule.

**Each side should bring a draft proposed order to Court on the day of the hearing, as the ruling <u>must</u> be reduced to an order that day, absent leave of Court.** Cases may only be removed from the docket by the Court or by counsel for the moving party or the moving party. One Week Motions may be removed from the docket up until 4:00 p.m. on the Thursday preceding the hearing date, by contacting the Motions Clerk: (703) 246-4355. Two Week Motions may <u>not</u> be continued or removed from the docket after 4:00 p.m. on the Friday preceding the hearing date, without leave granted by the Judge assigned to hear the motion, for good cause shown.

If a hearing on any motion must take longer than thirty (30) minutes, the moving and responding parties, or their counsel, should appear before the Calendar Control Judge to request a hearing for a day other than a Friday. See, "Motions Requiring More than 30 Minutes" in "Friday Motions Docket Procedures" on the Court's website at
https://www.fairfaxcounty.gov/circuit/sites/circuit/files/assets/documents/pdf/civil-friday-motions-docket-procedures.pdf

**MOTIONS TO RECONSIDER:** Do <u>not</u> set a Motion to Reconsider for a hearing. (See Friday Motions Docket Procedures, available from the Clerk's Office, the Bar Association office or on the Court's website at the address above.

**CERTIFICATIONS OF MOVING PARTY/COUNSEL:** Rule 4:15 (b) of the Rules of the Supreme Court of Virginia provides in pertinent part that "Absent leave of court, and except as provided in paragraph (c) of this Rule, reasonable notice shall be in writing and served at least seven days before the hearing. Counsel of record shall make a reasonable effort to confer before giving notice of a motion to resolve the subject of the motion **and to determine a mutually agreeable hearing date and time.**"

**CERTIFICATE OF SERVICE:** Pursuant to Rule 4:15 (e), a motions pleading shall be deemed served <u>when it is actually received</u> by, or in the office of, counsel of record through delivery, mailing, or facsimile transmission; not when it is mailed or sent.

# INFORMATION FOR MOVING PARTY

**COURTCALL TELEPHONIC APPEARANCE:** In most cases, Virginia attorneys may appear by phone in lieu of appearing in Court for the hearing. To set up a telephonic appearance, you must call (888) 882-6878. For information, please visit the Court's website at https://www.fairfaxcounty.gov/circuit/services/courtcall. The Clerk's Office prefers that you notify it that you have set up a telephonic appearance by calling (703) 246-2880 no later than 4:00 p.m. on Thursday prior to the hearing date. The Court encourages use of this procedure, and either party may appear by phone.
**NOTE:** Telephonic appearance is only for members of the Virginia State Bar and licensed attorneys allowed to practice *pro hac vice* in the Fairfax County Circuit Court (with a member of the Virginia State Bar present over the phone or in person)

**CONCILIATION PROGRAM:** The Fairfax Circuit Court strongly encourages use of conciliation procedures to resolve motions. The Fairfax Bar Association's Conciliation Program conducts conciliation without charge by experienced litigators, who meet in person or by telephone with all interested parties. To request conciliation, fax a Request for Conciliation form to the Fax Hotline, (703) 273-1274; e-mail a request for conciliation to: ffxconciliation@aol.com; or leave a voice mail message at (703) 627-1228. You will be contacted before the hearing date by a representative of the Conciliation Program.

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

COURT SERVICES

2021 MAR 26 ꘎ 2: 05

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

|  |  |  |
|---|---|---|
| **KARL GARCIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2020-17040** |
| | ) | |
| **THE RUBIN GROUP, LLC,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' DEMURRER TO PLAINTIFF'S AMENDED COMPLAINT

Defendants, The Rubin Group LLC, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore Partners LLC, TRG Development LLC, 638 Newton Partners LLC, Michelle Tygier and Robert Rubin (collectively "Defendants") submit this Demurrer to Plaintiff Karl Garcia's Amended Complaint. As grounds for this Demurrer, Defendants state as follows:

(1) The Amended Complaint fails to state a claim for relief because Garcia fails to allege sufficient facts to support his conclusory allegations.

(2) The Amended Complaint fails to state a claim for relief because Garcia is not a "creditor" of Defendants as a matter of law and Virginia does not recognize a conspiracy claim in this context.

(3) The Amended Complaint fails to state a claim for relief because Garcia fails to allege any transfers by 819D LLC to Defendants or any transfers from Defendants to 819D LLC.

Defendants submit this Demurrer without prejudice and without waiving their arguments currently pending before the Supreme Court of Virginia that Garcia should be compelled to arbitrate his claims against Defendants.

Dated: March 26, 2021

Respectfully submitted,

Laurin H. Mills (VSB No. 79848)
Kimberly Jandrain (VSB No. 72727)
Samek, Werther & Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
(703) 547-4693
Fax (703) 547-4694
Laurin@samek-law.com
kim@samek-law.com

## CERTIFICATE OF SERVICE

I certify that on March 26, 2021, I caused to be served, via electronic mail a copy of the

foregoing on:

Bethany R. Benes
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, VA 22030
bbenes@bethunebenes.com
*Attorney for Karl Garcia*

Christopher A. Glaser
Jackson & Campbell, P.C.
2300 N Street, N.W., Suite 300
Washington, D.C. 20037-1194
(202) 457-1612
CGlaser@JacksCamp.com
*Attorney for Andrew Rubin*

Mark Crawford
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Rd, Suite 210
Arlington, VA 22201
mcrawford@mdc-law.com
*Attorney for 819D LLC*

Kimberly Jandrain

**V I R G I N I A :**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

|  |  |  |
|---|---|---|
| **KARL GARCIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 2020-17040** |
| | ) | |
| **THE RUBIN GROUP, LLC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR DEMURRER</u>

Defendants, The Rubin Group LLC, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore LLC, TRG Development LLC, 638 Newton Partners LLC, Michelle Tygier and Robert Rubin (collectively "Moving Defendants") submit this Demurrer to Plaintiff Karl Garcia's Amended Complaint.

Plaintiff's Amended Complaint seeks an *in personam* judgment against 13 defendants under theories of fraudulent transfer and illegal distributions. Plaintiff claims he is the creditor of all 13 defendants; however, the only entity against which Plaintiff has asserted a specific underlying claim is 819D LLC ("819D"). That claim is currently pending in The Superior Court for the District of Columbia. Plaintiff's claim for alter-ego liability against Michelle Tygier was dismissed by the D.C. Superior Court.

Plaintiff's claims in this Court fail for the following reasons: (1) Plaintiff has no potential claims or alter-ego claims against the Moving Defendants and, therefore, is not a "creditor" of the Moving Defendants; (2) Plaintiff has not alleged that 819D LLC transferred any funds to the Moving Defendants; and (3) Virginia does not recognize a claim for "participating" in fraudulent transfers.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of Plaintiff's purchase of a condominium located in the District of Columbia. In April 2017, Plaintiff entered into a Purchase Agreement with 819D to buy the unit. Compl. ¶ 18. In May 2020, Plaintiff filed suit in D.C. Superior Court against 819D and various other entities, including Ms. Tyger – one of the Moving Defendants – for breach of contract, breach of warranty, unfair trade practices, and fraud relating to alleged defects in the condo and other wrongdoing relating to the transaction. Compl. ¶ 33. Ms. Tygier moved to dismiss the claims against her in the D.C. Action and on July 29, 2020, Judge Puig-Lugo of the D.C. Superior Court granted the motion, stating: "Here, the Court finds that Plaintiff's Complaint does not include sufficient factual allegations satisfying Rule 8(a) to support an alter ego or veil piercing theory of liability." July 29, 2020 Order at 5 (Exh. A). Plaintiff's claim against 819D is still pending, but the case has been stayed and referred to arbitration pursuant to a broad arbitration clause.

In October 2020, Plaintiff filed this action against 819D and twelve other defendants, which consist of three individuals, two of whom have an ownership interest in 819D, and 9 "related" entities in which the individuals have an ownership interest. Most of the entitles are single-purpose LLCs that hold real estate for development and investment purposes. The Amended Complaint alleges that the Moving Defendants engaged in improper conveyances to siphon away money from each other. Except for details regarding the transfers among certain defendants,[1] Plaintiff's Amended Complaint is devoid of factual allegations to support his conclusory allegations.

### A. Plaintiff Is Not a "Creditor" of the Moving Defendants.

Plaintiff's claims against the Moving Defendants are premised on the allegation that they possess and have conveyed "assets [] which Mr. Garcia is entitled to as a result of his status as a

---

[1] Plaintiff likely gleaned this information from a *different* lawsuit between Michelle Tygier and Andrew Rubin.

creditor." Compl. ¶¶ 2-14. Virginia Code § 55.1-402 provides that "Before obtaining a judgment for his claim, a creditor may . . . institute any action that he may institute after obtaining such judgment to avoid a gift, conveyance, assignment or transfer of, or charge upon, the estate of his debtor declared void by § 55.1-400 or 55.1-401." Virginia's fraudulent conveyance statute "targets transactions designed to place a debtor's assets beyond his creditors' reach." *La Bella Dona Skin Care, Inc. v. Belle Femme Enterprises, LLC*, 294 Va. 243, 253 (2017).

Here, Plaintiff's claims fail because, as a matter of law, Plaintiff is not a "creditor" of the Moving Defendants. "[T]he key consideration in establishing creditor status is whether there was actual notice of a **specific potential claim**." *Luria v. Bd. of Directors of Westbriar Condo. Unit Owners Ass'n*, 277 Va. 359, 366 (2009) (emphasis added). The only defendant against which Plaintiff has a specific potential claim is 819D. That claim – which relates to alleged defects in Plaintiff's condominium – has been referred to arbitration. Plaintiff originally asserted an alter-ego claim against Michele Tygier in the D.C. Litigation, but the Court dismissed that claim. Plaintiff did not amend his complaint in the D.C. Litigation or otherwise allege any alter-ego claims against the Moving Defendants. Accordingly, Plaintiff does not have a "specific potential claim" against any defendant other than 819D and, therefore, cannot be a "creditor" of the Moving Defendants under Virginia law.

"A limited liability company is an entity that, like a corporation, shields its members from personal liability based on actions of the entity." *Gowin v. Granite Depot, LLC*, 272 Va. 246, 254, (2006). "[P]iercing a limited liability entity's veil is an "extraordinary act" that is warranted only under "extraordinary circumstances." *Van Buren v. Poston,* 97 Va. Cir. 229 (2017) (*quoting Dana v. 313 Freeman*, 266 Va. 491, 500 (2003)).

Plaintiff has not asserted a separate alter-ego or veil-piercing claim against the Moving Defendants. The Amended Complaint does not allege that Plaintiff has a specific potential claim against the Moving Defendants. Rather, Plaintiff attempts to bypass this prerequisite by making a conclusory reference to such a theory in the context of his fraudulent conveyance claims – "[Defendants] were the stooges and instruments of A. Rubin and Tygier." Compl. ¶ 65. Plaintiff's conclusory allegations are wholly inadequate, particularly in the absence of a "specific potential claim" against Defendants.

Virginia Code § 55.1-400, *et seq.* allows a "creditor" to "institute any action that he may institute after obtaining such judgment." However, Plaintiff has no claim against any defendant, other than 819D and, therefore, has no basis to institute an action against the Moving Defendants. Even if Plaintiff were to obtain a judgment against 819D, he would have no basis to seek recovery from the Moving Defendants unless he could show that 819D improperly conveyed funds to the Moving Defendants.

**B. Plaintiff Has Not Alleged that 819D Transferred Any Assets to Defendants.**

Plaintiff's claims also fail because he has not alleged that 819D LLC made any transfers to Defendants. Paragraph 41 of the Amended Complaint is the only allegation regarding transfers from 819D. *See* Compl. ¶ 41 (describing transfers from 819D LLC to 3 third parties). Although Plaintiff includes other allegations about transfers among defendants, none of them involves transfers from 819D and, therefore, Plaintiff has no recourse to void the transfers.

The purpose of the improper conveyance statute is to undo or void transfers from debtors that are intended to "delay, hinder or defraud creditors." Va. Code § 55.1-400. In *Price v. Hawkins,* 247 Va. 32, 37 (1994), the Court recognized a cause of action for an *in personam* judgment against grantees or transferees of assets. However, as far as the Moving Defendants are

aware, no court has ever imposed liability on related, non-debtor entities for transfers that **do not involve** the debtor. Accordingly, Plaintiff fails to state a claim against the Moving Defendants.

### C. Virginia Does Not Recognize a Claim for "Participation" in a Scheme to Improperly Convey Assets.

Plaintiff claims that the Moving Defendants are liable "through [their] participation in fraudulent and/or voluntary conveyances of assets." Am. Compl. ¶¶ 2, 4-11, 13-14. The Virginia Supreme Court has specifically rejected such a claim:

> Code § 55–80, however, does not impose liability upon the participants of a fraudulent conveyance. The statute merely "renders void every conveyance or transfer made 'with intent to delay, hinder or defraud creditors ... of or from what they are or may be lawfully entitled.'" This remedy returns the fraudulently conveyed assets to the transferor, but, as a general rule, it does not authorize "a court to award an *in personam* judgment when [the transaction] is set aside.
>
> In *Price v. Hawkins*, 247 Va. 32, 439 S.E.2d 382 (1994), we recognized a narrow exception allowing *in personam* judgments against recipients of fraudulent cash transfers, but that exception imposes liability specifically upon a grantee and it cannot be imputed to other participants or coconspirators. . . . In effect, the remedy unwound the transfer of the cash in the grantee's pockets; it did not impose liability upon the grantee by virtue of his participation in the transaction. Therefore, because avoidance of a transaction is the only remedy available under Code § 55–80, a claim for fraudulent conveyance is not a predicate unlawful act from which liability can be spread to others on a theory of civil conspiracy.

*La Bella Dona Skin Care, Inc. v. Belle Femme Enterprises, LLC*, 294 Va. 243, 256-57 (2017) (quotations omitted). Plaintiff's Amended Complaint is an attempt to obtain an *in personam* judgment against Defendants based on their alleged participation in transfers from 819D to other entities. No such claim exists under Virginia law.

### CONCLUSION

For the reasons set forth above, the Moving Defendants' demurrer should be sustained.

Dated: April 2, 2021

Respectfully submitted,

Laurin H. Mills (VSB No. 79848)
Kimberly Jandrain (VSB No. 72727)
Samek, Werther & Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
(703) 547-4693
Fax (703) 547-4694
Laurin@samek-law.com
kim@samek-law.com

6

## CERTIFICATE OF SERVICE

I certify that on April 2, 2021, I caused to be served, via electronic mail a copy of the

foregoing on:

Bethany R. Benes
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, VA 22030
bbenes@bethunebenes.com
*Attorney for Karl Garcia*

Christopher A. Glaser
Jackson & Campbell, P.C.
2300 N Street, N.W., Suite 300
Washington, D.C. 20037-1194
(202) 457-1612
CGlaser@JacksCamp.com
*Attorney for Andrew Rubin*

Mark Crawford
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Rd, Suite 210
Arlington, VA 22201
mcrawford@mdc-law.com
*Attorney for 819D LLC*

Kimberly Jandrain

# EXHIBIT A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| GARCIA, KARL, | |
| Plaintiffs, | Civil Action No. 2020 CA 002540 B |
| v. | Civil II - Calendar 11 |
| 819D, LLC et al, | Judge Hiram E. Puig-Lugo |
| Defendant. | |

**ORDER**

This matter is before the Court on Defendant Michelle Tygier's Motion to Dismiss, filed on June 29, 2020 and Defendant Andrew Rubin's Motion to Dismiss, filed on June 30, 2020. On June 13, 2020, Plaintiff filed an opposition to Defendant Rubin's motion and on July 14, 2020, Plaintiff filed an opposition to Defendant Tygier's motion. On July 21, 2020, Defendant Tygier filed her reply.

**Background**

On May 18, 2020, Plaintiff filed his Complaint against 819D, LLC, Andrew Rubin, Michelle Tygier, Regua, Urban Pace, Potomac Construction Group, and the Sanctuary Condominium Unit Owners Association. Plaintiff's Complaint asserts that Andrew Rubin was a board member of the homeowner's association governing the Property at issue and also the President of 819D, LLC. Plaintiff's Complaint asserts that Michelle Tygier was also a board member of the homeowner's association governing the Property at issue and an officer or director of 819D, LLC. Plaintiff alleges, in relevant part, that he identified defects on the Property and Defendants Tygier and Rubin represented that the defects would be fixed prior to Plaintiff's move-in on the Property. Plaintiff asserts, in relevant part, that Defendants Rubin and

Tygier had a duty to repair and/or replace any defects in the Unit and failed to do so.  Based on

the allegations in Plaintiff's Complaint, Plaintiff asserts, in relevant part, that Defendants Rubin

and Tygier engaged in a breach of warranty, violation of the Consumer Protection Procedures

Act ("CPPA"), and fraud.

## DISCUSSION

To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  *See Potomac Dev. Corp. v.*

*District of Columbia*, 28 A.3d 531, 543-44 (D.C. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Dismissal of a Complaint for

failure to state a claim upon which relief can be granted should only be awarded if "it appears

beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *See* Super. Ct. Civ. R. 12(b)(6); *Fingerhut v. Children's Nat'l Med. Ctr.*,

738 A.2d 799, 803 (D.C. 1999).

When considering a Motion to Dismiss, a Court must "construe the facts on the face of

the Complaint in the light most favorable to the non-moving party, and accept as true the

allegations in the Complaint." *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 174 (D.C. 1996).  A Court

should not dismiss a Complaint merely because it "doubts that a Plaintiff will prevail on a

claim." *See Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 210 (D.C. 1997).  However,

the Court need not accept inferences if such inferences are unsupported by the facts set out in the

Complaint. *See Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor must

the Court accept legal conclusions cast in the form of factual allegations. *Id.*

A pleading must contain a "short and plain statement of the claim showing that the

pleading is entitled to relief." *See* Super. Ct. Civ. R. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-

78 (2009).  To survive a Motion to Dismiss under Super. Ct. Civ. R. 12(b)(6), a Plaintiff must

provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the Plaintiff pleads

factual content that allows the Court to draw the reasonable inference that the Defendant is liable

for the misconduct alleged." *Id.*

### I.    Plaintiff's Breach of Warranty Claim against Defendants Tygier and Rubin

Under D.C. Code § 42.1903.16, "[a] declarant shall warrant against structural defects in

each of the units for 2 years from the date each unit is first conveyed to a bona fide purchaser,

and all of the common elements for 2 years."  The term "declarant" shall mean any person or

group of persons acting in concert who: (A) Offers to dispose of the person's or group's interest

in a condominium unit not previously disposed of; (B) Reserves or succeeds to any special

declarant right; or (C) Applies for registration of the condominium." D.C. Code § 42-

1901.02(11).

It is well established that one seeking to pierce the corporate veil on an alter ego theory

must prove by affirmative evidence the existence of a "unity of ownership and interest" and the

"use of the corporate form to perpetuate fraud or wrong." *Meshel v. Ohev Sholom Talmud Torah*,

869 A.2d 343, 355 (D.C. 2005) (citation omitted). In determining if these elements are met,

Courts "consider a range of factors, including whether corporate formalities have been observed;

whether there has been any commingling of corporate and shareholder funds, staff, and property;

whether a single shareholder dominates the corporation; whether the corporation is adequately

capitalized; and, especially, whether the corporate form has been used to effectuate a fraud." *Id.*

Piercing the corporate veil is a doctrine of equity and the "factor which predominates will vary in

each case...." *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984). Moreover, determining whether to

pierce the corporate veil is a practical test, "based largely on a reading of particular factual circumstances." *Id.* at 816 (quoting *Valley Finance, Inc. v. United States*, 629 F.2d 162, 172 ( D.C. Cir. 1980)). While a plaintiff need not plead "[that which] he needs to show to prevail at trial, the plaintiff must still allege sufficient facts regarding an alter ego relationship to 'satisfy Rule 8(a) and [*Ashcroft v. Iqbal* (citation omitted)].'" *Kelleher v. Dream Catcher, LLC*, 221 F. Supp. 3d 157, 158-59 (D.D.C. 2016).

Defendant Tygier asserts that Plaintiff's claim must fail because Plaintiff failed to allege or show that Tygier is a "declarant" and therefore, Tygier owed no duty to provide a warranty nor is she alleged to have provided a personal warranty. Defendant Tygier asserts that instead, Plaintiff entered into a Purchase Agreement with 819D, LLC, the developer and owner of the Unit and the Purchase Agreement included 819D, LLC's warranty against structural defects, as well as defects in workmanship and improper materials. Similarly, Defendant Rubin asserts that he is also not a declarant and did not owe a duty to Plaintiff to provide a warranty on the property. Defendant Rubin asserts that Rubin did not hold title to the Property, did not hold any interest in the Property, nor did he offer to dispose of any interest in the Property. Defendant Rubin asserts that he had no obligation to provide any warranty and in fact, did not provide a warranty.

In opposition, Plaintiff asserts that while Rubin and Tygier are not parties to the Purchase Agreement, and while 819D, LLC is the seller, 819D, LLC was established to serve the purpose of the alter ego of Rubin and Tygier. Plaintiff asserts that the Complaint sets forth facts that allege and allow the Court to infer that Rubin and Tygier may be liable as the alter ego of 819D, LLC and cannot shield themselves from personal liability.

Here, the Court finds that Plaintiff's Complaint does not include sufficient factual allegations satisfying Rule 8(a) to support an alter ego or veil piercing theory of liability. Plaintiff's Complaint contains one sentence that states "upon information and belief, 819D was established to serve the purpose of, and is, the alter ego or business conduit of Andrew Rubin and Michelle Tygier conducting business under its name." The aforementioned allegation is a legal conclusion and Plaintiff's Complaint is devoid of any sufficient factual allegations regarding an alter ego relationship between Rubin, Tygier and 819D, LLC. Therefore, even viewing the Complaint in a light most favorable to Plaintiff, Plaintiff's Complaint fails to state a claim for breach of warranty against Tygier and Rubin in their individual capacities, as they are not "declarants" under D.C. Code § 42-1901.02(11) and did not owe a duty to Plaintiff to warranty the Unit at issue. Accordingly, Count I breach of warranty claim against Rubin and Tygier is dismissed.

**II.   Plaintiff's CPPA Claim against Defendants Tygier and Rubin**

Under D.C. Code § 28-3904, it is a violation of the D.C. Consumer Protection Procedures Act ("CPPA") for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby. The CPPA only supplies consumers with cause of action against merchants selling them goods or services, and therefore there must be consumer-merchant relationship in consumer transaction involving sale of goods or services for act to apply. *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015). A "merchant" under the Act "means a person, whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary

course of business does or would supply the goods or services which are or would be the subject

matter of a trade practice." D.C. Code § 28-3901.

Defendant Tygier asserts that Plaintiff failed to make any allegations specific to Tygier to

show that Tygier is a "merchant" and does not explain, for example, the legal basis for Plaintiff's

assertion that Tygier had a duty to disclose any information to Plaintiff.  Tygier also asserts that

Plaintiff failed to explain how Tygier can be held personally liable for the acts of 819D, LLC or

the homeowner's association. Similarly, Defendant Rubin asserts that the CPPA does not apply

because Rubin is not a "merchant" for purposes of the CPPA.  Rubin asserts that he did not sell

the property, the deed identifies 819D, LLC as the seller, and Rubin has not acted in the capacity

of a merchant selling any item to Plaintiff.

In opposition, Plaintiff again reiterates that Rubin was the President of 819D, LLC and

therefore, can be held personally liable under the CPPA as a "merchant" because he was

"involved" in the sale and 819D, LLC was an alter ego for Rubin.  Plaintiff asserts that Rubin

made representations in the course of marketing the sale of the Unit to Plaintiff which violates

the CPPA.  Similarly, Plaintiff asserts that Tygier, as an officer of 819D, LLC, can be held

personally liable under the CPPA as a "merchant" because she made representations in the

course of marketing the sale of the Unit to Plaintiff which violates the CPPA.

In reply, Tygier asserts that Plaintiff's citations to a line of cases are not analogous to the

instant case. Further, Tygier asserts that Plaintiff waived his claims against Tygier.  To support

this assertion, Defendant Tygier includes the Purchase Agreement, referenced in Plaintiff's

Complaint and the document upon which Plaintiff forms much of his Complaint. The Purchase

Agreement, between Plaintiff and 819D, LLC, contains a provision which waives Plaintiff's

right to assert any and all claims arising out of or relating in any way to any oral or other

representations not contained in the Purchase Agreement. Specifically, the Purchase Agreement

states, in relevant part:

> This is the complete agreement between the parties…there are no other oral or other written agreements, representations, conditions, promises, or understandings directly or indirectly connected with this Agreement. Purchaser hereby waives and releases seller, its partners, affiliates, agents, employees, contractors and each of their respective successors and assigns, including, without limitation, any condominium association or other governing body formed in connection with the condominium, from any and all claims, losses, damages, expenses, costs, cause of action or other liabilities whether known or unknown, matured or unmatured, absolute or contingent, arising out of or relating in any way whatsoever to any such oral or other written agreement, representations, conditions, promises, or understandings.

Here, the Court finds that Plaintiff failed to allege facts sufficient to show that Rubin and

Tygier are "merchants" subject to the CPPA.  Plaintiff's Complaint is void of facts showing that

Rubin, Tygier, and Plaintiff had a consumer-merchant relationship in a consumer transaction.

Indeed, the seller of the Property was 819D, LLC and the purchaser was Plaintiff.  As explained

above, Plaintiff failed to show facts sufficient to pierce the corporate veil and does not allege

facts of any consumer-merchant relationship or consumer transaction between Rubin and Tygier

with Plaintiff.  Plaintiff's CPPA claim merely states that Rubin and Tygier had an "obligation" to

fully and accurately disclose to the public the characteristics and condition of the Property being

offered for sale and they violated their duty by misrepresenting material facts about the Property

which misled Plaintiff to purchase the Property. However, as stated in the Purchase Agreement

signed by Plaintiff, the Purchase Agreement constituted the entire agreement and any pre-signing

representations are not connected to the Purchase Agreement and/or binding.  Indeed, the

Purchase Agreement states: "there are no other oral or other written agreements, representations,

conditions, promises, or understandings directly or indirectly connected with this Agreement"

and the Purchase Agreement does not include any obligations on the part of Rubin and Tygier

who are not parties to the contract.   Therefore, Plaintiff's CPPA claims against Rubin and

Tygier shall be dismissed, as Rubin and Tygier are not "merchants" subject to the CPPA and

Plaintiff waived his claims against them when he signed the Purchase Agreement to which Rubin

and Tygier are not parties.

**III.   Plaintiff's Fraud Claim against Defendants Tygier and Rubin**

In order to make out a claim for Fraud the Plaintiff must show: (1) a false representation

in reference to material fact, (2) made with knowledge of its falsity, (3) with the intent to

deceive, and (4) action taken in reliance upon the representation. *See Saucier v. Countrywide*

*Home Loans*, 64 A.3d 428, 438 (D.C. 2013). It is well-established that allegations of fraud must

be pled with particularity. *See* Super. Ct. Civ. R. 9(b) (all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity); *Kowal v. MCI*

*Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (pleader must state the time, place

and content of the false misrepresentations, the fact misrepresented, and what was retained or

given up as a consequence of the fraud). Moreover, where a complaint is filed against multiple

defendants, the heightened pleading standard requires that the identity and role of individual

defendants alleged to have made false representations be specified in the complaint. *Phone*

*Recovery Servs., LLC v. Verizon Wash., DC, Inc.*, 191 A.3d 309, 322 (D.C. 2018).

"A corporate officer's tortious conduct, though committed in behalf of the corporation,

also creates personal and individual liability on his part." *Bethesda Salvage Co. v. Fireman's*

*Fund Ins. Co.*, 111 A.2d 472 (D.C. 1955).  However, the D.C. Condominium Act specifically

relieves condominium developers' agents of tort liability with respect to condominium

developments. *Barimany v. Urban Pace LLC*, 73 A.3d 964 (D.C. 2013).  Indeed, under D.C.

Code § 42-1903.09, "[a]n action for tort alleging a wrong done: (1) by any agent or employee of

the declarant or of the unit owners' association; or (2) in connection with the condition of any

portion of the condominium which the declarant or the association has the responsibility to maintain, **shall be brought against the declarant** or the association, as the case may be."

Defendant Tygier asserts that under D.C. Code § 42-1903, she is shielded from any potential personal liability arising out of statements she allegedly made as an agent or officer of 819D, LLC. Tygier asserts that Plaintiff's Complaint makes clear that the one alleged statement she made to Plaintiff was in the course of her duties as an agent for 819D, LLC. Accordingly, Tygier asserts that to the extend her statements give rise to a tort claim, the proper Defendant is 819D, LLC. Similarly, Defendant Rubin asserts that Plaintiff failed to allege facts to pierce the corporate veil and he cannot be held liable for his statements made as the agent for 819D, LLC. Defendant Rubin asserts that Plaintiff's Complaint makes clear that Plaintiff was aware that his dealings were with the principal 819D, LLC and not Rubin as an individual or agent. Further, Defendant Rubin asserts that even assuming he could be held personally liable, Plaintiff's fraud claim was not pled with the requisite particularity.

In opposition, Plaintiff asserts that Tygier and Rubin are "declarants" under the D.C. Condominium Act and therefore, can be held liable despite the D.C. Condominium Act relieving condominium developers' agents of tort liability with respect to condominium developments. Further, Plaintiff asserts that he alleged with particularity that Rubin and Tygier made several false representations and references paragraphs 11, 14, and 15 in his Complaint to support his assertion.

The Court finds that, as stated and found above, Tygier and Rubin are not "declarants" under D.C. Code § 42-1901.02(11) and therefore, are relieved of tort liability with respect to the Unit development at issue in this case. Further, the Court finds that Plaintiff's fraud claim was not pled with the requisite particularity. Indeed, Paragraph 11 of Plaintiff's Complaint names

five defendants and does not specify the role of the individual defendants alleged to have made
the false representations.  Instead, Plaintiff's Complaint states the Unit was advertised with false
representations and attributes liability to five defendants for the contents of the advertisement
with no particularity or specificity.   Plaintiff's fraud allegations fail to state the time, place and
content of the false misrepresentations, and the fact(s) misrepresented as it pertains to each
respective Defendant against whom Plaintiff is asserting a claim of fraud.  Therefore, Plaintiff
has failed to state a claim of fraud against Rubin and Tygier because as agents of 819D, LLC,
they are relieved from liability under the D.C. Condominium Act and Plaintiff failed to plead his
fraud claim with the requisite particularity.

## CONCLUSION

Based on the above findings, the relevant law, and the entire record herein, it is this 29th day
of July 2020, hereby:

**ORDERED** that Defendant Tygier's Motion to Dismiss is **GRANTED**; it is further

**ORDERED** that Defendant Rubin's Motion to Dismiss is **GRANTED**; it is further

**ORDERED** that Plaintiff's claims against Defendant Tygier and Defendant Rubin are
**DISMISSED**.

**IT IS SO ORDERED**.

Judge Hiram Puig-Lugo
*Signed in Chambers*

Copies via CaseFileXpress to all counsel of record.

**V I R G I N I A :**

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| **KARL GARCIA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2020-17040** |
| ) | |
| **THE RUBIN GROUP, LLC,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

### [PROPOSED] ORDER

This matter came before the Court on April 16, 2021, on the Demurrer of Defendants The

Rubin Group LLC, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th

Partners LLC, South Glebe LLC, Woodmore LLC, TRG Development LLC, 638 Newton Partners

LLC, Michelle Tygier and Robert Rubin (the "Moving Defendants") to Plaintiff's Amended

Complaint; and it

APPEARING that Plaintiff has failed to state a claim against the Moving Defendants;

It is ORDERED that the Demurrer to Plaintiff's Amended Complaint is SUSTAINED.

Entered this _____ day of April 2021

_____

Judge, Fairfax Circuit Court

**SEEN AND AGREED:**


___/s/ Laurin H. Mills_____
Laurin H. Mills, Esq. (Va. Bar No.79848)
Kimberly Jandrain, Esq. (Va. Bar No. 72727)
Samek Werther Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
Tel.: 703-547-4693
Facsimile: 703-547-4694
laurin@samek-law.com
kim@samek-law.com
*Counsel for Defendants Michelle Tygier;*
*The Rubin Group, LLC;*
*819 Capital LLC;*
*K Street Holdings LLC;*
*TR Holdings LLC;*
*2233-40th Partners LLC;*
*South Glebe LLC;*
*Woodmore LLC;*
*TRG Development LLC;*
*638 Newton Partners LLC; and*
*Robert Rubin*


**SEEN AND :**


_____
Bethany R. Benes (Va. Bar No. 85408)
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
Tel.: (703) 260-9322
bbenes@bethunebenes.com
*Counsel for Plaintiff Karl Garcia*

**SEEN AND :**

Mark Crawford, Esq. (Va. Bar No. 36153)
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Road, Suite 210
Arlington, Virginia 22201
Tel: 202-256-1244
Facsimile: 703-522-2264
mcrawford@mdc-law.com
*Counsel for Defendant 819D LLC*


**SEEN AND:**

Christopher A. Glaser, Esq. (Va. Bar No. 43491)
Meagan E. Roach, Esq. (Va. Bar No. 87955)
Jackson & Campbell, PC
2300 N Street, N.W., Suite 300
Washington, DC 20037
Tel: 202-457-1600
Facsimile: 202-457-1678
cglaser@jackscamp.com
mroach@jackscamp.com
*Counsel for Defendant Andrew Rubin*

**V I R G I N I A:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

|  |  |  |
|---|---|---|
| **KARL GARCIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 2020-17040** |
| | ) | |
| **THE RUBIN GROUP, LLC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER

THIS MATTER having come before the Court on (1) the Demurrer of Defendants The Rubin Group LLC, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40[th] Partners LLC, South Glebe LLC, Woodmore LLC, TRG Development LLC, 638 Newton Partners LLC, Michelle Tygier and Robert Rubin (the "Moving Defendants") to Plaintiff's Amended Complaint; (2) the Demurrer of Defendant Andrew Rubin to Plaintiff's Amended Complaint; and (3) the Motion to Compel Arbitration of Defendant 819D LLC and Supplemental Memorandum of Law in support of that motion; (4) the Opposition to Moving Defendants' Demurrer filed by Plaintiff Karl Garcia; (5) the Opposition to the Demurrer of Defendant Andrew Rubin filed by Plaintiff Karl Garcia; (6) the Opposition to the Motion to Compel Arbitration of Defendant 819D LLC filed by Plaintiff Karl Garcia; (7) the Supplemental Opposition to the Motion to Compel Arbitration of Defendant 819D LLC filed by Plaintiff Karl Garcia, and (8) the oral argument of counsel on April 2, 2021 and April 23, 2021;

In consideration of the arguments contained in said pleadings and the arguments of counsel heard in open Court during the April 2, 2021 and April 23, 2021 hearings; it is hereby

1

ORDERED that the Demurrers of the Moving Defendants and Andrew Rubin are overruled in part and sustained in part as set forth in the transcript attached hereto as Exhibit A, which is incorporated herein *pro haec verba,* as follows: (i) overruled with respect to Counts One and Two for the reasons stated by the Court, and (ii) sustained with respect to Counts Three and Four, which shall be dismissed with prejudice; and it is hereby

ORDERED that the Motion to Compel of Defendant 819D LLC is denied for the reasons stated by the Court, as set forth in the transcript attached hereto as Exhibit A, which is incorporated herein *pro haec verba*.

Entered this __29__ day of April 2021.

The Honorable Randy I. Bellows
Judge, Fairfax County Circuit Court

SEEN AND OBJECTED TO FOR THE REASONS
SET FORTH IN THE MOVING DEFENDANTS' BRIEFS AND
DURING ORAL ARGUMENT:


___/s/ Laurin H. Mills_____
Laurin H. Mills, Esq. (Va. Bar No.79848)
Kimberly Jandrain, Esq. (Va. Bar No. 72727)
Samek Werther Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
Tel.: 703-547-4693
Facsimile: 703-547-4694
laurin@samek-law.com
kim@samek-law.com
*Counsel for Defendants Michelle Tygier;*
*The Rubin Group, LLC;*
*819 Capital LLC;*
*K Street Holdings LLC;*
*TR Holdings LLC;*
*2233-40th Partners LLC;*
*South Glebe LLC;*
*Woodmore LLC;*
*TRG Development LLC;*
*638 Newton Partners LLC; and*
*Robert Rubin*


**SEEN AND Agreed as to the Court's denial of Defendant 819D LLC's Motion to
Compel Arbitration; Seen and Agreed as to the Court's ruling overruling of the
Demurrers as to Counts I and II; Seen and Objected to as to the Court's dismissal
of Counts III and IV for the reasons set forth in the pleadings and on the record:**


___/s/ Bethany Benes_____
Bethany R. Benes (Va. Bar No. 85408)
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
Tel.: (703) 260-9322
bbenes@bethunebenes.com
*Counsel for Plaintiff Karl Garcia*


3

SEEN and objected to as to denial of the Motion to Compel Arbitration and Dismiss or Stay Case for the reasons stated in open court and in 819D LLC's pleadings filed in support of its position:


_____/s/ Mark Crawford_____
Mark Crawford, Esq. (Va. Bar No. 36153)
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Road, Suite 210
Arlington, Virginia 22201
Tel: 202-256-1244
Facsimile: 703-522-2264
mcrawford@mdc-law.com
*Counsel for Defendant 819D LLC*


**SEEN AND AGREED AS TO THE DECISION REGARDING COUNTS III AND IV; SEEN AND OBJECTED TO FOR THE REASONS SET FORTH IN OPEN COURT AS WELL AS IN THE MEMORADNUM IN SUPPORT OF DEMURRER AS TO COUTSN I AND II :**


_____/s/ Christopher Glaser_____
Christopher A. Glaser, Esq. (Va. Bar No. 43491)
Meagan E. Roach, Esq. (Va. Bar No. 87955)
Jackson & Campbell, PC
2300 N Street, N.W., Suite 300
Washington, DC 20037
Tel: 202-457-1600
Facsimile: 202-457-1678
cglaser@jackscamp.com
mroach@jackscamp.com
*Counsel for Defendant Andrew Rubin*

4

# EXHIBIT A

**In The Matter Of:**

*Garcia v.*
*Rubin Group*

---

*Hearing*
*April 23, 2021*

---

*Misty Klapper & Associates*
*7900 Andrus Road*
*Suite 11*
*Alexandria, VA  22306*
*703-402-7555*

Original File garcia hearing.txt
Min-U-Script®

1  V I R G I N I A:

2       IN THE CIRCUIT COURT OF FAIRFAX COUNTY

3  -----------------------------x

4  KARL GARCIA                    :

5       Plaintiff,               :

6            v.                  :  Case No. 2020-17040

7  THE RUBIN GROUP, LLC, et al., :

8       Defendants.              :

9  -----------------------------x

10                              April 23, 2021

11       The above-captioned hearing was held

12  remotely, via Webex, before The Honorable Bellows,

13  Judge, in and for the Circuit Court of Fairfax

14  County, Virginia, at 11:15 a.m., taken by

15  Carla D. Siegismund, a Notary Public in and for the

16  Commonwealth of Virginia, when were present on

17  behalf of the respective parties:

18

19

20

21

22

1                    A P P E A R A N C E S

2

3    ON BEHALF OF THE PLAINTIFF:

4              BETHANY R. BENES, ESQ.

5              Bethune Benes, PLLC

6              4290 Chain Bridge Road, Suite 302

7              Fairfax, Virginia  22030

8              bbenes@bethunebenes.com

9

10   ON BEHALF OF THE DEFENDANT ANDREW RUBIN:

11             CHRISTOPHER A. GLASER, ESQ.

12             Jackson & Campbell, P.C.

13             2300 N Street, N.W., Suite 300

14             Washington, D.C. 20037

15             202-457-1612

16             CGlaser@JacksCamp.com

17

18

19

20

21

22   (continued)

A P P E A R A N C E S

(continued)


ON BEHALF OF THE DEFENDANT 819D LLC:

      MARK CRAWFORD, ESQ.

      Law Offices of Mark D. Crawford, PLLC

      1005 North Glebe Road, Suite 210

      Arlington, Virginia 22201

      mcrawford@mdc-law.com


ON BEHALF OF THE MOVING DEFENDANTS:

      KIMBERLY JANDRAIN, ESQ.

      LAURIN H. MILLS, ESQ.

      Samek, Werther & Mills LLC

      2000 Duke Street, Suite 300

      Alexandria, Virginia 22314

      703-547-4694

      kim@samek-law.com

1          P R O C E E D I N G S

2          - - - - - - - - - - -

3          (Whereupon, the court reporter was sworn.)

4          THE COURT:  Before the Court is the

5  motion to compel to arbitration and the demurrers.

6  I've already heard argument on the motion to compel

7  arbitration, but I requested additional briefing,

8  which I received and have reviewed.  If there's

9  anything else anyone else wants to say on the

10  arbitration issue, I'm glad to hear that now and

11  then I'll decide that issue -- announce my decision

12  on that issue.

13          So any volunteers?

14          MR. CRAWFORD:  Your Honor, Mark

15  Crawford for 819D LLC, and I guess I'll volunteer

16  since it's my motion.

17          I don't really have anything to add to

18  the supplemental written argument that was provided

19  to the Court.  I would only say, and just very

20  briefly -- and I can discuss this in more detail if

21  the Court would like -- but very briefly,

22  Plaintiff's position in the supplemental opposition

1   to the motion to compel is, I suggest, simply not

2   persuasive on the question of can this case be fully

3   resolved in Fairfax absent a disposition in the

4   District of Columbia or in the face of a favorable

5   verdict for 819D in the District of Columbia.

6          And the primary case relied upon by

7   Plaintiff is very significantly distinguishable from

8   our case insofar as in that case Plaintiff already

9   had a judgment in hand against that defendant

10  creditor and the sum of plaintiff judgment exceeded

11  the amount of the transfer at issue.  So there was

12  no question that the full amount of the transfer

13  would potentially be available to the plaintiff in

14  that case if plaintiff could establish a fraudulent

15  transfer.  And that's simply not our situation here.

16         The measure of any personal judgment

17  that would be awarded by the Fairfax County Circuit

18  Court to Plaintiff would have to be measured

19  by -- assuming such a judgment was proper and could

20  be entered, but it would have to be measured by the

21  disposition of the D.C. dispute and what Plaintiff

22  established in terms of his own entitlements.

1           This court can't award a money

2 judgment for $2 million to Plaintiff irrespective of

3 the outcome of the District of Columbia litigation.

4 And we've set forth our position, I believe, on that

5 sufficiently in our pleadings.

6           Like I said, if the Court has

7 questions or would like me to address the issues in

8 greater detail, I can.  But other than that, I'll

9 emphasize that I don't have anything further at this

10 point.

11           THE COURT:  Benes.

12           MS. BENES:  Yes, Your Honor.  Bethany

13 Benes on behalf of Karl Garcia.  First, before I say

14 anything, I do want to thank the Court and counsel

15 for everybody's accommodations last week.  Me and my

16 family very, very much appreciate the kindness that

17 everyone showed.  I want to say thank you before I

18 say anything else.

19           As far as the question about whether

20 this case can fully be resolved here, the answer is

21 yes.  And counsel's attempt to distinguish this case

22 from the Price case really is a moot point because

1  nothing in Price says that a judgment must be

2  obtained first before an in personam judgment is

3  entered against those involved.

4          Such a ruling would actually

5  contradict the language of the statutes that

6  specifically say that this can be brought before

7  obtaining a judgment and that the Plaintiff is

8  entitled to all the relief that he otherwise would

9  have and that the Court is allowed to issue an order

10  against the debtor for the full amount of the claim.

11          Nothing in the statute requires or

12  conditions the judgment upon any prior or any

13  subsequent judgment in another case.  The case law

14  is very clear that a creditor includes a potential

15  creditor.  So I think that the attempt to

16  distinguish that is really not persuasive, Your

17  Honor.

18          And I did want to note that the motion

19  or the supplemental motion briefing that was filed

20  relied upon a case called La Bella Donna.  And

21  La Bella Donna did not change the ruling in Price.

22          La Bella  Donna was actually a case

1  that involved a note, not a transfer of money, and

2  so the note was able to be voided, quite simply,

3  which the Price Court noted that such a transfer of

4  money is not so simply voided.

5              Also, La Bella Donna related to a

6  conspiracy claim.  We don't have a conspiracy claim.

7  But the La Bella Donna holding was that a fraudulent

8  conveyance is not a predicate unlawful act for

9  liability in a conspiracy claim.  So because we

10 don't have any conspiracy claim here, that case is

11 not persuasive or binding or govern the issues here.

12             What is at issue here is that

13 Mr. Garcia is a creditor and that the improper

14 conveyances occurred.  And that does not require any

15 ruling or determination in any other case.  If

16 Mr. Garcia is successful here, he will have a

17 judgment pursuant to 55.1-400, 401 and 402,

18 potentially 403, and be entitled to immediate

19 enforcement.  This is consistent with the

20 legislature's intent, which was discussed in our

21 briefing, to punish defrauders.  This is a separate

22 wrong, and with the finding of a separate wrong

1  comes a separate enforceable judgment.

2          THE COURT:  Anything else you want to

3  say, Mr. Crawford?

4          MR. CRAWFORD:  Yes, Your Honor.

5          The question before the Court and the

6  question that the Court specifically asked us to

7  address in our supplemental briefing was simply not

8  before the Court in Price.  The Court in Price

9  carved out a narrow exception to the general rule

10  that one cannot obtain an in personam judgment under

11  the specific facts of that case.  And every case

12  that's discussed Price has recognized as a, quote,

13  narrow exception that was fact specific to the facts

14  and circumstances there.  Any more on that, and I'll

15  be repeating myself.

16          Beyond that, the reliance on the

17  language in section 402, 55.1-402, simply

18  contradicts Plaintiff's position that has been

19  asserted over and over in this case by Plaintiff,

20  that this case has nothing to do with the underlying

21  dispute in the District of Columbia.

22          But when you have to go to the word to

1    say, any damages -- I'm paraphrasing a bit -- any

2    damages to which Plaintiff may be entitled against

3    that creditor, you can't go there without going to

4    the underlying dispute, which for numerous reasons

5    that we've already brief, I submit, is part and

6    parcel of what's at issue here, but you can't

7    separate those two things.

8                 And it simply would turn the statute

9    on its head to say that you can just pick a number

10   that the damages are measured by the transfer and a

11   plaintiff can recover the full value of any

12   transfer, whether it's $10 or $10 million,

13   irrespective of whether that particular defendant

14   owes anything on any grounds to the plaintiff.  And

15   that is essentially the position that Plaintiff's

16   taking here.

17                 THE COURT:  All right.  The motion to

18   compel arbitration is denied.  The Court finds this

19   matter could be resolved without there first being a

20   resolution of the D.C. case.  An action to void

21   fraudulent conveyance may proceed without first

22   obtaining a judgment against the debtor under

1    Virginia Code 55.1-402; In Luria versus Board of

2    Directors of Westbriar, 277 Virginia 359, 2009, thus

3    a creditor includes a potential creditor if the

4    debtor has actual or adequate notice of the claim.

5    Therefore, this action may proceed if Plaintiff is a

6    potential creditor of Defendants and Defendants had

7    actual or adequate notice of the claim.  Whether

8    Plaintiff properly pled that Defendants had adequate

9    or actual notice of the claim will be addressed in

10   the demurrer.

11            The next question is whether Defendant

12   is entitled to arbitrate this dispute.  The Court

13   finds Defendants not entitled to arbitrate this

14   dispute because this dispute is not a

15   contract-generated dispute.

16            Unlike the action currently stayed in

17   D.C. Superior Court, the Amended Complaint in this

18   case does not state a claim for breach of warranty

19   or breach of contract rising out of the sale of the

20   condominium, like the D.C. Superior Court case does,

21   rather Plaintiff here alleges Defendants

22   fraudulently conveyed asset -- Defendants

fraudulently conveyed assets, hiding assets to
render themselves judgment-proof. That act does not
appear to be a, quote, contract-generated dispute
that arises out of or is related to the purchase
agreement. So that's my decision on the motion to
compel arbitration.

We'll turn now to the demurrers, and
I'll here argument from you, Mr. Crawford, or
whoever is arguing. Ms. Jandrain.

MS. JANDRAIN: Thank you, Your Honor.
Kim Jandrain on behalf of what we've called the
moving Defendants, which are all the Defendants
except for Andrew Rubin and 819D LLC.

As Your Honor already knows, is
familiar with this case, the Plaintiff in this case
is Karl Garcia. He purchased a condominium in April
of 2017 from 819D LLC.

In May of 2020 Garcia filed an action
in D.C. arising out of alleged defects associated
with that condominium. He sued numerous entities,
including some unrelated third-parties that were
involved in marketing and developing that property.

1          He also sued 819D and Ms. Tygier and

2     Andrew Rubin under theories of breach of warranty,

3     fraud, unfair or deceptive trade practices.  And he

4     sought to hold Ms. Tygier and Andrew Rubin

5     individually liable, as well, under an alter ego

6     theory.

7          On July 29th of 2020 the D.C. Superior

8     Court dismissed the claims against Ms. Tygier and

9     Ms. Rubin.  And we've attached a copy of that

10    Court's order from July of 2020.  And in that order

11    the Court stated, Here, the Court finds that

12    Plaintiff's complaint does not include sufficient

13    factual allegations satisfying Rule 8 to support an

14    alter ego or veil piercing theory of liability.

15         Those claims against Ms. Tygier and

16    Mr. Rubin were dismissed and the Plaintiff did not

17    amend the complaint to reassert, to reallege alter

18    ego or other claims against Ms. Tygier or Mr. Rubin.

19    Although, I understand the Plaintiff has amended the

20    complaint on two separate occasions since then for

21    other reasons.

22         So at this time Mr. Garcia does not

have any claims against Ms. Tygier or The Rubin
Group or any of the other Defendants that I
represent except for the claims in this case.

In October of 2020 Mr. Garcia filed
this action against 819D and 12 other Defendants.
Immediately after filing the action, Mr. Garcia
issued -- or his counsel issued subpoenas to banking
institutions seeking all financial records relating
to all 13 Defendants.

The focus of this case, Your Honor, is
on alleged improper conveyances made for the purpose
of hindering, delaying, or defrauding creditors.
The actions are brought primarily under the
fraudulent and voluntary conveyance statutes at
55.1-400 and 401.

Now, according to the Supreme Court,
these statutory provisions target transactions
designed to place a debtor's assets beyond the
reach -- beyond his creditor's reach.  The statute
creates liability for debtors who make these types
of conveyances, and they also allow a creditor to go
after recipients of those transfers.

1          I think Mr. Crawford already

2    referenced the Price v. Hawkins case, allows for

3    in personam judgment against recipients of those

4    transfers.

5          So the key, Your Honor, to stating the

6    claim under these statutory provisions is that the

7    plaintiff must be a creditor and the defendant must

8    be a debtor or a recipient of a fraudulent or

9    voluntary transfer.

10          Now, the statute does not define what

11    a debtor is.  But the Supreme Court in Luria has

12    said that to be a debtor you must have adequate and

13    actual notice of a specific potential claim.  Here,

14    as I mentioned, the Plaintiff has claims against

15    819D which are pending in D.C. Superior Court.

16          The Plaintiff is also alleging that he

17    is the creditor of Ms. Tygier, Mr. Rubin, and the

18    Rubin Group.  Although, as I said, he doesn't have

19    claims against any of those entities.  And the alter

20    ego and veil piercing claims that were initially

21    alleged in D.C., have since been dismissed.  And the

22    standard dismissal, which Mr. Garcia cited in his

1  motion papers, in which the Court adopted in D.C.

2  when considering the motion to dismiss, was the

3  dismissal was only appropriate if, quote, it appears

4  beyond doubt that the Plaintiff can prove no set of

5  facts in support of his claim which would entitle

6  him to relief.  And under that standard, Your Honor,

7  the D.C. Superior Court dismissed the alter ego and

8  veil piercing claims against Ms. Tygier, Mr. Rubin.

9  And the Plaintiff did not reallege or reassert those

10 claims.

11         So the Plaintiff is taking the

12 position, Your Honor, regardless of what happened in

13 D.C., Mr. Garcia may still be a creditor of

14 Ms. Tygier, The Rubin Group, the rest of my clients,

15 because at some point in the future he may assert

16 alter ego claim.  This argument fails for at least

17 two reasons, Your Honor.

18         First, from a pure pleading standard,

19 there are virtually no factual allegations in the

20 Amended Complaint in this case that Ms. Tygier or

21 The Rubin Group are alter egos of 819D LLC.  I went

22 back and I looked through, I scoured, the Amended

1    Complaint last night.  There is literally one

2    paragraph -- it's paragraph 65 -- where the

3    Plaintiff alleges that the Defendant entities --

4    819D, all the other entities -- were the stooges and

5    instruments of Andrew Rubin and Tygier, Ms. Tygier,

6    and that's it.  There's no other allegations about

7    why the Plaintiff believes that Ms. Tygier is an

8    alter ego.  There's conclusory allegations and

9    there's allegations regarding certain distributions

10   among the companies, but that's not the standard for

11   asserting a claim for alter ego or veil piercing.

12              So the matter of pleading, there are

13   no allegations of an alter ego claim.  The Plaintiff

14   has not provided any notice of what that claim may

15   even look like.

16              The second issue, Your Honor, with the

17   Plaintiff's position in this case is it's

18   practically untenable.  The alter ego claims were

19   dismissed in D.C.  And the Plaintiff, in his

20   opposition to our demurrer, has said, well, Virginia

21   recognizes or allows a creditor to collect on a

22   judgment for up to 20 years.  That's the statute of

1  limitations for collecting on a judgment.  And at

2  some point in the next 20 years the Plaintiff may

3  have an alter ego claim against Ms. Tygier even

4  though he has not articulated a factual basis for

5  that claim and even though that claim was dismissed

6  already by the D.C. Superior Court.

7           So, Your Honor, you can imagine a

8  situation where a plaintiff, as a potential creditor

9  of an entity, would come into Virginia, would name

10  all of the shareholders, all the members, all of the

11  affiliates of that entity, seek all of their

12  financial records under a fraudulent or improper

13  conveyance claim without even articulating the basis

14  for that claim, because at some point in the next 20

15  years he may come up with a reason to assert an

16  alter ego claim.

17           Surely, Your Honor, that is not what

18  these statutory provisions anticipate or

19  contemplate.  It's an abuse of the system, it's an

20  abuse of the process, and it's not what's allowed

21  under the statute.

22           The statute only allows a potential

1   creditor to initiate an action against a debtor or a

2   transferee.  The statute provides plenty of

3   protection here for Mr. Garcia.  He has asserted

4   claims against 819D and he's entitled, if he can

5   establish 819 as a debtor, to pursue discovery

6   regarding those transfers.  He has not alleged any

7   transfers to my clients in his Complaint.  For these

8   reasons, Your Honor, we submit that Moving

9   Defendants' demurrer should be sustained.

10              I believe Mr. Glaser is going to speak

11  to the arguments on behalf of his client.

12              THE COURT:  All right.  Mr. Glaser.

13              MR. GLASER:  Thank you, Your Honor.

14              First of all, Your Honor, there's no

15  opposition in the opposition to Andrew Rubin's

16  demurrer presented as to Count IV.  That's the

17  illegal distributions claim.

18              As to Count III, the breach of

19  fiduciary claim, the parties appear to be in

20  agreement that at least in a typical case, with an

21  outsider -- excuse me, Your Honor.

22              THE COURT:  At this point I don't need

1  to hear from you with respect to either Count 3 or

2  Count 4.  After I hear from Ms. Benes, if I need to

3  hear further from you, I'll let you know.

4         MR. GLASER:  Okay, Your Honor.  If I

5  could move on, then, to Counts 1 and 2.

6         THE COURT:  Those I do need to hear

7  from you on.

8         MR. GLASER:  In order to be a creditor

9  of 819D -- Your Honor's already noted the Luria

10  case -- there must be actual notice of a potential

11  claim.  In that regard, Karl Garcia is not a

12  creditor of Andrew Rubin.  Andrew Rubin, as

13  Ms. Jandrain mentioned, was dismissed on July 29 of

14  last year.  Karl Garcia is, at most, a potential

15  creditor of 819D.

16         In this case, Karl Garcia alleges

17  three separate notices regarding his potential claim

18  against 819D.  The first, which was either in April

19  or May of 2017, is defined in the Amended Complaint

20  as the, quote, punch list items.  The second notice

21  was August 2017, defined in paragraph 23 as the

22  common area punch list.  And the third and final

1   notice was March 2018, defined in paragraph 26 as

2   the, quote, detailed letter.  Though no details are

3   given in the Amended Complaint.

4           The Amended Complaint identifies only

5   two sets of transfers from 819D.  The first is

6   July 2017.  That's in paragraph 37.  The second is

7   October of 2017.  That's in paragraph 41.

8           Importantly, the only transfer to

9   Andrew Rubin was the July 2017 transfer, which is

10  even before the August 2017 common area punch list.

11          Punch list items are not structural

12  defects.  Structural defects are defined similarly

13  in D.C. as they are in Virginia, which is a defect

14  which reduces the stability or safety of the

15  structure.

16          As to the claims against Andrew Rubin

17  here, the Luria case is certainly central and

18  certainly squarely on point.  Luria states, quote,

19  we hold that the notice required to create creditor

20  status is actual notice of a specific potential

21  statutory warranty claim, end quote.

22              In doing so, what Luria does is

confirm that notice of punch list items is not

actual notice of structural defects.  Karl Garcia

himself distinguishes in his Amended Complaint

between those punch list items and the purported,

quote, detailed letter.

Paragraph 23 lists the punch list

items.  Those are not structural.  Now, presuming,

but without conceding, that the March 2018 letter is

actually a detailed letter and does actually

reference structural defects, that would be the very

first notification, and that is after the transfers

from 819D.

As the only potential debtor in this

case is 819D, Andrew Rubin being dismissed from the

D.C. case, the transfers have to be from 819D at a

time in which it had actual notice.  There's no such

allegation in this case.  The case should be

dismissed.  Thank you.

THE COURT:  Ms. Benes.

MS. BENES:  Good morning, Your Honor.

Bethany Benes again for Plaintiff, Karl Garcia.

Your Honor, the matter before the

1    Court is a demurrer.  And I am sure Your Honor knows

2    the standard on demurrer is that all allegations

3    taken in the Complaint must be taken as true for

4    purposes of this hearing, in a determination of this

5    motion.

6              The Complaint sufficiently pleads both

7    that there was notice -- in fact, there are nine

8    different allegations of notice and I'm going to go

9    through them with your Your Honor right now -- but

10   also that the notice put Andrew Rubin, Ms. Tygier,

11   The Rubin Group, and 819D on actual notice.

12             The Defendants attempt to argue that a

13   debtor is only one in which there is a current

14   pending case made against.  First of all, that is

15   not what a debtor is.  A debtor is just somebody who

16   has notice of a claim, an anticipated claim.

17             And they also ignore that the case

18   that's currently proceeding in the D.C. Superior

19   Court is against 819D, doing business as

20   The Rubin Group.  So any argument that 819D is the

21   only debtor is misplaced and it's inaccurate.

22             As for Andrew Rubin and Ms. Tygier, it

1   is correct that they were dismissed at the pleading

2   stage in the District of Columbia.  The District

3   of Columbia's ruling, however, is not a final

4   determination as to their liability.  And since that

5   ruling, there is clear evidence that the corporate

6   shields should be pierced.  For example, that they

7   are no corporate formalities that were followed.

8   Their personal use of the corporate funds to pay

9   lavish personal expenses.  So the case right now in

10  D.C. is stayed, and so we cannot amend or bring

11  those parties back in right now.  I submit to Your

12  Honor that is going to probably happen once the case

13  is not stayed.

14              So the alter ego theories that

15  Ms. Jandrain was referring to, and Mr. Glaser as

16  well, are preserved.  And Virginia specifically

17  reserves those, not only while the case is pending

18  but also after the case and the judgment is

19  obtained, to allow the creditor to go after whoever

20  is really liable, whether it be 819D,

21  The Rubin Group, Ms. Tygier, or Mr. Rubin.

22              With regards to those specific

1　allegations in the Complaint, Your Honor, there are

2　nine different notices.  And I understand the

3　Defendants are trying to attempt to have a

4　determination as to the sufficiency of the notice

5　now, I submit to Your Honor that that is something

6　for the factfinder to decide at trial.

7　　　　　　　　Once the actual notices and the

8　contents of the notice are put into evidence and

9　given to the jury in this case to decide what those

10　contain and whether that put the debtors on actual

11　notice.

12　　　　　　　　But specifically with regards to the

13　demurrer, paragraph 19 alleges that Andrew Rubin,

14　Ms. Tygier, and The Rubin Group, as well as 819D,

15　restored the property at issue in the D.C. case.

16　　　　　　　　Paragraph 20 alleges the very first

17　notice that was given to the Defendants.  And while

18　Mr. Glaser referenced structural defects, such an

19　argument ignores the fact that the D.C. case, as the

20　defects or the problems that needed to be notified

21　were, did not -- were not limited to structural

22　defects.  There's a long list, including many

1  reports, that lists all of the problems at issue.

2  So focusing in on structural defects is erroneous.

3             So paragraph 20, the first notice that

4  was given on April 22.  The second notice was

5  alleged in paragraph 21, and that was with

6  Ms. Tygier personally on May 1.  June 23, 2017,

7  there was a third notice, and that's alleged in

8  paragraph 22.  In paragraph 23, the fourth notice is

9  alleged.  In 24, the fifth notice is alleged.  In

10  26, the sixth notice is alleged.  In 28, the seventh

11  notice is alleged against The Rubin Group, 819D,

12  Mr. Rubin, and Ms. Tygier.  In paragraph 31, the

13  eighth notice is alleged.  And in paragraph 33, the

14  ninth notice is alleged.

15             And so whether any of those or all of

16  those and which one of those constitutes sufficient

17  notice will be something that the trier of fact will

18  determine once the evidence is fully before the

19  Court.

20             Counsel attempts to pinpoint this case

21  as being governed by Luria in the since that there

22  have been arguments that Luria said a punch list

1  cannot be a sufficient notice.  And that's a

2  stretch, Your Honor.  As Your Honor knows, and as

3  the Virginia Supreme Court has ruled, these cases

4  are heard on a fact-by-fact and case-by-case basis.

5          And so while the punch list at issue

6  in Luria may not have been sufficient, it is very

7  possible that what we term as the punch list in this

8  case is sufficient.  That is not to be determined

9  today, though.  That is to be determined at trial.

10         So taking the allegations that have

11  been pleaded for purposes of demurrer as true

12  against The Rubin Group, Ms. Tygier, Andrew Rubin,

13  and 819D, the Complaint sufficiently puts them on

14  notice of the claims that are against them as

15  debtors, by Mr. Garcia as a creditor.

16         As to the remaining Defendants, the

17  Virginia Supreme Court has established that a

18  liability extends to both the grantor and the

19  grantee.  Virginia also recognizes what it refers to

20  as badges of fraud.  And those include retention in

21  the interest of the transferring property, transfers

22  between family members for alleged debt, threat of

1  litigation by a creditor at the time of the

2  transfer, and lack of consideration for the

3  transfer.

4         The Amended Complaint not only pleads

5  that the four Defendants previously mentioned are

6  grantors, it also sufficiently and very detailedly

7  describes the transactions at issue.  It describes

8  how each of the remaining Defendants is a grantee of

9  the grantors of the improperly conveyed funds.

10        In paragraph 46 it gives a specific

11  transaction with regards to 819 capital.  As to K

12  Street Holding, the allegations of the transactions

13  are set forth in paragraphs 46, 47, 48, 52, 53, 54,

14  55, 56.  I mean, I can go on and note for Your Honor

15  all of the specific paragraphs that allege the

16  transactions.  But in some there are 11 transactions

17  between the Moving Defendants or involving the

18  Moving Defendants as either grantors or grantees.

19  And there are 19 transactions that are specifically

20  set forth involving Mr. Rubin.

21        The allegations are more than

22  sufficient to put the Defendants on notice of the

1  nature of the claims against them today.

2          I heard Your Honor mention Counts 3

3  and 4 and that he did not need to hear about those.

4  I'm not sure if Your Honor wants to hear from me as

5  to those.

6          THE COURT:  The reason I said I didn't

7  need to hear from them is I was inclined to sustain

8  the demurrer with prejudice.  So if you want to be

9  heard on those, they need to be heard now.  Based on

10  my review of the counts -- I didn't mean to give you

11  an impression I didn't need to hear -- because I was

12  so convinced of your position.  It's actually quite

13  the opposite.

14          MS. BENES:  No.  Thank you for that

15  clarification, Your Honor.  Thank you for the

16  opportunity to address them.

17          A breach of fiduciary duty claim in

18  Virginia is not limited actually to members of an

19  LLC.  And both in Luria and in Marshall, the Court

20  made it clear that a creditor of an entity is

21  entitled to a breach of fiduciary duty claim.  And

22  that is what we have here.

1          We have claims where Mr. Garcia is a

2    creditor of The Rubin Group, as well as the other

3    entities involved, and that managing members --

4    Mr. Rubin and Ms. Tygier -- allowed and directed

5    these funds to be improperly conveyed, including to

6    themselves, so that those funds could be kept out of

7    the hands of the debtors' creditor.  And that is a

8    breach of fiduciary --

9          THE COURT:  Ms. Benes, hasn't the

10   Supreme Court not recognized that a member of an LLC

11   owes a fiduciary duty to a third-party creditor?  In

12   Luria, they said they assume, without deciding.  So

13   they haven't decided it.

14         MS. BENES:  Yes, Your Honor, that is

15   correct that that statement was made.  However, they

16   cite to Marshall.  And in Marshall the Virginia

17   Supreme Court did hold that, and I can -- I believe

18   it was cited in our opposition, and I can pull that

19   citation for you, Your Honor.

20         THE COURT:  Marshall dealt with

21   corporate directors.  It didn't deal with an LLC,

22   right?

1          MS. BENES:  Correct.  It was prior to

2     the LLC act being enacted.  However, it is no

3     different than the issues in Marshall.

4          THE COURT:  Okay.  Well, I understand

5     that argument.  Is there anything else you want to

6     say about that --

7          MS. BENES:  As to Count 4 for illegal

8     distributions, the same argument applies.  I'm happy

9     to answer any questions that Your Honor may have.  I

10    fully understand where Your Honor is leaning

11    towards.

12         THE COURT:  The Count 4 issue from the

13    Court is one of standing.

14         The concern the Court has is that you

15    don't have standing to bring this claim because the

16    LLC is the proper Plaintiff to bring an action

17    against a member for unlawful distributions.  That's

18    the Court concern, that you just don't have

19    standing.

20         MS. BENES:  I hear Your Honor's

21    concern.  That was the exact case that was brought

22    in Luria, was that it was a creditor who brought it

1  for a statutory violation of making distributions to

2  keep the funds out of the hands of the creditor.

3              THE COURT:  All right.  Anything else

4  you want to say?

5              MS. BENES:  Your Honor, I believe the

6  Complaint or the Amended Complaint is sufficiently

7  pleaded according to Virginia's notice pleading

8  standard, and we ask you overrule the demurrer.  To

9  the extent that Your Honor is inclined to sustain

10  any counts or all of the Amended Complaint, we would

11  seek leave to amend, of course.

12              THE COURT:  Okay.

13              MS. BENES:  Thank you.

14              THE COURT:  All right.  Is there any

15  rebuttal?  I can give you a few minutes if there's

16  anything else that either defense counsel wishes to

17  say.

18              MS. JANDRAIN:  I don't have any to add

19  at this point, Your Honor.

20              MR. GLASER:  Your Honor, I only have

21  two minor points, and I'll make them fairly quickly.

22              The stay in the D.C. case, Ms. Benes

1  brought that up, I just want to explain what's going

2  on there.

3          Well after Andrew Rubin was dismissed,

4  the Superior Court ordered that action to go to

5  arbitration.  Ms. Benes' client, Karl Garcia, then

6  appeals the arbitration order and moved for a stay.

7  So to contend that there was some stay put in place

8  either over objection or by another party, I think,

9  would be misplaced.

10          The second thing to say, Your Honor,

11  there are a number of notices in the Amended

12  Complaint.  Our focus on the March 2018 notice is

13  because that is the first potential structural

14  defect notice.  And I want to underscore "potential"

15  because the Amended Complaint does not say what

16  that, quote, detailed notice is in regard to.

17          There are a number of notices after

18  that.  But, again, all of those are after

19  distributions.  So, frankly, they're simply not

20  relevant under the Luria case.

21          THE COURT:  Mr. Glaser, with respect

22  to Count 3 and 4, do you agree with the Court that

1    the Supreme Court has not recognized at this point

2    that an LLC -- a member of an LLC owes a fiduciary

3    duty to a third-party creditor and that the Court

4    should not extrapolate from Marshall to make that

5    finding?

6                    MR. GLASER:  I do, Your Honor.  We

7    cited a number of cases in our memorandum.  Those

8    are good law.

9                    THE COURT:  And with respect to

10   Count 4, I raised with Ms. Benes the concern the

11   Court had as to whether her client had standing.

12                   She believes that -- I think she cited

13   Luria as establishing that her client has standing

14   in this case as a creditor.  What's your view on

15   that.

16                   MR.  GLASER:  Again, Your Honor, I

17   would rely on the cases that we cited in our

18   memorandum.  I believe the Supreme Court's been very

19   clear.  Those actions must be brought as derivative

20   actions.  And that's not what was brought in this

21   action.

22                   THE COURT:  All right.  The demurrer

1   is sustained in part and overruled in part.

2                The demurrer is overruled as to

3   Count 1, fraudulent conveyance, and as to Count 2,

4   voluntary conveyance.  For the purposes of demurrer

5   and accepting all the allegations in the Amended

6   Complaint as true, Plaintiff has pled that he is a

7   potential creditor of Defendants.

8                In the Luria case the Supreme Court

9   concluded that a creditor, under Virginia Code

10  55.1-402, includes a potential creditor if the

11  debtor has adequate or actual notice of the claim,

12  depending on the type of claim.

13               Plaintiff has sufficiently pled in his

14  Complaint that he's a potential creditor of

15  Defendants and that Defendants had either adequate

16  or actual notice of the claim.  Whether the notice

17  given to Defendants was adequate or actual is a

18  question of fact for the factfinder to resolve.

19               Regarding whether Plaintiff can obtain

20  an in personam judgment against Defendants,

21  generally a creditor obtains a lien on the assets

22  that were alleged to have been fraudulently

1  transferred once the fraudulent transfer has been

2  unwound, under 55.1-402.  However, the Supreme Court

3  carved out a narrow exception in Price versus

4  Hawkins, which the Court allowed the Plaintiff to

5  obtain an in personam judgment where the evidence

6  showed the grantees assisted the debtor in hiding

7  cash assets that the creditor otherwise would have

8  reached.

9           Whether this case falls into that

10  exception articulated in Price is a question for

11  trial.  The Court rejects Defendants' veil piercing

12  argument because the grantees of the fraudulent

13  conveyances are necessary parties to the action,

14  Tucker versus Foster at 154 Virginia 182, at 194,

15  195, 152 Southeast 376 of 1930.

16           With respect to Count 3 and 4, the

17  demurrers are sustained, and they're sustained with

18  prejudice.  The reason I'm sustaining them with

19  prejudice is I don't believe they can be fixed given

20  the current state of the law.

21           The Plaintiff is, in the Court's

22  view -- well, let me just say that the Supreme Court

1  at Luria used the phrase, assumed without deciding,

2  that members of an LLC may owe a fiduciary duty to

3  third-party creditors as corporate directors do

4  under the Marshall versus Fredericksburg Lumber

5  Company.

6            Because the Supreme Court has not

7  explicitly extended this duty to members of an LLC,

8  the Court declines the invitation now to impose a

9  fiduciary duty to third-party creditors on members

10 of an LLC.

11           With respect to Count 4, the demurrer

12 is also sustained with prejudice, because the Court

13 finds that the Plaintiff does not have standing to

14 bring this claim, because the LLC is the proper

15 Plaintiff to bring an action against a member for

16 unlawful distribution under Virginia Code 13.1-1036.

17           So that's the Court's decision.  If yu

18 could, Ms. Benes and Mr. Glaser and Ms. Jandrain,

19 prepare an order and just get it to the Court before

20 next Wednesday, I'll go ahead and sign that order

21 and you can note whatever your objections are.

22           MS. BENES:  Your Honor, may I make a

1   suggestion or ask for a suggestion?  I see that we

2   have a court reporter here today.  And to make

3   everyone's life's easier, including the court

4   reporter, I suggest that we just incorporate the

5   transcript of Your Honor's ruling into the order.

6   Is that okay with Your Honor?

7                 THE COURT:  I have no problem with

8   that at all.

9                  MS. BENES:  Great.  Thank you.  That

10   just makes everyone's lives easier.

11                 MS. JANDRAIN:  Your Honor, may I ask

12   just one point of clarification?

13                 You had mentioned in your ruling that

14   grantees are a necessary parties, and I'm just

15   trying to clarify the status of certain entities,

16   whether Your Honor is also holding that Plaintiff

17   has sufficiently alleged that Ms. Tygier,

18   The Rubin Group are debtors, or whether they were

19   grantees.  And that's all just for purposes of

20   discovery going forward.

21                 THE COURT:  I don't believe I should

22   address that at this point.  All I had before me was

1   the demurrer and that's all I ruled on.  And so if

2   there's some discovery issue that arises because of

3   something I said, it will have to be determined

4   through additional litigation.

5                   MS. BENES:  Thank you, Your Honor.

6                   THE COURT:  All right.  Thank you.

7                   (Time:  11:57 a.m.)

1                    CERTIFICATE OF REPORTER

2              I, Carla D. Siegismund, the court

3    reporter, do hereby certify that the transcript in

4    the foregoing proceedings is true and accurate, to

5    the best of my knowledge and belief; that I am not a

6    relative or employee of any attorney or counsel

7    employed by the parties thereto, nor financially or

8    otherwise interested in the outcome of the action.

9

10

11

12

13    _____

14              Carla D. Siegismund

15

16

17

18

19

20

21

22