**V I R G I N I A :**

FILED
CIVIL PROCESSING

2020 NOV 13 P 2: 20

JOHN T. FREY
CLERK COURT, FAIRFAX
STATUTE, VA

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| **KARL GARCIA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No.: 2020-17040** |
| | ) |
| **THE RUBIN GROUP, LLC,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, *FORUM NONCONVENIENS,* AND STANDING ON COUNT III

Laurin H. Mills (VSB No. 79848)
Kimberly Jandrain (VSB No. 72727)
Samek | Werther | Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
laurin@samek-law.com
kim@samek-law.com
(703) 547-4693
Fax (703) 547-4694

*Attorneys for All Defendants Except for
819D LLC and Andrew Rubin*

Defendants, The Rubin Group LLC, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore Partners LLC,[1] TRG Development LLC, 638 Newton Partners LLC, Michelle Tygier, and Robert Rubin ("Defendants"), move to dismiss Plaintiff Karl Garcia's Complaint because: (a) this Court does not have personal jurisdiction over the non-resident Defendants; (b) dismissal is warranted on *forum non conveniens* grounds; (c) Garcia lacks standing to assert Count III against Ms. Tygier and Andrew Rubin; and (d) Garcia is bound by an arbitration provision contained in the purchase agreement relating to his condominium unit.

As explained below, in May 2020, Garcia filed a nearly identical complaint in the Superior Court for the District of Columbia. Frustrated with the Superior Court's Order dismissing his veil-piercing claims, and his inability to obtain certain documents through regular discovery channels, he filed this frivolous lawsuit in Virginia to obtain subpoena power over third-party banking institutions in Virginia. Indeed, immediately after filing this Complaint, and even before serving the Complaint on Defendants, Garcia's counsel issued subpoenas to the banking institutions.[2]

## RELEVANT FACTUAL BACKGROUND

Garcia's Complaint alleges that he purchased a condominium with various defects. (Compl. ¶¶ 22-25). In May, 2020, Garcia filed a Complaint in D.C. Superior Court against many of the same defendants. (Compl. ¶ 33) (Exh. A). On July 29, 2020, the Court dismissed Garcia's claims against Michelle Tygier and Andrew Rubin. (Exh. B) ("[T]he Court finds that Plaintiff's Complaint does not include sufficient factual allegations satisfying Rule 8(a) to support an alter

---

[1]    Garcia incorrectly named the entity in the Complaint as Woodmore LLC.

[2]    Defendants have also filed a motion to quash the subpoenas. However, to preserve their arguments regarding personal jurisdiction, venue, standing, and *forum non conveniens,* Defendants first filed this Motion to Dismiss.

ego or veil piercing theory of liability."). Garcia then issued a third-party subpoena to Michelle Tygier. After Ms. Tygier refused to produce financial records relating to various entities unrelated to Garcia's claims, Plaintiff filed this lawsuit, which stems from the same set of facts, but implicates every family-affiliated corporate entity he could identify.

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over the Non-Resident Defendants.

The Court lacks personal jurisdiction over the non-resident defendants. Plaintiff claims that personal jurisdiction exists pursuant to Virginia Code § 8.01-328.1(A) because "each Defendant has transacted business in the Commonwealth and has engaged in causing a tortious injury upon Mr. Garcia through various transfers of funds from at least one Virginia entity." (Compl. ¶ 16). That is not the test for specific personal jurisdiction. Under the Virginia Long Arm Statute, the cause of action must arise from a defendant's acts in Virginia. *Gallop Leasing Co. v. Nationwide Mutual Ins. Co.*, 244 Va. 68, 71 (1992).

Garcia's theory of personal jurisdiction is based on the following: (a) though most of the defendants are non-residents, at least one entity is registered in Virginia; and (b) at some point, funds were transferred to or from that entity – which is an allegation irrelevant to the actual causes of action. The rest of the allegations are focused on the District of Columbia, including Garcia's purchase of a condominium near Capitol Hill, his interactions with Defendants in the District of Columbia, and the injury allegedly caused to him in the District of Columbia.

Garcia fails to allege that his causes of action arise from Defendants' conduct in Virginia. Nor has he alleged any other facts to demonstrate that this Court has personal jurisdiction over the non-resident Defendants. Accordingly, Garcia has not met his burden to allege personal jurisdiction, and the Complaint must be dismissed.

**II.    Plaintiff's Complaint Should be Dismissed for Improper Venue and on *Forum Non Conveniens* Grounds.**

Garcia erroneously claims that venue is proper under Va. Code §§ 8.01-261(11) and 8.01-262(2). However, none of the relevant defendants resides in Virginia or owes debts in Virginia. Most of the defendants are registered under the laws of the District of Columbia and there is no nexus to this forum. Accordingly, venue is not proper in this jurisdiction.

Even if Garcia could establish proper or permissible venue, the Court should exercise its discretion to dismiss the Complaint on the basis of *forum non conveniens* because the acts that gave rise to his claims all occurred in the District of Columbia; the relevant parties are all located in the District of Columbia; the condominium at issue is located in the District of Columbia; and an action involving the same core of facts is currently pending in the Superior Court for the District of Columbia. Virginia Code § 8.01-265 provides in relevant part that:

> the court wherein an action is commenced may, upon motion by any party and for good cause shown, (i) dismiss an action brought by a person who is not a resident of the Commonwealth without prejudice under such conditions as the court deems appropriate if the cause of action arose outside of the Commonwealth and if the court determines that a more convenient forum which has jurisdiction over all parties is available in a jurisdiction other than the Commonwealth.

Here, Garcia purchased a condominium and resides in the District of Columbia (Compl. ¶ 1). All his interactions with Defendants occurred in the District of Columbia (Compl. ¶¶ 18-58). With the exception of two entities incorporated in Virginia, all the Defendants are residents of the District of Columbia or Maryland and transact business outside Virginia. (Compl. ¶¶ 2-14). All the witnesses and evidence are located in the District of Columbia, making it more difficult to secure attendance through a subpoena issued by this Court. All these facts support dismissal. *See RMBS Recovery Holdings, I, LLC v. HSBC Bank USA, N.A.* 297 Va. 327 (2019) ("There is no formula for application of the doctrine of forum non conveniens but circumstances ordinarily considered include 'relative ease of access to sources of proof; availability of compulsory process

for attendance of unwilling [witnesses], and the cost of obtaining attendance of willing witnesses; ... and *all other practical problems that make trial of a case easy, expeditious and inexpensive.*'").

Clearly, Garcia's tactics are an end-run around his failure to obtain the discovery he sought in D.C. Superior Court. Not only should this case be dismissed because the District of Columbia is a more convenient forum, but also because the same issues are already the subject of a lawsuit that Garcia filed in the District of Columbia in May, 2020.

### III.    Plaintiff is Required to Arbitrate Disputes Relating to His Purchase of the Unit.

The purchase agreement between Garcia and 819D LLC includes a mandatory arbitration provision, which provides:

> 3.    ARBITRATION. Any controversy or claim, arising out of or relating in any way to this Agreement, the Council of Unit Owners, or the Condominium, including the Condominium Unit and all Common Elements, or any alleged breach of any of the foregoing, shall be settled by arbitration in accordance with the prevailing rules of arbitration used within the District of Columbia.

Exh. C (Mandatory Addendum No. 1 to the Purchase Agreement). Garcia sued 819D LLC in this action in connection with claims relating to the purchase agreement and his condominium. Both this Court and the Fourth Circuit Court of Appeals have held that a non-signatory to an arbitration agreement, such as the Defendants herein, may compel a signatory to arbitrate a dispute that is covered by an arbitration agreement. *See Am. Bankers Ins. Group v. Long,* 453 F.3d 623, 627 (4th Cir. 2006); *Comer v. Goudie,* 78 Va. Cir. 70 (2008).

In *Comer,* the plaintiff homeowners had contracted with a corporate entity for home improvement and construction work. *Id.* After the entity defaulted on its obligations and ceased to exist, the homeowners sued the husband and wife who owned and operated the corporate entity. The husband and wife sought to compel arbitration pursuant to the construction contracts between the plaintiffs and the defunct entity. The court concluded that the plaintiffs were bound by the arbitration provision: "Despite the truly reprehensible nature of Defendants' alleged conduct, the

Court finds that it would be inequitable to permit Plaintiffs to rely on the contract to claim their rights, while avoiding those inconvenient terms of the contract that impose upon them certain obligations." *Id.*

Here, Garcia's claims are covered by the arbitration provision in the purchase agreement. The defendants who are not signatories to the purchase agreement are entitled to enforce his obligation to arbitrate disputes covered by the agreement.

**IV. Plaintiff Lacks Standing to Assert the Breach of Fiduciary Duty Claim.**

Count III alleges that, by virtue of their control over a variety of allegedly insolvent corporate entities, Ms. Tygier (and Andrew Rubin) breached fiduciary duties to pay corporate liabilities to creditors, such as Garcia. Virginia's choice-of-law rules dictate that D.C. law be applied to this claim because Garcia is a D.C. resident and his injury occurred in D.C. *Self Insured Servs. Co. v. Panel Sys., Inc.*, 352 F. Supp. 3d 540, 553 (E.D. Va. 2018) (under Va. choice-of-law rules, the occurrence of plaintiff's injury marks last event necessary to establish liability). Garcia does not allege that he was in contractual privity with Ms. Tygier (or Andrew Rubin). The D.C. Court of Appeals has clearly stated that "Yates has cited no authority, and we know of none, for the proposition that a debtor owes a fiduciary duty to a creditor, or that parties in privity with the debtor owe the creditor such a duty[.]" *Allen v. Yates*, 870 A.2d 39, 48 (D.C. 2005).

## CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

Dated: November 13, 2020

Respectfully submitted,

Laurin H. Mills (VSB No. 79848)
Kimberly Jandrain (VSB No. 72727)
Samek, Werther & Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
(703) 547-4693
Fax (703) 547-4694
Laurin@samek-law.com
Kim@samek-law.com

*Attorneys for All Defendants Except for
819D LLC and Andrew Rubin*

6

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, I caused to be served a copy of the foregoing via email and first-class U.S. mail, postage prepaid, on the following:

Bethany R. Benes
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, VA 22030
bbenes@bethunebenes.com

*Attorney for Plaintiff*

Christopher A. Glaser
Jackson & Campbell, P.C.
2300 N Street, N.W., Suite 300
Washington, D.C. 20037-1194
CGlaser@JacksCamp.com

*Attorney for Andrew Rubin*

Mark Crawford
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Rd, Suite 210
Arlington, VA 22201
mcrawford@mdc-law.com

*Attorney for 819D LLC*

Laurin H. Mills

# EXHIBIT A

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

KARL GARCIA )
C/O Bethune Benes, PLLC )
4290 Chain Bridge Road )
Suite 302 )
Fairfax, VA 22030 )
)
     *Plaintiff*, )
)
     v. )     Case No. 2020 CA 002540 B
)
819D, LLC, d/b/a THE RUBIN GROUP )
Serve: Andrew Rubin, Registered Agent )
1928 37th Street, NW )
Washington, DC 20007 )
)
And )
)
ANDREW RUBIN )
1928 37th Street, NW )
Washington, DC 20007 )
)
And )
)
MICHELLE A. TYGIER )
3704 Military Road NW )
Washington, DC 20007 )
)
And )
)
REGUA )
(Address Unknown) )
)
And )
)
URBAN PACE )
1428 U Street, Suite 300 )
Washington, DC 20009 )
)
And )

1

| | )
|---|---|
| **POTOMAC CONSTRUCTION GROUP** | ) |
| **Serve: CT Corp. System, Registered Agent** | ) |
| **1015 15th St. NW, Suite 1000** | ) |
| **Washington, DC 20005** | ) |
| | ) |
| **And** | ) |
| | ) |
| **THE SANCTUARY CONDOMINIUM UNIT** | ) |
| **OWNERS ASSOCIATION** | ) |
| **Serve: Eric Gruis, President** | ) |
| **819 D Street NE, #26** | ) |
| **Washington, DC 20002** | ) |
| | ) |
| *Defendants.* | ) |

## COMPLAINT

COMES NOW, Karl Garcia, by counsel, and hereby files this Complaint against 819D,

LLC, Andrew Rubin, Michelle A. Tygier, Regua, Urban Pace, Potomac Construction Group

(collectively, the "**Project Defendants**"), and The Sanctuary Condominium Unit Owners

Association (the "**Association**"), and in support thereof, states as follows:

## PARTIES

1. Karl Garcia ("**Mr. Garcia**") is a resident of the District of Columbia and the purchaser of

the real property located at 819 D Street, Northeast, Unit 34, Washington, DC 20002 ("**Unit 34**"

and/or the "**Unit**").

2. 819D, LLC ("**819D**") is a limited liability company registered to do business in the District

of Columbia, with its principal place of business located at 1928 37th Street, Northwest,

Washington, DC 20007. 819D advertises itself as a residential developer and was the developer

and seller of the building located at 819 D Street, Northeast, Washington, DC 20002 (the

"**Property**"), which includes Unit 34. Upon information and belief, 819D was established to

serve the purpose of, and is, the alter ego or business conduit of Andrew Rubin and Michelle

Tygier conducting business under its name.

2

3. Andrew Rubin ("**Rubin**") is a resident of the District of Columbia, residing at 1928 37th Street, Northwest, Washington, DC 20007. At the time of the sale of Unit 34 to Mr. Garcia, Rubin was a board member on the homeowner's association governing the Property, including Unit 34. Upon information and belief, Rubin is also the President of 819D and regularly conducts business in the District of Columbia.

4. Michelle A. Tygier ("**Tygier**") is a resident of the District of Columbia, residing at 3704 Military Road Northwest, Washington, DC 20015. At the time of the sale of Unit 34 to Mr. Garcia, Tygier was a board member on the homeowner's association governing the Property, including Unit 34. Upon information and belief, Tygier is also an officer or director of 819D and regularly conducts business in the District of Columbia.

5. Upon information and belief, Regua is a real estate investment firm specializing in the acquisition and development of commercial properties in the District of Columbia. Along with 819D, Regua was advertised as being a developer of the Property.

6. Urban Pace is a real estate company providing marketing, sales, and advisory services to real estate developers in the District of Columbia. Urban Pace was involved in the marketing and sale of the units within the Property, including the marketing and sale of Unit 34 to Mr. Garcia.

7. Potomac Construction Group of DC, LLC ("**Potomac**") is a limited liability company registered to do business in the District of Columbia, with its principal place of business located at 1734 20th Street, NW, Suite B, Washington, DC 20009. Upon information and belief, Potomac was the general contractor hired to assist in the redevelopment of the Property.

8. The Sanctuary Condominium Unit Owners Association is the homeowner's association that governs the Property, including Unit 34.

3

9. This Court has jurisdiction over the claims asserted in this Complaint pursuant to §11-921 of the Code of the District of Columbia.

10. This Court has personal jurisdiction over each of the Defendants pursuant to §13-423 of the Code of the District of Columbia, as the claims asserted in this Complaint relate to the business transaction for the sale of the real property located at Unit 34 in the District of Columbia.

## FACTUAL ALLEGATIONS

11. The Unit is a three-story condominium unit located within the building known as "The Sanctuary". The Sanctuary was advertised by 819D, Rubin, Tygier, Regua, and Urban Pace as the 2016 "conversion of an iconic 119-year-old Capitol Hill church into one-of-a kind residential condominiums", which included "meticulous" and "careful" restoration and "New" roofing, with an estimated useful life of 25 years. Defendants 819D, Rubin, Tygier, Regua, and Urban Pace advertised the Unit as the highest point on Capitol Hill, represented that the bricks making up the building were only 80 years old and would last another 70 years, and that, "The hallmark of this effort is the careful restoration of the beautiful stained and leaded glass windows, one of the building's defining features. Craftsmen have toiled for countless hours, lovingly restoring every single historic window of the building. Each window has been carefully disassembled, its pattern meticulously documented, cleaned and repaired and painstakingly reassembled by hand, using the original colored glass or, where allowed by the Historic Review Board, new clear glass." The Unit was also advertised as being well-managed by the Association, who was to provide oversight of the building and its residents' needs and operations.

12. The representations referred to paragraph 11 above were reinforced by Potomac, by and through their agent, Otis Schell ("**Mr. Schell**"). During one of Mr. Garcia's visits to the Unit, Mr. Schell repeated the representations that had been made to Mr. Garcia regarding the "meticulous"

4

and "careful" restoration that had been undertaken for the Property. Mr. Schell asserted that the Property had been "gutted" with "new interiors" and that the Project Defendants were providing a "quality product". Mr. Schell represented to Mr. Garcia that construction on the Property began immediately after the church congregation that previously occupied the Property moved to Maryland, even though, in actuality and unbeknownst to Mr. Garcia, the Property lay abandoned for several years after the church left, further deteriorating from a lack of maintenance.

13. Based on the Project Defendants' representations as to the condition of the Property, as well as the services provided by the Association, Mr. Garcia entered into a Purchase Agreement with 819D for the purchase of Unit 34 on or about April 18, 2017. 819D and Regua, by and through Urban Pace, provided Mr. Garcia with "Condominium Documents", including Condominium Plats and Plans and Bylaws of The Sanctuary Condominiums. The Purchase Agreement included 819D's warranty against structural defects, as well as defects in workmanship and improper materials.

14. Pursuant to the Purchase Agreement, a pre-settlement walk-through of the Unit was conducted on April 20 and April 28, 2017 (together, the **"Walk-Through"**). At the Walk-Thru, Rubin, 819D, and Urban Pace represented that certain agreements, including the installation of a wooden closet system and a glass sliding door, would be fulfilled.

15. Additionally, a number of defects were identified and included on a "Punch List", which was provided to 819D, Rubin, and Urban Pace prior to April 28, 2017. Tygier, Rubin, and 819D represented that the defects would be fixed prior to Mr. Garcia's move in.

16. On May 1, 2017, an inspection was conducted with Tygier (the **"Pre-Move-In Inspection"**). During the Pre-Move-In Inspection, Tygier represented that the Punch List items would be resolved prior to Mr. Garcia's move in, and that certain features of the Unit were in accordance with the required building code, including but not limited to the use of unanchored

5

glass railings along the catwalk in the Unit. In response to an accusation that the Unit's HVAC was used without a filter during construction, Tygier represented that such accusation was false.

17. 819D, Rubin, Tygier, and Regua had a duty to remedy any incomplete items as soon thereafter as reasonably practical prior to transferring the Property to Mr. Garcia, or if unable to remedy prior to Settlement, as soon as reasonably possible after Settlement.

18. 819D, Rubin, Tygier, and Regua had an obligation to repair and/or replace any defects in the Unit in a manner which meets or exceeds performance standards.

19. Upon moving into Unit 34, Mr. Garcia began to notice structural deficiencies and flaws with the Unit, including extremely high humidity and moisture levels. Mr. Garcia immediately contacted 819D to notify and seek remediation of the issues.

20. Concerned about his health and safety of residing in the Unit, Mr. Garcia engaged several licensed professionals to investigate the issues within his Unit and document their findings in reports. The licensed professionals indicated their findings in the following reports:

     a. a home inspection report performed by Sentry Home Inspections, Inc.;

     b. an infrared inspection report performed by Capital Infrared;

     c. a home energy audit performed by Home Energy Medics, LLC;

     d. an HVAC duct report performed by Ductz;

     e. an electrical inspection report performed by Meyer Electrical Service, Inc.;

     f. an environmental laboratory analysis performed by HP Environmental, Inc.;

     g. an indoor environmental assessment of avian droppings report performed by HP Environmental, Inc.;

     h. a localized building envelope survey and façade inspection performed by Construction Insight, Inc.;

     i. a second home energy audit performed by Home Energy Medics, LLC; and

6

j.  a home efficiency audit performed by Energy Efficiency Experts (collectively, the **"Reports"**).

21. The findings of the Reports concluded, *inter alia,* the following:

a.  A large void near the Unit's attic window was cut prior to, or during construction, leaving a large void leading into the Property's attic. For at least a year, the opening was left unattended and exposed the attic to the outside elements. As a result, a pigeon infestation was allowed to thrive in the attic and was described by a professional hygienist as "one of the worst bird infestations" he had ever observed in his over 25 years of experience. The infestation included complete saturation of the attic with pigeon feces, decaying bird eggs, loose feathers, and even a rancid pigeon carcass.

b.  None of the windows in the Unit were properly sealed, with some areas missing required insulation around the windows entirely;

c.  The Unit's envelope suffered from deterioration of the wood trim surrounding the third-floor windows, resulting in moisture damage and damaged framing;

d.  Air leakage in the unit reached 11.4 air changes per hour, exceeding the maximum of five (5) air changes per hour set forth in the 2013 District of Columbia Energy Code § C402. A second, unaffiliated and separate professional also confirmed these results, finding the air leakage in the unit reached 11.5 air changes per hour. The total leakage area is equivalent to opening a standard window 13.4 inches and leaving it open for the *entirety of a year*;

e.  The air leakage allows outside and attic elements and humidity to infiltrate the Unit, resulting in extremely high humidity and moisture levels of no less than 90%, well above the 30% to 50% standard. As a result, Mr. Garcia typically removes

7

nine (9) gallons of water from the Unit *per day* during the summer months. The added humidity results in prime growing conditions for poisonous and toxic molds to grow within the Unit;

f. The required insulation thickness for the closet containing the Unit's HVAC unit is insufficient; the exposed spray foam on the north side of the space does not fully fill the space between the wood studs;

g. A large, gaping hole is present in the exterior wall on the north side of the Unit's HVAC closet, and a separate hole at the bottom of the wood frame. These holes result in significant outside air, molds, and moisture being brought into the Unit;

h. All attic windows have gaps and/or holes within the required sealant;

i. The required insulation is missing in many locations within the Unit's attic, with some areas, including exterior walls, completely devoid of any type of insulation; and/or air sealant. Insulation that was installed was not up to DC Building Code standards, as R-13 insulation was used in between studs in vertical walls instead of the required R-38 batt insulation;

j. The attic in the Unit lacks proper attic ventilation meeting DC Building Code requirements set forth in §1203.2;

k. A large majority of the main trunk of the HVAC system lacks interior lined insulation and exterior insulation. Further, the HVAC ducting is not sealed properly around the connections, and the recessed lighting is not sealed airtight, creating a hole for attic air to flow into the Unit. A bacterial and fungal sample taken from the HVAC evidenced the presence of numerous harmful pathogens;

8

l. The interior glass railing located on the Unit's second floor does not comply with the DC standard that the glass be able to resist a 200-pound point load or 50 pound per foot continuous load on the system;

m. The roof membrane around the roof drain on the third floor of the Unit is not sealed to a watertight condition, and the pipe perimeter does not contain a high-quality grade silicone sealant that meets the required ASTM C920, Type S, Grade NS, Class 50 requirement. The water leakage is causing significant water damage in the Unit; and

n. The tower stair railings within the Unit do not conform to the requirements as set forth in DC Building Code § 1013.4.

o. Contrary to their representation, the Property's façade was not repaired and repointed as necessary. On all elevations of the building, significant erosion and deterioration of the brick masonry mortar joints exists, causing recess in brick mortar joints and numerous voids in the exterior brick masonry wall;

p. Similar to the brick masonry mortar joints, erosion has occurred at many of the limestone mortar joints. Cracking and spalling of the limestone is also present;

q. Localized sealant failures are present in numerous locations;

r. A portion of the masonry chimney present on the south side of the Property's roof is missing;

22. Since purchasing the Unit, Mr. Garcia has also discovered that the construction of the Unit deviates from the plans approved by the District of Columbia, resulting in Mr. Garcia purchasing a Unit different from that to which he agreed to purchase. This includes the Unit being substantially smaller than the 2,315 square feet represented to the District of Columbia and Mr. Garcia to be the size of the Unit.

9

23. The defects in the Unit reduce the stability and safety of the structure below standards commonly accepted in the real estate market and restrict the normally intended use of all or part of the structure. Due to the defects, the Unit requires repair, restoration, and/or replacement. The defects contained in the Unit pertain to components installed at the direction of Defendants.

24. Mr. Garcia notified 819D, Rubin, Tygier, and the Association of the physical defects. To date, the flaws and physical defects remain.

25. In addition to physical defects within the Unit, the Property's Association failed to perform the services it, Rubin, and Tygier advertised it would perform in accordance with its fiduciary obligations, including but not limited to:

    a. The Association failed to establish and maintain a reasonable reserve fund for capital improvements, replacements, and major repairs as required by Article IV of the Association Bylaws;

    b. The Association failed to prepare and adopt an annual budget;

    c. The Association failed to make and collect sufficient assessments against the Unit Owners to defray the Common Expenses;

    d. The Association failed to exercise the care required of a fiduciary of the Unit Owners for the necessary and proper governance and operation of the Association;

    e. The Association failed to maintain and repair Common Area elements of the Property;

26. As a result of the Project Defendants' misrepresentations, fraud, and breaches, Mr. Garcia was misled and did not obtain the full benefit of his bargain in the purchase of his Property.

## COUNT I- BREACH OF WARRANTY PURSUANT TO D.C. CODE § 42-1903.16
### (against 819D, Rubin, Tygier, and Regua)

27. The allegations contained in Paragraphs 1-26 above are incorporated herein by reference.

10

28. Defendants 819D, Rubin, Tygier, and Regua had a duty to warranty the Property against defects, including in workmanship and materials used to restore and develop the Property, as well as the overall condition of the Property.

29. Defendants 819D, Rubin, Tygier, and Regua breached their obligation, selling Mr. Garcia a Property that suffered from significant defects that reduce the stability or safety of the structure below standards commonly accepted in the real estate market, or restrict the normally intended use of all or part of the structure and which requires repair, renovation, restoration, or replacement.

30. As a result of the aforementioned breaches, Mr. Garcia has suffered damages in an amount no less than One Million Five Hundred and Twenty-Five Thousand Dollars $1,525,000.00.

## COUNT II – BREACH OF CONTRACT
### (against Defendant 819D, LLC d/b/a The Rubin Group)

31. The allegations contained in Paragraphs 1-34 above are incorporated herein by reference.

32. Mr. Garcia entered into a valid and enforceable Purchase Agreement with 819D.

33. Pursuant to the Purchase Agreement, 819D was required to turn over possession of the Unit to Mr. Garcia free of any structural defects.

34. 819D breached the Purchase Agreement when it relinquished to Mr. Garcia possession of the Unit containing multiple structural defects and flaws.

35. As a result of 819D's breach, Mr. Garcia has been damaged in an amount no less than One Million Five Hundred and Twenty-Five Thousand Dollars $1,525,000.00.

## COUNT III – VIOLATION OF UNFAIR OR DECEPTIVE TRADE PRACTICES PURSUANT TO D.C. CODE § 28-3904
### (against 819D, Rubin, Tygier, Regua, Urban Pace, and Potomac)

36. The allegations contained in Paragraphs 1-35 above are incorporated herein by reference.

37. Defendants 819D, Rubin, Tygier, Regua, Urban Pace, and Potomac had an obligation to fully and accurately disclose to the public, including Mr. Garcia, the characteristics and condition of the Property being offered for sale, as well as the Association's services.

38. Defendants 819D, Rubin, Tygier, Regua, Urban Pace, and Potomac violated their duty by mispresenting material facts about the Property, including Unit 34, and misleading Mr. Garcia during his purchase of Unit 34.

39. As a result of the violations by Project Defendants, Mr. Garcia has suffered treble damages in an amount no less than Four Million Five Hundred and Seventy-Five Thousand Dollars $4,575,000.00, plus interest, punitive damages, and attorneys' fees.

### COUNT IV- FRAUD
### (against 819D, LLC, Rubin, Tygier, Regua, Urban Pace, and Potomac)

40. The allegations contained in Paragraphs 1-39 above are incorporated herein by reference;

41. Defendants 819D, LLC, Rubin, Tygier, Regua, Urban Pace, and Potomac made representations to Mr. Garcia regarding the Property that were false, including material facts such as the condition of the Property and the manner in which the Property was "restored".

42. Project Defendants made the statements knowing the statements were false and with the intent to mislead, deceive, and induce Mr. Garcia into purchasing the Property.

43. Not knowing that the representations made by Project Defendants were false, Mr. Garcia relied on the statements and entered into a Purchase Agreement for the Property in the amount of One Million Five Hundred and Twenty-Five Thousand dollars ($1,525,000.00).

44. As a result of Project Defendants' fraudulent inducement of Mr. Garcia, Mr. Garcia has been damaged in the amount of the purchase of the Property totaling One Million Five Hundred and Twenty-Five Thousand dollars ($1,525,000.00), plus interest, punitive damages, and attorneys' fees.

12

## COUNT V- BREACH OF FIDUCIARY DUTY
### (against the Association)

45. The allegations contained in Paragraphs 1-44 above are incorporated herein by reference.

46. Defendant Association has fiduciary duties to the unit owners of the Property, including Mr. Garcia.

47. Defendant Association breached their duties by failing to perform their duties in accordance with the Condominium's Bylaws and governing documents.

48. As a result of the Association's breaches, Mr. Garcia has suffered damages in an amount no less than Five Hundred Thousand Dollars ($500,000.00).

## COUNT VI- RESCISSION OF THE PURCHASE AGREEMENT
### (In the alternative against 819D)

49. The allegations contained in Paragraphs 1-48 above are incorporated herein by reference.

50. Project Defendants 8 falsely advertised and represented the Property to attract potential buyers, including Mr. Garcia, to purchase the Property.

51. Without the knowledge that the Property was not in the condition and repair represented by Project Defendants, Mr. Garcia entered into a Purchase Agreement for the Property.

52. Project Defendants' representations as to the Property were material errors and go to the substance of the transaction – a purchase of the Property by Mr. Garcia.

53. As a result of Project Defendants' fraud, Mr. Garcia did not obtain the benefit of his bargain and the Purchase Agreement should be voided.

WHEREFORE, Karl Garcia, by counsel, respectfully requests this Court:

(i) enter judgment in favor of Karl Garcia and against Defendants 819D, LLC, Andrew Rubin, Michelle A. Tygier, Regua, Urban Pace, Potomac Construction Group, and The Sanctuary Unit Owners Association;

(ii) award the relief requested herein in favor of Karl Garcia; and

13

(iii) for any further relief this Court deems just and proper.

**A TRIAL BY JURY IS DEMANDED.**

**RESPECTFULLY SUBMITTED,**

**KARL GARCIA,**
**By counsel**

William J. Bethune (DC Bar No. 066696)
Bethany R. Benes (*Application pending, Pro Hac Vice to be submitted*)
**Bethune Benes, PLLC**
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
Tel.: (703) 260-9322
wbethune@bethunebenes.com
bbenes@bethunebenes.com

*Counsel for Plaintiff*

# Superior Court of the District of Columbia

KARL GARCIA      Case Number: **2020 CA 002540 B**

vs      Date: _____

819D, LLC, d/b/a THE RUBIN GROUP, et al.     ☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>William J. Bethune | Relationship to Lawsuit |
| Firm Name:<br>Bethune Benes, PLLC | ☒ Attorney for Plaintiff<br>☐ Self (Pro Se) |
| Telephone No.:   Six digit Unified Bar No.:<br>703-260-9322    066696 | ☐ Other: |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury     ☐ 12 Person Jury
Demand: $ 4.575 million     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: _____ Judge: _____ Calendar #: _____

Case No.: _____ Judge: _____ Calendar#: _____

---

**NATURE OF SUIT:** *(Check One Box Only)*

## A. CONTRACTS

**COLLECTION CASES**

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
    Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
    Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
    Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
    Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
    Under $25,000 Consent Denied

## B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

## C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
    Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
    Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE    IF USED

# Information Sheet, Continued

## C. OTHERS

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability
- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-44(h))
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

## B.

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151.9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

## D. REAL PROPERTY

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_(signature)_ 05/15/2020

Attorney's Signature      Date

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

KARL GARCIA

_____ Plaintiff

vs.

Case Number    **2020 CA 002540 B**

819D, LLC. d/b/a THE RUBIN GROUP
_____ Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

William J. Bethune
_____
Name of Plaintiff's Attorney

4290 Chain Bridge Road, Suite 302
_____
Address
Fairfax, VA 22030

703-260-9322
_____
Telephone

By _____

Clerk of the Court

Date **05/18/2020**

如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오    የሚተረጎም ካስፈለገ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

KARL GARCIA

_____ Plaintiff

vs.

Case Number  **2020 CA 002540 B**

URBAN PACE

_____ Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

WILLIAM J. BETHUNE
_____
Name of Plaintiff's Attorney

4290 Chain Bridge Road, Suite 302
_____
Address
Fairfax, VA 22030

703-260-9322
_____
Telephone

By _____

Clerk of the Court

Date  **05/18/2020**

中文請電話 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
한국어 번역 서비스, (202) 879-4828으로 전화주세요     ኣማርኛ ትርጉም ለማማት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4

Superior Court of the District of Columbia
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

**KARL GARCIA**

Plaintiff

vs.

Case Number **2020 CA 002540 B**

THE SANCTUARY CONDOMINIUM UNIT OWNERS ASSOCIATION

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**WILLIAM J. BETHUNE**
Name of Plaintiff's Attorney

4290 Chain Bridge Road, Suite 302
Address
Fairfax, VA 22030

**703-260-9322**
Telephone

By _____

Clerk of the Court

Date **05/18/2020**

如需翻譯,請打電話 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.     የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W. for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción en español

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

KARL GARCIA

_____ Plaintiff

vs.

ANDREW RUBIN

Case Number **2020 CA 002540 B**

_____ Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

WILLIAM J. BETHUNE
_____
Name of Plaintiff's Attorney

4290 Chain Bridge Road, Suite 302
_____
Address
Fairfax, VA 22030

703—260—9322
_____
Telephone

Clerk of the Court

By _____

Date **05/18/2020**

如需翻译，请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오     ለትርጉም አገልግሎት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

KARL GARCIA

Plaintiff

vs.

MICHELLE A. TYGIER

Case Number **2020 CA 002540 B**

Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

WILLIAM J. BETHUNE

Name of Plaintiff's Attorney

4290 Chain Bridge Road, Suite 302

Address

Fairfax, VA 22030

703-260-9322

Telephone

Clerk of the Court

By

Date **05/18/2020**

如需要, 请打电话 (202) 879-4828   Veuillez appeler au (202) 879-4828 pour une traduction   Để có một bài dịch, hãy gọi (202) 879-4828
번역이 필요하시면, (202) 879-4828로 전화주십시오   የአማርኛ ተርጓሚ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

KARL GARCIA

Plaintiff

vs.

Case Number **2020 CA 002540 B**

POTOMAC CONSTRUCTION GROUP

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

WILLIAM J. BETHUNE
Name of Plaintiff's Attorney

4290 Chain Bridge Road, Suite 302
Address
Fairfax, VA 22030

703-260-9322
Telephone

Clerk of the Court

By _____

Date **05/18/2020**

請您聯絡, 請打電話 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.    ለማንኛውም ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

KARL GARCIA
Vs.                                                          C.A. No.        2020 CA 002540 B
819D, LLC et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge HIRAM E PUIG-LUGO
Date:   May 18, 2020
Initial Conference: 9:30 am, Friday, August 21, 2020
Location:   Courtroom 302
                  500 Indiana Avenue N.W.
                  WASHINGTON, DC 20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief    Judge    Robert    E.    Morin

# EXHIBIT B

GARCIA, KARL,

               Plaintiffs,

v.

819D, LLC et al,

               Defendant.

Civil Action No. 2020 CA 002540 B

Civil II - Calendar 11

Judge Hiram E. Puig-Lugo

## ORDER

This matter is before the Court on Defendant Michelle Tygier's Motion to Dismiss, filed on June 29, 2020 and Defendant Andrew Rubin's Motion to Dismiss, filed on June 30, 2020. On June 13, 2020, Plaintiff filed an opposition to Defendant Rubin's motion and on July 14, 2020, Plaintiff filed an opposition to Defendant Tygier's motion. On July 21, 2020, Defendant Tygier filed her reply.

### Background

On May 18, 2020, Plaintiff filed his Complaint against 819D, LLC, Andrew Rubin, Michelle Tygier, Regua, Urban Pace, Potomac Construction Group, and the Sanctuary Condominium Unit Owners Association. Plaintiff's Complaint asserts that Andrew Rubin was a board member of the homeowner's association governing the Property at issue and also the President of 819D, LLC. Plaintiff's Complaint asserts that Michelle Tygier was also a board member of the homeowner's association governing the Property at issue and an officer or director of 819D, LLC. Plaintiff alleges, in relevant part, that he identified defects on the Property and Defendants Tygier and Rubin represented that the defects would be fixed prior to Plaintiff's move-in on the Property. Plaintiff asserts, in relevant part, that Defendants Rubin and

Tygier had a duty to repair and/or replace any defects in the Unit and failed to do so. Based on the allegations in Plaintiff's Complaint, Plaintiff asserts, in relevant part, that Defendants Rubin and Tygier engaged in a breach of warranty, violation of the Consumer Protection Procedures Act ("CPPA"), and fraud.

## DISCUSSION

To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543-44 (D.C. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Dismissal of a Complaint for failure to state a claim upon which relief can be granted should only be awarded if "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See* Super. Ct. Civ. R. 12(b)(6); *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803 (D.C. 1999).

When considering a Motion to Dismiss, a Court must "construe the facts on the face of the Complaint in the light most favorable to the non-moving party, and accept as true the allegations in the Complaint." *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 174 (D.C. 1996). A Court should not dismiss a Complaint merely because it "doubts that a Plaintiff will prevail on a claim." *See Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 210 (D.C. 1997). However, the Court need not accept inferences if such inferences are unsupported by the facts set out in the Complaint. *See Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor must the Court accept legal conclusions cast in the form of factual allegations. *Id.*

A pleading must contain a "short and plain statement of the claim showing that the pleading is entitled to relief." *See* Super. Ct. Civ. R. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-

78 (2009). To survive a Motion to Dismiss under Super. Ct. Civ. R. 12(b)(6), a Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.*

## I.    Plaintiff's Breach of Warranty Claim against Defendants Tygier and Rubin

Under D.C. Code § 42.1903.16, "[a] declarant shall warrant against structural defects in each of the units for 2 years from the date each unit is first conveyed to a bona fide purchaser, and all of the common elements for 2 years." The term "declarant" shall mean any person or group of persons acting in concert who: (A) Offers to dispose of the person's or group's interest in a condominium unit not previously disposed of; (B) Reserves or succeeds to any special declarant right; or (C) Applies for registration of the condominium." D.C. Code § 42-1901.02(11).

It is well established that one seeking to pierce the corporate veil on an alter ego theory must prove by affirmative evidence the existence of a "unity of ownership and interest" and the "use of the corporate form to perpetuate fraud or wrong." *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 355 (D.C. 2005) (citation omitted). In determining if these elements are met, Courts "consider a range of factors, including whether corporate formalities have been observed; whether there has been any commingling of corporate and shareholder funds, staff, and property; whether a single shareholder dominates the corporation; whether the corporation is adequately capitalized; and, especially, whether the corporate form has been used to effectuate a fraud." *Id.* Piercing the corporate veil is a doctrine of equity and the "factor which predominates will vary in each case...." *Vuitch v. Furr*, 482 A.2d 811, 815 (D.C. 1984). Moreover, determining whether to

pierce the corporate veil is a practical test, "based largely on a reading of particular factual circumstances." *Id.* at 816 (quoting *Valley Finance, Inc. v. United States*, 629 F.2d 162, 172 ( D.C. Cir. 1980)). While a plaintiff need not plead "[that which] he needs to show to prevail at trial, the plaintiff must still allege sufficient facts regarding an alter ego relationship to 'satisfy Rule 8(a) and [*Ashcroft v. Iqbal* (citation omitted)].'" *Kelleher v. Dream Catcher, LLC*, 221 F. Supp. 3d 157, 158-59 (D.D.C. 2016).

Defendant Tygier asserts that Plaintiff's claim must fail because Plaintiff failed to allege or show that Tygier is a "declarant" and therefore, Tygier owed no duty to provide a warranty nor is she alleged to have provided a personal warranty. Defendant Tygier asserts that instead, Plaintiff entered into a Purchase Agreement with 819D, LLC, the developer and owner of the Unit and the Purchase Agreement included 819D, LLC's warranty against structural defects, as well as defects in workmanship and improper materials. Similarly, Defendant Rubin asserts that he is also not a declarant and did not owe a duty to Plaintiff to provide a warranty on the property. Defendant Rubin asserts that Rubin did not hold title to the Property, did not hold any interest in the Property, nor did he offer to dispose of any interest in the Property. Defendant Rubin asserts that he had no obligation to provide any warranty and in fact, did not provide a warranty.

In opposition, Plaintiff asserts that while Rubin and Tygier are not parties to the Purchase Agreement, and while 819D, LLC is the seller, 819D, LLC was established to serve the purpose of the alter ego of Rubin and Tygier. Plaintiff asserts that the Complaint sets forth facts that allege and allow the Court to infer that Rubin and Tygier may be liable as the alter ego of 819D, LLC and cannot shield themselves from personal liability.

Here, the Court finds that Plaintiff's Complaint does not include sufficient factual allegations satisfying Rule 8(a) to support an alter ego or veil piercing theory of liability. Plaintiff's Complaint contains one sentence that states "upon information and belief, 819D was established to serve the purpose of, and is, the alter ego or business conduit of Andrew Rubin and Michelle Tygier conducting business under its name." The aforementioned allegation is a legal conclusion and Plaintiff's Complaint is devoid of any sufficient factual allegations regarding an alter ego relationship between Rubin, Tygier and 819D, LLC. Therefore, even viewing the Complaint in a light most favorable to Plaintiff, Plaintiff's Complaint fails to state a claim for breach of warranty against Tygier and Rubin in their individual capacities, as they are not "declarants" under D.C. Code § 42-1901.02(11) and did not owe a duty to Plaintiff to warranty the Unit at issue. Accordingly, Count I breach of warranty claim against Rubin and Tygier is dismissed.

## II. Plaintiff's CPPA Claim against Defendants Tygier and Rubin

Under D.C. Code § 28-3904, it is a violation of the D.C. Consumer Protection Procedures Act ("CPPA") for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby. The CPPA only supplies consumers with cause of action against merchants selling them goods or services, and therefore there must be consumer-merchant relationship in consumer transaction involving sale of goods or services for act to apply. *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015). A "merchant" under the Act "means a person, whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary

course of business does or would supply the goods or services which are or would be the subject matter of a trade practice." D.C. Code § 28-3901.

Defendant Tygier asserts that Plaintiff failed to make any allegations specific to Tygier to show that Tygier is a "merchant" and does not explain, for example, the legal basis for Plaintiff's assertion that Tygier had a duty to disclose any information to Plaintiff. Tygier also asserts that Plaintiff failed to explain how Tygier can be held personally liable for the acts of 819D, LLC or the homeowner's association. Similarly, Defendant Rubin asserts that the CPPA does not apply because Rubin is not a "merchant" for purposes of the CPPA. Rubin asserts that he did not sell the property, the deed identifies 819D, LLC as the seller, and Rubin has not acted in the capacity of a merchant selling any item to Plaintiff.

In opposition, Plaintiff again reiterates that Rubin was the President of 819D, LLC and therefore, can be held personally liable under the CPPA as a "merchant" because he was "involved" in the sale and 819D, LLC was an alter ego for Rubin. Plaintiff asserts that Rubin made representations in the course of marketing the sale of the Unit to Plaintiff which violates the CPPA. Similarly, Plaintiff asserts that Tygier, as an officer of 819D, LLC, can be held personally liable under the CPPA as a "merchant" because she made representations in the course of marketing the sale of the Unit to Plaintiff which violates the CPPA.

In reply, Tygier asserts that Plaintiff's citations to a line of cases are not analogous to the instant case. Further, Tygier asserts that Plaintiff waived his claims against Tygier. To support this assertion, Defendant Tygier includes the Purchase Agreement, referenced in Plaintiff's Complaint and the document upon which Plaintiff forms much of his Complaint. The Purchase Agreement, between Plaintiff and 819D, LLC, contains a provision which waives Plaintiff's right to assert any and all claims arising out of or relating in any way to any oral or other

representations not contained in the Purchase Agreement. Specifically, the Purchase Agreement states, in relevant part:

> This is the complete agreement between the parties...there are no other oral or other written agreements, representations, conditions, promises, or understandings directly or indirectly connected with this Agreement. Purchaser hereby waives and releases seller, its partners, affiliates, agents, employees, contractors and each of their respective successors and assigns, including, without limitation, any condominium association or other governing body formed in connection with the condominium, from any and all claims, losses, damages, expenses, costs, cause of action or other liabilities whether known or unknown, matured or unmatured, absolute or contingent, arising out of or relating in any way whatsoever to any such oral or other written agreement, representations, conditions, promises, or understandings.

Here, the Court finds that Plaintiff failed to allege facts sufficient to show that Rubin and Tygier are "merchants" subject to the CPPA. Plaintiff's Complaint is void of facts showing that Rubin, Tygier, and Plaintiff had a consumer-merchant relationship in a consumer transaction. Indeed, the seller of the Property was 819D, LLC and the purchaser was Plaintiff. As explained above, Plaintiff failed to show facts sufficient to pierce the corporate veil and does not allege facts of any consumer-merchant relationship or consumer transaction between Rubin and Tygier with Plaintiff. Plaintiff's CPPA claim merely states that Rubin and Tygier had an "obligation" to fully and accurately disclose to the public the characteristics and condition of the Property being offered for sale and they violated their duty by misrepresenting material facts about the Property which misled Plaintiff to purchase the Property. However, as stated in the Purchase Agreement signed by Plaintiff, the Purchase Agreement constituted the entire agreement and any pre-signing representations are not connected to the Purchase Agreement and/or binding. Indeed, the Purchase Agreement states: "there are no other oral or other written agreements, representations, conditions, promises, or understandings directly or indirectly connected with this Agreement" and the Purchase Agreement does not include any obligations on the part of Rubin and Tygier who are not parties to the contract. Therefore, Plaintiff's CPPA claims against Rubin and

Tygier shall be dismissed, as Rubin and Tygier are not "merchants" subject to the CPPA and Plaintiff waived his claims against them when he signed the Purchase Agreement to which Rubin and Tygier are not parties.

### III. Plaintiff's Fraud Claim against Defendants Tygier and Rubin

In order to make out a claim for Fraud the Plaintiff must show: (1) a false representation in reference to material fact, (2) made with knowledge of its falsity, (3) with the intent to deceive, and (4) action taken in reliance upon the representation. *See Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013). It is well-established that allegations of fraud must be pled with particularity. *See* Super. Ct. Civ. R. 9(b) (all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (pleader must state the time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud). Moreover, where a complaint is filed against multiple defendants, the heightened pleading standard requires that the identity and role of individual defendants alleged to have made false representations be specified in the complaint. *Phone Recovery Servs., LLC v. Verizon Wash., DC, Inc.*, 191 A.3d 309, 322 (D.C. 2018).

"A corporate officer's tortious conduct, though committed in behalf of the corporation, also creates personal and individual liability on his part." *Bethesda Salvage Co. v. Fireman's Fund Ins. Co.*, 111 A.2d 472 (D.C. 1955). However, the D.C. Condominium Act specifically relieves condominium developers' agents of tort liability with respect to condominium developments. *Barimany v. Urban Pace LLC*, 73 A.3d 964 (D.C. 2013). Indeed, under D.C. Code § 42-1903.09, "[a]n action for tort alleging a wrong done: (1) by any agent or employee of the declarant or of the unit owners' association; or (2) in connection with the condition of any

portion of the condominium which the declarant or the association has the responsibility to maintain, **shall be brought against the declarant** or the association, as the case may be."

Defendant Tygier asserts that under D.C. Code § 42-1903, she is shielded from any potential personal liability arising out of statements she allegedly made as an agent or officer of 819D, LLC. Tygier asserts that Plaintiff's Complaint makes clear that the one alleged statement she made to Plaintiff was in the course of her duties as an agent for 819D, LLC. Accordingly, Tygier asserts that to the extend her statements give rise to a tort claim, the proper Defendant is 819D, LLC. Similarly, Defendant Rubin asserts that Plaintiff failed to allege facts to pierce the corporate veil and he cannot be held liable for his statements made as the agent for 819D, LLC. Defendant Rubin asserts that Plaintiff's Complaint makes clear that Plaintiff was aware that his dealings were with the principal 819D, LLC and not Rubin as an individual or agent. Further, Defendant Rubin asserts that even assuming he could be held personally liable, Plaintiff's fraud claim was not pled with the requisite particularity.

In opposition, Plaintiff asserts that Tygier and Rubin are "declarants" under the D.C. Condominium Act and therefore, can be held liable despite the D.C. Condominium Act relieving condominium developers' agents of tort liability with respect to condominium developments. Further, Plaintiff asserts that he alleged with particularity that Rubin and Tygier made several false representations and references paragraphs 11, 14, and 15 in his Complaint to support his assertion.

The Court finds that, as stated and found above, Tygier and Rubin are not "declarants" under D.C. Code § 42-1901.02(11) and therefore, are relieved of tort liability with respect to the Unit development at issue in this case. Further, the Court finds that Plaintiff's fraud claim was not pled with the requisite particularity. Indeed, Paragraph 11 of Plaintiff's Complaint names

five defendants and does not specify the role of the individual defendants alleged to have made the false representations. Instead, Plaintiff's Complaint states the Unit was advertised with false representations and attributes liability to five defendants for the contents of the advertisement with no particularity or specificity. Plaintiff's fraud allegations fail to state the time, place and content of the false misrepresentations, and the fact(s) misrepresented as it pertains to each respective Defendant against whom Plaintiff is asserting a claim of fraud. Therefore, Plaintiff has failed to state a claim of fraud against Rubin and Tygier because as agents of 819D, LLC, they are relieved from liability under the D.C. Condominium Act and Plaintiff failed to plead his fraud claim with the requisite particularity.

## CONCLUSION

Based on the above findings, the relevant law, and the entire record herein, it is this 29th day of July 2020, hereby:

**ORDERED** that Defendant Tygier's Motion to Dismiss is **GRANTED**; it is further

**ORDERED** that Defendant Rubin's Motion to Dismiss is **GRANTED**; it is further

**ORDERED** that Plaintiff's claims against Defendant Tygier and Defendant Rubin are **DISMISSED**.

**IT IS SO ORDERED**.

Judge Hiram Puig-Lugo
*Signed in Chambers*

Copies via CaseFileXpress to all counsel of record.

# EXHIBIT C

dotloop signat

**The Sanctuary Condominiums**
819 D St., NE
Washington, DC 20002

**MANDATORY ADDENDUM NO. __1__**
**TO PURCHASE AGREEMENT DATED __4/18/17__**
**DISTRICT OF COLUMBIA AND OTHER PROVISIONS**

SELLER:     819D LLC

PURCHASER:     __Karl Garcia__

CONDOMINIUM UNIT NO:     __34__

The parties hereto desire to modify the above Purchase Agreement as follows:

1.     DISTRICT OF COLUMBIA SOIL DISCLOSURE REQUIREMENT. Purchaser confirms that Seller has advised it, pursuant to Title 42, Section 608 of the District of Columbia Code, that the soil on the subject lands is noted in the Soil Survey of the District of Columbia as Brandywine – urban land complex. For further information the buyer can contact a soil testing laboratory, the District of Columbia Department of Environmental Services or the Soil Conservation Service of the Department of Agriculture.

2.     UNDERGROUND STORAGE TANK DISCLOSURE. In accordance with the requirements of the D.C. Underground Storage Tank Management Act of 1990, as amended by the District of Columbia Underground Storage Tank Management Act of 1990 Amendment Act of 1992 (C.C. Code 8-113.01 et seq.)(the "Act") and the D.C. Underground Storage Tank Regulations, 20DCMR Chapters 55-70 (the "Regulations"), Seller hereby informs Purchaser that Seller has no knowledge of the existence or removal during Seller's ownership of the Property of any "underground storage tanks" as that term is defined in the D.C. Official Code and Regulations. Information pertaining to underground storage tanks and underground storage tank removals of which the D.C. Government has received notification is on file with the DCCCR, Environmental Regulation Administration, Underground Storage Tank Branch, which is located at 2100 Martin Luther King, Jr. Avenue, S.E., Washington, D.C., and may be reached at telephone number (202) 404-1167.

3.     ARBITRATION. Any controversy or claim, arising out of or relating in any way to this Agreement, the Council of Unit Owners, or the Condominium, including the Condominium Unit and all Common Elements, or any alleged breach of any of the foregoing, shall be settled by arbitration in accordance with the prevailing rules of arbitration used within the District of Columbia.

4.     WARRANTIES PROVIDED BY SELLER. Seller shall provide all warranties on the Condominium Unit and the Common Elements of the Condominium as are required

by law. Such warranties include those warranties more fully set forth in the Limited Warranty described below, and all statutory required warranty rights provided by D.C. law, subject to all limits and exclusions set forth in such laws. Seller warrants the Condominium Unit against defects in workmanship and materials in accordance with the Limited Warranty. By signing this Agreement, Purchaser acknowledges that, prior to entering into this Agreement, Purchaser received a complete copy of the Limited Warranty. No other express or implied warranty has been made by Seller or otherwise forms any basis of the bargain between Seller and Purchaser. If a covered defect exists, Seller will satisfy its warranty obligation to Purchaser by repairing and/or replacing such item(s), in Seller's sole discretion, in a manner which meets or exceeds the performance standards described in the Limited Warranty or as required by any air conditioner, water heater, refrigerator, range, dishwasher and other appliances and equipment, Seller agrees to assign to Purchaser the manufacturers' warranties, without any recourse to Seller, to the extent that such manufacturers' warranties are available, given and assignable. Unless required by law, Seller provides no warranty on such items. Purchaser acknowledges that Purchaser has had the opportunity to review all consumer product warranties prior to the execution of this Agreement, and Purchaser acknowledges that the warranting party, and not the Seller, is responsible therefore, and that the Purchaser shall look solely to such warranting party, and not to the Seller, with respect to the performance under or compliance with the consumer product warranty, both as to scope and duration.

SELLER LIMITS ITS OBLIGATIONS UNDER THE LIMITED WARRANTY TO REPAIR AND REPLACEMENT. UNDER NO CIRCUMSTANCES WILL SELLER BE LIABLE FOR ANY SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES.

Seller does not warrant any building material used in the Condominium Unit to be free from toxicity to occupants or users and therefore, disclaims any liability arising therefrom. Seller is not responsible for personal allergic or other health reactions, or injury or property damage arising from building materials at or in the vicinity of the Condominium Unit. Seller makes no representations or warranty as to the presence or lack of radon, asbestos, mold or any other hazardous environmental condition in or on the Property or the Condominium Unit. Purchaser agrees that this Agreement is NOT contingent on radon testing results or the presence or lack of radon or other environmental conditions, in or on the Property or the Condominium Unit. The Purchaser further agrees that he shall not seek to extend the Settlement Date or withhold payment of any portion of the purchase price from the Seller on the basis of radon or other environmental conditions in or on the Property or the Condominium Unit, or on any similar basis. The U.S. EPA, state and local environmental authorities are best equipped to render advice regarding any potential risks that may exist in a particular area, the consequences associated with exposure to radon or other hazardous environmental materials, methods available to detect and measure radon levels, and what, if any, remedial measures may be advisable in particular circumstances to reduce the risk of exposure to radon or other hazardous environmental materials.

SELLER EXCLUDES AND PURCHASER HEREBY ACKNOWLEDGES SUCH EXCLUSION AND WAIVES ANY REPRESENTATIONS AND/OR WARRANTIES

The Sanctuary Condominiums
Purchase Agreement

dotloop signature

THAT COULD BE CONSTRUED TO COVER THE PRESENCE OF RADON, ASBESTOS, MOLD OR OTHER ENVIRONMENTAL CONDITIONS IN OR ON THE PROPERTY OR THE UNIT.

By closing upon its purchase of the Unit, Purchaser will be deemed to have released Seller from any and all claims and liabilities relating to or arising from the presence of radon, asbestos, mold or other environmental conditions in or on the Property or the Condominium Unit, and from any and all responsibility for mitigation or remediating any radon gas, naturally occurring asbestos, mold or other environmental conditions that may be discovered in or on the Property or the Condominium Unit.

5.    POSSESSION.
      a.    Possession of the Property will be given to Purchaser at Settlement. Purchaser has no right to, and agrees not to, enter the Property before Settlement without written approval of Seller.
      b.    Purchaser acknowledges that he/she has been made aware that, in connection with Seller's development of the Property, Seller has been required or may in the future be required to grant to D.C., or to public utility companies, certain easements for water, sewer, storm drains, telephone, gas and electric facilities and other municipal utilities on or about the Property in those locations as shown on the plat of the Property or at such other locations as may be required. Purchaser agrees to the granting of such easements prior or subsequent to settlement hereunder and, in order to affect the same, agrees to take title to the Property subject to the following provision, which provision shall be incorporated into the deed given by Seller to Purchaser substantially in the following form:

"Grantee, by the acceptance of this deed, hereby acknowledges and agrees that the property herein conveyed is and shall be subject to certain easements for water, sewer, storm drains, storm water management facilities and other municipal utilities granted or to be hereafter granted by Grantor unto the District of Columbia or to certain public utility companies, in those locations on or about the property identified above or at such other locations as may be required, which easements are intended to be and shall be recorded subsequent to the recordation of this deed."

6.    ZONING. The Condominium is subject to Zoning Regulations.

7.    ORAL STATEMENTS, REPRESENTATIONS, WARRANTIES AND PROMISES. Any oral statements, representations, warranties or promises made to you prior to your execution of this Contract of Sale by Seller or representative of the Seller may not be enforceable by you against the Seller or representative of the Seller in any subsequent legal or administrative proceeding unless such statements, recommendations, warranties, or promises are in writing and signed by yourself and the Seller, or representative of Seller. Any statements, representations, warranties, or promises made to you by the Seller or representative of Seller, upon which you rely, and which are not contained in this Contract of Sale must be stated in a written addendum attached to this Contract which is to be signed by both yourself and the Seller in order to make such

dotloop signal

statements, representations, warranties, or promises part of the agreement between yourself and the Seller and enforceable in any legal or administrative proceeding.

Declarant shall warrant the Unit against structural defects (as defined in Section 42-1903.16 of the Condominium Act) for two (2) years after the date of conveyance of the Condominium Unit, and each of the Common Elements for two (2) years after the date of conveyance of the first (1st) Unit in the Condominium or completion of that Common Element (whichever is later). All such warranties are more fully set forth on the Limited Warranty as exhibits to the Public Offering Statement. Declarant will deliver a signed copy of the Limited Warranty to Purchaser at settlement.

**SELLER:**
**819D LLC**

**Andrew Rubin, President**

**PURCHASER ONE:**

*Karl Garcia*

dotloop verified
04/18/17 12:52PM EDT
85MO-57BW-CIPG-N8KC

**PURCHASER TWO:**

Date:_____

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| **KARL GARCIA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2020-17040** |
| ) | |
| **THE RUBIN GROUP, LLC,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER ON MOTION TO DISMISS

The Court, having considered Defendants' Motion to Dismiss, any opposition thereto, and the entire record herein, is of the opinion that said motion is well taken and should be and is GRANTED.

SO ORDERED this 15th day of January, 2021.

_____
Circuit Judge

SEEN AND AGREED:

_____
Laurin Mills (79848)

SEEN AND _____:

_____
Christopher Glaser

SEEN AND _____:

_____
Mark Crawford

SEEN AND _____:

_____
Bethany Benes

VIRGINIA

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

| | | |
|---|---|---|
| **KARL GARCIA** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. CL-2020-17040 |
| | ) | |
| **THE RUBIN GROUP LLC,** *et al.* | ) | |
| *Defendants.* | ) | |

### ORDER

THIS MATTER came before the Court upon the Motion to Dismiss for Lack of Personal

Jurisdiction, Improper Venue, *Forum Nonconveniens*, and Standing on Count III (the "**Motion to**

**Dismiss**") filed by Defendants The Rubin Group, LLC, 819 Capital LLC, K Street Holdings LLC,

TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, Woodmore Partners LLC, TRG

Development LLC, 638 Newton Partners LLC, Michelle A. Tygier, and Robert Rubin

(collectively, the "**Moving Defendants**"), the Opposition thereto filed by Plaintiff Karl Garcia,

and oral arguments of counsel Laurin Mills and Bethany Benes on January 15, 2020;

IT APPEARING TO THIS COURT that as to the Moving Defendants (i) this Court has

personal jurisdiction over each of the Moving Defendants pursuant to Va. Code § 8.01-328.1; (ii)

venue in this Court is proper pursuant to Va. Code § 8.01-261 and § 8.01-262; (iii) the claims at

issue in this case are not subject to an arbitration provision; (iv) Virginia law should be applied to

the claims asserted in this case; and (v) Plaintiff Karl Garcia has standing to assert the claims set

forth in Count III of his Complaint;

IT IS HEREBY ORDERED that Moving Defendants' Motion to Dismiss is DENIED;

IT IS HEREBY FURTHER ORDERED that Moving Defendants shall each file an Answer

to the Complaint within twenty-one (21) days from entry of this Order.

ENTERED THIS 15th DAY OF JANUARY, 2021

_____
Hon. Dontae Bugg

**SEEN AND AGREED:**

_____
Bethany R. Benes (Va. Bar No. 85408)
**Bethune Benes, PLLC**
4290 Chain Bridge Road, Suite 302
Fairfax, Virginia 22030
Tel.: (703) 260-9322
bbenes@bethunebenes.com
*Counsel for Plaintiff Karl Garcia*


**SEEN AND OBJECTED TO FOR THE REASONS STATED IN COURT AND IN DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM:**

**Endorsement Waived
Per Rule 1:13**
_____
Laurin H. Mills, Esq. (Va. Bar No.79848)
Kimberly Jandrain, Esq. (Va. Bar No. 72727)
Samek Werther Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314
Tel.: 703-547-4693
Facsimile: 703-547-4694
laurin@samek-law.com
kim@samek-law.com
*Counsel for Defendants Michelle Tygier;*
*The Rubin Group, LLC;*
*819 Capital LLC;*
*K Street Holdings LLC;*
*TR Holdings LLC;*
*2233-40th Partners LLC;*
*South Glebe LLC;*
*Woodmore LLC;*
*TRG Development LLC;*
*638 Newton Partners LLC; and*
*Robert Rubin*

2

Seen and objected to for the reasons set forth in the Response to "Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, Forum Non Conveniens, and Standing on Count III" presented on January 7, 2021 as well as the arguments made in open court.

*Mark Crawford* with permission by BRB

Mark Crawford, Esq. (Va. Bar No. 36153)
Law Offices of Mark D. Crawford, PLLC
1005 North Glebe Road, Suite 210
Arlington, Virginia 22201
Tel: 202-256-1244
Facsimile: 703-522-2264
mcrawford@mdc-law.com
*Counsel for Defendant 819D LLC*


Seen and objected to for the reasons set forth in the Response to "Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, Forum Non Conveniens, and Standing on Count III" presented on January 7, 2021 as well as the arguments made in open court.

*Christopher A. Glaser* with permission by BRB

Christopher A. Glaser, Esq. (Va. Bar No. 43491)
Meagan E. Roach, Esq. (Va. Bar No. 87955)
Jackson & Campbell, PC
2300 N Street, N.W., Suite 300
Washington, DC 20037
Tel: 202-457-1600
Facsimile: 202-457-1678
cglaser@jackscamp.com
mroach@jackscamp.com
*Counsel for Defendant Andrew Rubin*