Marc E. Albert, No. 345181
Tracey M. Ohm, No. 982727
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 728-3020
Fax (202) 572-9943
marc.albert@stinson.com
tracey.ohm@stinson.com

and

Bethany R. Benes (Va. Bar No. 85408; DC Bar No. 1686123)
*Admitted Pro Hac Vice*
BETHUNE BENES, PLLC
3975 Fair Ridge Drive
South Suite 246
Fairfax, Virginia 22033
Tel.: (703) 260-9322
bbenes@bethunebenes.com

*Counsel for Karl Garcia*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 7 |
| | ) | |
| 819D LLC, | ) | Case No. 22-00101-ELG |
| | ) | |
| Debtor. | ) | |
| | ) | |

**OPPOSITION OF KARL GARCIA TO TRUSTEE'S MOTION
TO APPROVE COMPROMISE WITH SETTLING DEFENDANTS**

Karl Garcia ("**Mr. Garcia**"), by counsel, hereby files this Opposition to the

Motion to Approve Compromise [Dkt. No. 142] (the "**Motion**") filed by Bryan S. Ross

as Chapter 7 Trustee ("**Trustee Ross**") for the estate of 819D LLC (the "**Debtor**")

seeking approval of a settlement with the majority of the defendants of the action

currently pending before this Court as Adversary Proceeding No. 22-10009: Rubin Group

LLC, 819 Capital LLC, K Street Holdings LLC, TR Holdings LLC, 2233-40th Partners

LLC, South Glebe LLC, Woodmore Partners LLC, TRG Development LLC, 638 Newton Partners LLC, Andrew Rubin ("**A. Rubin**"), Michelle A. Tygier, Robert Rubin ("**R. Rubin**"), Canal View Holdings LLC, Gregory Auger, II, Gregory Auger, III, Thomas D. Madison and Jeffrey Houle (collectively, the "**Settling Defendants**"). In support of his opposition, Mr. Garcia states as follows:

## I.     **INTRODUCTION**

This bankruptcy case was filed for an improper purpose,[1] and approving the compromise reached between Trustee Ross and the Settling Defendants sees that improper purpose fully realized. At no point in this case was the Debtor an honest debtor in need of a fresh start. The Debtor has not had any business income since 2017. When it filed its Chapter 11 bankruptcy petition 819D had not engaged in business operations for years, had no employees, had not filed taxes in 2021, and remained in existence only to address litigation. In short, the Debtor was an easy sacrifice and the purpose of the bankruptcy filing was to protect corporate insiders.

819D's Chapter 11 case was funded by a related entity and defendant in pending litigation to avoid fraudulent and improper voluntary transfers. It was supported by additional co-defendants - related entities and individuals seeking to gain an advantage from the removal of the case from Fairfax County Circuit Court to the Bankruptcy Court and the transfer of the underlying causes of action away from Mr. Garcia as plaintiff and into property of the estate. If the Motion is approved the parties who stand to benefit from the bankruptcy filing are not creditors or even the Debtor itself, but those entities

---

[1] *See* the Motion of Karl Garcia to Dismiss Chapter 7 Case [Dkt. No. 179], Section III.B.2.

and persons controlling the Debtor pre-conversion, including its president, and the

bankruptcy funder, which is the president's limited liability company.

II.    **BACKGROUND**

1.    The compromise sought to be approved in the Motion settles the litigation

described below.

A.    **Improper Transfer Litigation**

2.    The Debtor was the developer and owner of a building known as "The

Sanctuary", with an address of 819 D Street NE, Washington, DC (the "**Property**").[2] *See*

the Declaration of Karl Garcia attached to the Motion of Karl Garcia to Dismiss Chapter

7 Case [Dkt. No. 179] (the "**Motion to Dismiss**") (the declaration is Dkt. No. 179-1, and

hereafter is referred to as the "**Garcia Decl.**") ¶ 4.

3.    In or around April 2017, Mr. Garcia purchased Unit 34 within the Property

from 819D.  As an owner of a unit within the Property, Mr. Garcia is also a member of

homeowners' association known as The Sanctuary Condominium Unit Owners

Association (the "**Association**") and has certain rights with regards to the Property's

Common Area Elements, as defined by the Association's governing documents.  Garcia

Decl., ¶ 5.

4.    Almost immediately after turning over possession of the Property's units

to new unit owners, 819D was notified of significant defaults in the Property.  Garcia

Decl., ¶ 9.  Nevertheless, from and after April 2017 and under threat of litigation from

---

[2] Additional background on the Property, including the litigation regarding the Property, is provided in
Sections II.A. and II.B. of the Motion to Dismiss.

Unit owners, the Debtor and its insiders transferred away substantially all of the proceeds relating to the Property.

5.      On October 30, 2020, Mr. Garcia filed a complaint in the Fairfax County Circuit Court (the "**Fairfax Court**") for the benefit of all creditors relating to the improper conveyances made by Ms. Tygier, R. Rubin, A. Rubin, and the ten entities they own, operate, and/or control including 819D (the "**Rubin Defendants**"[3]) to siphon away what was believed at that time to total approximately half of a million dollars, initiating an action titled *Karl Garcia v. The Rubin Group, et al.*, Case No. CL-2020-17040 (the "**Improper Transfers Action**").  Garcia Decl., ¶ 12.

6.      During the course of discovery, Mr. Garcia learned of additional transfers made by the Rubin Defendants, as well as additional grantees involved in the transfers. Garcia Decl., ¶ 13.  As a result, with leave of Court, Mr. Garcia amended his claims on February 26, 2021, November 18, 2021, and March 23, 2022.[4]  Mr. Garcia's current pleading, the Third Amended Complaint, asserts improper transfers between the Rubin Defendants and six additional Defendants totaling more than $6 million.  *Id.  See* **Ex. A**: Third Amended Complaint.

7.      While the Improper Transfers Action proceeded in the Fairfax Court for over a year and a half, the Rubin Defendants forced an endless need for motions practice, including no less than 54 motions filed in the Court as a result of their gamesmanship.

---

[3] Canal View Holdings LLC, the entity owned and operated by A. Rubin, was later added as a party defendant and is included in the "Rubin Defendants."

[4] Each amendment to the original Complaint only asserted additional transfers and/or parties; the amendments were not the result of any failure to meet a legal standard.  While the defendants filed nearly every possible dispositive motion to each version of the Complaint, the Fairfax Court consistently denied the motions and found in favor of Mr. Garcia.

CORE/3525930.0002/182737582.2

Garcia Decl., ¶ 14.  Out of the 35 motions determined by the Court, <u>all motions were granted in favor of Mr. Garcia[5], including the dismissal by the Virginia Supreme Court of the Rubin Defendants' interlocutory appeal</u>.  The litigation was not limited to heavy motions practice; the litigation involved extensive discovery including subpoenas to 17 different third parties, more than 519,000 pages of documents produced, and numerous depositions, including 819D's deposition scheduled to begin on June 20, 2022.  *Id.*

8.      Throughout the course of the litigation in the Improper Transfers Action, the Rubin Defendants continuously violated the Rules of the Virginia Supreme Court, forcing Mr. Garcia to file multiple motions to compel each step of the way to obtain discoverable materials for which Mr. Garcia was entitled.  Garcia Decl., ¶ 15.  For example, although a file purportedly containing books and records was eventually produced, Mr. Garcia was never provided with a password to allow access to the Quickbooks file.  *Id.*

9.      In addition to compelling the respective Rubin Defendants to comply with discovery, the trial court finally awarded Mr. Garcia monetary sanctions against A. Rubin (including a finding by the Court that A. Rubin has "stonewalled" discovery (*see* **Ex. B**: Order dated March 29, 2021), and against 819D in the amount of $9,532.50 (*see* **Ex. C**: Order dated May 20, 2022).  Garcia Decl., ¶ 16.  The Fairfax Court's May 20, 2022 sanctions Order reserved for determination whether 819D's defenses would be struck as requested by Mr. Garcia as a result of 819D's persistent and intentional discovery violations and ordered the sanctions be paid by June 20, 2022.  In summary, if 819D

---

[5] A. Rubin filed a Motion to Compel against Mr. Garcia, which the Court found "moot" as Mr. Garcia had complied with his discovery obligations to date.

failed to turn over its complete financial records, including Quickbooks records, the defenses of 819D to the Improper Transfers Action were likely to be struck as requested in the sanctions motion.  819D produced a password protected Quickbooks file (with no password provided) in violation of the Fairfax Court's May 20, 2022 sanctions Order.

10.      On June 17, 2022, the Fairfax Court also granted in part a Motion for Sanctions against 11 of the Rubin Defendants, compelling each to provide full and complete responses to discovery responses pursuant to two prior Court Orders by Friday, June 24, 2022 or face further sanctions (*see* **Ex. D**: Order dated June 17, 2022).  Garcia Decl., ¶ 17.

**B.      Bankruptcy Filing and Removal**

11.      After 8:00 pm on June 19, 2022 – the night before 819D was to pay the sanctions award and appear for its scheduled deposition in the Improper Transfers Action, and under notice that further sanctions in the way of defenses struck were imminent as a result of its noncompliance with the Fairfax Court's May 20, 2022 sanctions Order – 819D filed a voluntary Chapter 11 petition initiating the above-captioned bankruptcy proceeding.

12.      The filing fee and retainer for Debtor's counsel totaling $26,738.00 was paid by Canal View Holdings LLC ("**Canal View**"), an entity owned by A. Rubin, both co-defendants in the Improper Transfers Action.  [Dkt. No. 226].

13.      The assets listed by the Debtor included cash in the amount of $356.06, restricted funds in the amount of $365,008.42 that secure the warranty bond relating to the Property, expired insurance policies owned by Potomac Construction Group with Erie

---

[6] Unless otherwise indicated, docket entries are references to Case No. 22-00101.

Insurance (with a total policy value of $16,200,000), an insurance policy with Hartford

Mutual Insurance group valued at $3,000,000 in the aggregate, and an uncollectable

default judgment against defunct entity Potomac Construction Group in the amount of

$339,384.13. [Dkt. No. 18].

14.     In response, the Fairfax County Circuit Court took the position that the

Improper Transfers Action was stayed with regards to 819D only pursuant to 11 U.S.C. §

362 and was set to proceed against all non-debtor defendants.  Garcia Decl., ¶ 18.

Accordingly, on June 22, 2022, 819D filed a Notice of Removal pursuant to 28 U.S.C. §

1452 to remove the Improper Transfers Action in its entirety and against all defendants to

this Court.  *Id.* [Dkt. No. 40].

15.     In response to 819D's Notice of Removal, the Rubin Defendants and

Jeffrey Houle filed improper Motions to Dismiss Mr. Garcia's Third Amended

Complaint.  [Dkt. Nos. 1, 15, 16, Adv. Proc. No. 22-10009].  Not only were the Motions

filed without any proper procedural basis, they were near mirror images to Demurrers and

Motions to Dismiss filed by the respective Rubin Defendants that had already been

rejected by the Fairfax County Circuit Court on numerous occasions.  The filings made it

clear that the defendants are simply taking advantage of the forum shopping they have

engaged in through their bankruptcy filing on behalf of 819D and are hoping for a

different result here.  The motions, along with Mr. Garcia's motion to strike the motions

to dismiss [Dkt. No. 20, Adv. Proc. No. 22-10009], remain pending in the Improper

Transfers Action adversary proceeding, Adv. Proc. No. 22-10009-ELG.

16.     Mr. Garcia filed a motion to dismiss the Chapter 11 bankruptcy.  [Dkt. No.

41, withdrawn post-conversion at Dkt. No. 147].  Once in the courtroom, and at the start

of the October 12, 2022 hearing set on that motion (after all other parties in interest and the Court had prepared for the hearing), 819D converted its case to Chapter 7. [Dkt. No. 111].

17.     Bryan S. Ross ("**Trustee Ross**") was appointed as trustee of the Debtor's Chapter 7 estate. [Dkt. No. 111].

18.     According to the fee application filed by Debtor's counsel, the Debtor incurred fees and expenses of $157,931.08 in the four months that the defunct company was in Chapter 11, exceeding the retainer paid by Canal View by over $130,000. [Dkt. No. 166].

**C.     Declaratory Judgment Action**

19.     Following conversion to Chapter 7, the Rubin Defendants and other defendants to the Improper Transfers Action lost the ability to smother the Improper Transfers Action by directly controlling the actions of the Debtor. They then turned their attention to engaging in strong-arm tactics to place pressure on Trustee Ross and otherwise attempt to control the direction of the bankruptcy case.

20.     On March 3, 2023, A. Rubin and Canal View filed a Complaint against Trustee Ross seeking a declaratory judgment that the plaintiffs did not engage in any fraudulent or avoidable transfers, the same issues before the Court in the Improper Transfers Action. The Complaint initiated Adversary Proceeding No. 23-10009 (the "**Declaratory Judgment Action**"). [Dkt. No. 128].

21.     After the Complaint was filed TR Holdings LLC, The Rubin Group LLC, Robert Rubin, and Michelle Tygier moved to intervene in the Declaratory Judgment Action and then filed a third party complaint also seeking a declaratory judgment that the

CORE/3525930.0002/182737582.2

plaintiffs did not engage in any fraudulent or avoidable transfers.  [Dkt. Nos. 5, 13, Adv.

Proc. No. 23-10009].

22.      In order to preserve the potential to recover any assets for the estate,

Trustee Ross was then forced to defend the Declaratory Judgment Action with no assets

in the estate with which to do so.

23.      In a similar vein, after Trustee Ross indicated that he would be filing a

motion seeking approval of an agreement to sell/settle with Mr. Garcia, the Rubin

Defendants filed motions for summary judgment in the Improper Transfers Action.  [Dkt.

Nos. 27, 53, Adv. Proc. No. 22-10009].

**D.      Proposed Compromise with the Settling Defendants**

24.      One week before the hearing on the motion to approve the settlement with

Mr. Garcia, the Settling Defendants made an offer to Trustee Ross to settle the Improper

Transfers Action.  Despite acknowledging through counsel that this appears to be a

"catch and kill bankruptcy" intended to end the Improper Transfer Action litigation,

Trustee Ross accepted the offer and filed a motion to approve that settlement [Dkt. No.

142].

25.      The Settling Defendants' agreement with Trustee Ross involves them

paying a total of $150,000: $75,000 of which would go to the Debtor's estate, and

$75,000 of which would go to supplement the warranty bond that secures the warranty

claims relating to the Property that have been filed with the Department of Housing and

Community Development in the District of Columbia by Mr. Garcia and the Association.

The Settling Defendants also release their claims against Trustee Ross and the bankruptcy

CORE/3525930.0002/182737582.2

estate, including the Declaratory Judgment Action and the proofs of claim filed by Ms.

Tygier, A. Rubin and Canal View. [Dkt. No. 142, ¶ 2-3].

26.    In return, all of the defendants in the Improper Transfers Action will

receive global releases and waivers, including releases of any fraudulent conveyance

claims. [Dkt. No. 142, ¶ 4].

27.    On June 23, 2023, Trustee Ross resigned as Chapter 7 Trustee for 819D,

and Wendell Webster ("**Trustee Webster**") was appointed as replacement trustee. [Dkt.

No. 162]. Trustee Webster retained the same counsel as his predecessor, McNamee

Hosea, P.A. [Dkt. No. 163].

28.    To date, Trustee Webster has not withdrawn the Motion, nor has he

withdrawn the Motion to Approve Settlement and Sell Related Cause of Actions [Dkt.

No. 131] (the "**Garcia Settlement Motion**") previously filed by Trustee Ross seeking

approval of an settlement agreement with Mr. Garcia.

29.    On July 5, 2023, Debtor's counsel, Hirschler Fleischer, P.C., filed a first

and final application for allowance and authorization of payment of fees and expenses

totaling $157,931.08 incurred between 819D's June 19, 2022 Chapter 11 bankruptcy

filing and conversion of the case to Chapter 7 on October 12, 2022. [Dkt. No. 166].

30.    Hirschler Fleischer, P.C. has filed an opposition to the Motion on the

grounds that the element of the Settling Defendants' proposed agreement with Trustee

Ross that directs $75,000 to supplement the warranty bond violates Sections 507(a) and

726(b) of the Bankruptcy Code to the detriment of administrative claimants such as itself.

[Dkt. No. 167].

31.     The Acting United States Trustee for Region 4 (the "**U.S. Trustee**") filed a limited objection to the fee application [Dkt. No. 175], noting, *inter alia*, that "[i]t is also unclear if these actions were for the benefit of the estate or for the benefit of an insider." Limited Objection, P. 23. Trustee Webster and Mr. Garcia filed joinders to the U.S. Trustee's limited objection. [Dkt. Nos. 176 and 177, respectively].

## III.   LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 9019 provides that "[o]n motion by the trustee after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. "A bankruptcy court's decision to approve a settlement must be an informed one based upon an objective evaluation of developed facts. Indeed, a bankruptcy judge cannot accept the proponent's word that the settlement is reasonable, nor may the judge merely 'rubber stamp' a proposal." *In re Andre Chreky, Inc.*, 448 B.R. 596, 609 (D.D.C. 2011) (quoting *Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 554 (D.D.C. 2008)). Rather, a bankruptcy judge must "determine that a proposed compromise . . . is fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968).

In determining whether a settlement is "fair and equitable," the bankruptcy court should consider: "(1) probability of success in the litigation; (2) difficulties, if any, with collection, (3) the complexity of the litigation, including the expense, inconvenience, and delay attendant to the litigation; and (4) the interest of creditors." *Yelverton v. Webster (In re Yelverton)*, 527 B.R. 557, 563 (D.D.C. 2014) (quoting *Andre Chreky, Inc.*, 448 B.R. at 609). "The experience and knowledge of the bankruptcy court judge is of significance in assessing the propriety of the settlement." *Advantage Healthplan,* 391

CORE/3525930.0002/182737582.2

B.R. at 553.  "In determining the reasonableness of a settlement, a bankruptcy judge must

decide only whether the settlement falls between the lowest and highest points in the

range of reasonableness."  *Yelverton*, 527 B.R. at 563 (quoting *Andre Chreky, Inc.*, 448

B.R. at 596)).

## IV.    OPPOSITION

### A.    The Compromise with the Settling Defendants Is Not Fair and Equitable.

The Settlement is not a fair and equitable compromise.  It is a proposal designed

to benefit non-debtor insiders and will do so at the expense of the Debtor's creditors,

particularly its general unsecured creditors.

i.    Probability of Success

In evaluating the probability of success of the Improper Transfers Action, Trustee

Ross identifies two arguments raised by the Settling Defendants: application of Virginia

law and the solvency of the Debtor.  As set forth more fully in the Plaintiff's Opposition

to Motion for Partial Summary Judgment Filed by Andrew Rubin and Canal View

Holdings LLC [Dkt. No. 54, Adv. Proc. No. 22-10009] and Plaintiff's Opposition to

Motion for Partial Summary Judgment Filed by the "Tygier Parties" [Dkt. No. 55, Adv.

Proc. No. 22-10009], the Fairfax Court weighed in on these issues in Mr. Garcia's favor

prior to the 819D bankruptcy filing on multiple occasions.

The Fairfax Court has repeatedly held that *it does in fact have personal*

*jurisdiction over each in denying the Rubin Defendants' numerous Demurrers and*

*Motions to Dismiss*.  First, the Tygier Parties asserted this same argument in November

2020 in their initial responsive pleading to Mr. Garcia's original Complaint.  On January

15, 2021, the Honorable Dontae Bugg rejected their argument and denied the Tygier

Parties' Motion to Dismiss.  *See* **Ex. E:** Memorandum re Motion to Dismiss and Order

dated January 15, 2021 [Dkt. Nos. 9, 22, Case No. CL-2020-0017040, Fairfax County

Cir. Ct.].  The Tygier Parties filed an interlocutory appeal to the Virginia Supreme Court.

The Virginia Supreme Court dismissed the appeal later that year.

The Fairfax Court similarly rejected the same argument made by A. Rubin and

Debtor 819D.  In February 2021, the Honorable Michael Devine found that A. Rubin had

waived any challenge to personal jurisdiction.  Virginia Code § 8.01-277.1(A)

establishes, "a person waives any objection to personal jurisdiction or defective process if

he engages in conduct related to adjudicating the merits of the case, including, but not

limited to: (1) Filing a demurrer…; [and/or] (2) Conducting discovery…"  A. Rubin has

done both.  First, on November 11, 2020, A. Rubin propounded his "First Requests for

Production of Documents and Things" to Mr. Garcia.  Second, on November 18, 2020, A.

Rubin, by counsel, issued two subpoenas to Tilton Bernstein Management, Inc. and K+M

Property Management LLC.  *See* **Ex. F**: Order dated February 22, 2021.

Just two months prior to 819D's bankruptcy filing, the Honorable Grace Carroll

similarly overruled the same argument made by the Rubin Defendants in their Demurrers

to the Third Amended Complaint. Again, the Fairfax Court recognized that Virginia Code

§ 8.01-328.1(3) also establishes personal jurisdiction over any person (or entity) who

causes tortious injury in the Commonwealth, including tortious injury caused by

improper conveyances in violation of Va. Code §§55.1-400 and 401.  <u>Both the debtor and</u>

<u>any recipient of property improperly conveyed are liable</u> to the extent of the value of the

property transferred.  *Price v. Hawkins,* 247 Va. 32 (1994).  Mr. Garcia's Third Amended

Complaint not only alleged facts that 819D and the Settling Defendants had transacted

CORE/3525930.0002/182737582.2

business in Virginia, giving rise to his personal jurisdiction, but also that each had

engaged in causing tortious injury in Virginia through, at the very least, multiple series of

financial transactions in which each was either, or in some cases both, the transferor and

recipient of large sums of money in violation of Va. Code § 55.1-400 and 401.

On April 29, 2022, the Honorable Grace Carroll also denied a Motion to Dismiss

filed by Canal View, which similarly challenged the Fairfax Court's personal jurisdiction

over Canal View.  *See* **Ex. G:** Demurrers and Memorandum re Motion to Dismiss Third

Amended Complaint (excluding caselaw exhibits) and Orders dated April 21, 2022 and

April 29, 2022 [Dkt. Nos. 162, 167, 212, Case No. CL-2020-0017040, Fairfax County

Cir. Ct.].  Unless this Court's opinion now directly contradicts the numerous rulings

made by the Fairfax Court finding proper jurisdiction in Virginia, Mr. Garcia is likely to

prevail on this unsuccessful defense repeatedly asserted by the Rubin Defendants.

As for the insolvency issue, again raised by the Rubin Defendants in this

bankruptcy court after being rejected by the Fairfax Court, whether 819D was insolvent

or not is irrelevant to the transfers alleged by Mr. Garcia under Va. Code § 55.1-401.

The Fairfax Court recognized this when it denied the Rubin Defendants' Demurrers to

the Third Amended Complaint on April 22, 2022.  Furthermore, even if the solvency of

819D was determinative of liability for an improper *voluntary* conveyance (which it is

not), it is not asserted that the insolvency issue applies whatsoever to a *fraudulent*

conveyance under Va. Code § 55.1-400.

Finally, the financial status of 819D from 2017 (when the first transfer was

alleged) until 2021 (when the last transfer is alleged) is in dispute.  While the Motion

notes that 819D had certain insurance policies that may cover any warranty claim, it is

yet to be determined as to whether the insurance policies listed by the Debtor actually provide coverage for many of Mr. Garcia's claims, including those of intentional torts for which insurance coverage is usually unavailable. For example, to date the only Hartford Mutual insurance policy that has been shared with Mr. Garcia after multiple requests is issued in the name of The Rubin Group, LLC and 638 Newton Partners, LLC with the insured premises matching the personal addresses of A. Rubin and Ms. Tygier. No policy has been produced in the name of Debtor 819D or reflecting coverage for the property at 819 D Street NE.

Again, unless this Court's opinion now disagrees with the holdings of the Fairfax Court, Mr. Garcia is likely to prevail on this issue. Trustee Ross states in the Motion that in order to prosecute the Improper Transfers Action, "the Trustee would have needed to succeed at every turn of the case." Motion, p. 5. As explained above, in the nearly two years that the proceeding was pending in the Fairfax Court, Mr. Garcia had that perfect record. Out of 35 motions determined by the Court, all motions were granted in favor of Mr. Garcia.

ii.    Difficulties with Collection

Trustee Ross indicates in the Motion that difficulties with collection was not a significant part of his consideration in reaching an agreement with the Settling Defendants. Motion, p. 4. Nor could it reasonably be asserted, as the limited financials that were obtained in the Improper Transfers Action show that the defendants have funds readily available to return the funds improperly received and satisfy the judgment requested. The volume of resources dedicated to legal fees in these proceedings support

15

Trustee Ross's observation that it appears that various defendants have assets that could be seized in connection with collection proceedings.

    iii.    <u>Complexity of the Litigation</u>

In evaluating the complexity of the Improper Transfers Action, Trustee Ross highlights the potential need for experts as well as amounts of time and money needed to pursue the Improper Transfers Action.  This position ignores, however, that the "heavy lifting" has already been completed by Mr. Garcia, as the case was just three months away from trial.  While the case was arguably complex, any alleged complexities had already been ironed out over two years that the case was litigated and through no less than 35 motions argued and ruled in favor of Mr. Garcia.  Mr. Garcia had already footed the bill for legal fees and experts.  In addition, Mr. Garcia was willing to continue paying these expenses should the case continue as planned.  The interruption from the path towards a proper judgment was caused not by a lack of will or funds to pursue by Mr. Garcia, but by the desperate maneuver of the Rubin Defendants to escape their inevitable loss in the Fairfax Court.

With two years of litigation in the rearview mirror, the path forward was not complex.  As discussed below, an alternative path that Trustee Webster could pursue would mitigate these concerns.  Mr. Garcia served as the proverbial "well-funded plaintiff" that the Settling Defendants were eager to replace by filing the 819D bankruptcy case.  He previously retained the requisite experts, and they remain available to him.  Approving the proposed compromise with the Settling Defendants serves to reward them for swapping in a plaintiff with a nearly empty estate and then making every

16

effort to increase the complexity of the litigation, including filing the Declaratory

Judgment Action and summary judgment motions.  That result is anything but equitable.

In addition, due to a combination of Mr. Garcia's litigation efforts and the Settling

Defendant's failure to comply with discovery, significant developments had occurred in

the Improper Transfer Action at the time of the bankruptcy filing that had the potential to

greatly simplify the remainder of the case.  Not only was the case scheduled for trial in

September 2022, the Fairfax Court's May 20, 2022 sanctions Order reserved for

determination whether 819D's defenses would be struck if 819D did not provide full and

complete responses, including all Quickbooks files, by May 27, 2022 – an order that

819D failed again to comply with (*see* **Ex. C**: Order dated May 20, 2022).  On June 17,

2022, the Fairfax Court also granted in part a Motion for Sanctions against 11 of the

Rubin Defendants, compelling each to provide full and complete responses to discovery

responses pursuant to two prior Court Orders by Friday, June 24, 2022 or face further

sanctions, including the striking of defenses (*see* **Ex. D**: Order dated June 17, 2022).  As

819D failed to comply with its May 27, 2022 deadline, it was likely that 819D's defenses

(the same defenses shared by the Rubin Defendants) would be struck, making the path

forward even more clearly in favor of creditors.

  iv. <u>Interest of Creditors</u>

The proposed compromise with the Settling Defendants provides at most

$150,000 to the estate.  As structured, the agreement with the Settling Defendants

initially provides just $75,000 to the estate, with an additional $75,000 to be held in

escrow to potentially augment the warranty bond fund (the latter, the "**Trust Settlement**

**Sum**").  As discussed in more detail below, if certain milestones are not met by a date

CORE/3525930.0002/182737582.2

certain, the funds could be released to the estate, escheat to the Debtor, or be returned to

the equity holders of the Debtor, i.e., various Settling Defendants.  Although not yet

allowed, the Hirschler Fleischer fee application alone is more than $150,000, much less

$75,000.  That does not take into consideration the Chapter 7 administrative claims for

counsel for Trustee Ross and Trustee Webster, which are likely significant due in no

small part to the actions of the Settling Defendants.  General unsecured claimants will see

none of the $75,000 payment and likely would not even receive a distribution from the

entire $150,000.  Even Mr. Garcia and the Association, as the parties asserting warranty

claims against the Property, would only receive the restricted funds in the event they

obtain a "Qualifying Judgment."

The Settling Defendants also release their claims against Trustee Ross and the

bankruptcy estate, including the Declaratory Judgment Action and the proofs of claim

filed by Ms. Tygier, A. Rubin and Canal View.  Motion, p. 2-3.  As set forth in more

detail in the Motion to Dismiss, these claim waivers have limited to no value to the estate.

*See* Motion to Dismiss, p. 21-22.  However, even putting aside for a moment the validity

of the waived claims, there is no benefit to the estate of a reduction of claims against the

estate when no distribution is available to any of those claims.  Quite simply, the only

parties that benefit from the proposed settlement are the attorneys and the Rubin

Defendants.

## B.      The Compromise with the Settling Defendants Is Flawed at the Expense of Creditors.

The compromise with the Settling Defendants also contains identifiable flaws.  As

pointed out above, the Hirschler Fleischer firm has objected to the proposed settlement on

CORE/3525930.0002/182737582.2

the grounds that the provision placing $75,000 in trust to augment the warranty bond

fund violates the distribution scheme of the Bankruptcy Code.  In addition, in

constructing the offer to settle the Improper Transfers Action the Settling Defendants are

continuing to exert undue influence over the estate.

The Trust Settlement Sum serves as a supplement to the warranty bond "should

either or both of Mr. Garcia and the HOA succeed in obtaining a final, non-appealable

judgment against the Debtor that may be satisfied by a warranty bond held by the Debtor

(a "Qualifying Judgment")."  Motion, Ex. A, p. 4, Section 3.  The requirement for a

Qualifying Judgment (versus an allowed claim) for release of the funds impacts Trustee

Webster's resolution of the warranty claims of Mr. Garcia or the Association.  Section 3.c

of the settlement agreement with the Settling Defendants states that:

> c. **Escheatment of Trust Settlement Sum**. Should part or all of the Trust Settlement
> Sum remain undistributed upon the occurrence of the earlier of (a) such time as the
> claims of Mr. Garcia and the HOA, against the Debtor, for breach of any warranty
> supported by a bond held by the Debtor, are subject to the entry of a final, non-
> appealable order, of a court of competent jurisdiction; or (b) December 31, 2025, then
> the remaining portion (or, if applicable, the whole) of the Trust Settlement Sum shall
> escheat to the Debtor's estate. Should the Debtor's estate be closed prior to such time,
> the remaining portion (or, if applicable, the whole) of the Trust Settlement Sum shall
> escheat to the Debtor. Should the Debtor's estate be closed prior to such time, and the
> Debtor formally dissolved prior to such time, the remaining portion (or, if applicable,
> the whole) of the Trust Settlement Sum shall escheat to the equity holders of the
> Debtor, as such existed at the time of formal dissolution.

Motion, Ex. A, p. 5.  The distinction between the Qualifying Judgment required to release

the Trust Settlement Sum to the warranty bond claimants and the order relating to the

claims that triggers escheatment of the funds seems to be significant.  In the event that

Mr. Garcia or the Association are able to litigate their warranty claims to a final

judgment, they may be entitled to a distribution of the Trust Settlement Sum.  In contrast,

if Trustee Webster was to settle the claims of Mr. Garcia or the Association or if the

claims are not resolved by December 31, 2025, the Trust Settlement Sum would escheat to the estate, becoming property of the estate to be distributed in accordance with the Bankruptcy Code and included in the calculation of the trustee commission.  This result creates a disadvantage to Mr. Garcia and the Association in settling their claims against the estate.  Combined with the lack of estate assets to fund the defense of litigation that could result in a Qualifying Judgment, it also makes the purported benefit of the Trust Settlement Sum to creditors other than administrative claimants largely illusory.

**C.    There Is an Alternative, a Settlement with Mr. Garcia, that Benefits All Creditors with No Expense to the Estate.**

As set forth in his Motion to Dismiss Chapter 7 Case, Mr. Garcia believes that dismissal of the 819D bankruptcy case would most benefit all creditors as the funds improperly transferred can then be returned to 819D through a judgment for the benefit of all creditors.  However, if the Court is disinclined to dismiss the case, there is a better alternative to the proposed compromise with the Settling Defendants – the compromise with Mr. Garcia contemplated in the Garcia Settlement Motion.  A settlement that transfers the Improper Transfers Action back to Mr. Garcia to allow him to proceed with litigation (whether the proposed settlement and sale stated in the Garcia Settlement Motion or an alternative agreement) would produce an equitable result that no agreement with the Settling Defendants can accomplish.

A settlement that allows Mr. Garcia to proceed with prosecution of the Improper Transfers Action alleviates many of the potential hurdles identified by Trustee Ross in the Motion.  Mr. Garcia is willing and able to proceed with the litigation and share the proceeds with the bankruptcy estate.  He has already engaged the requisite experts.  He is

CORE/3525930.0002/182737582.2

already familiar with the salient facts and procedural history.  Restoring Mr. Garcia as the

plaintiff with the right to proceed with prosecution of the Improper Transfers Action

would thwart the Settling Defendants' efforts to force Trustee Webster into a relatively

low-dollar settlement, benefiting creditors of the estate.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, approval of the settlement sought in the Motion

should be denied.  Allowing insiders of a company to drain the company of assets and

toss the corporate corpse into bankruptcy, then coerce the trustee into a cheap settlement

of improper transfer claims that does not even cover the six figures of administrative

claims submitted by debtor's counsel for legal work that benefitted those insiders is an

abuse of the bankruptcy system and sets a terrible precedent.  No fair and equitable result

can be reached in these circumstances.

WHEREFORE, Karl Garcia respectfully requests that this Court enter an order

denying the Motion, and granting such further and other relief as is just and proper.

Dated: August 31, 2023                          Respectfully submitted,

                                                <u>/s/ Tracey M. Ohm</u>
                                                Marc E. Albert, No. 345181
                                                Tracey M. Ohm, No. 982727
                                                STINSON LLP
                                                1775 Pennsylvania Ave., N.W., Suite 800
                                                Washington, DC 20006
                                                Tel. (202) 728-3020; Fax (202) 572-9999
                                                marc.albert@stinson.com
                                                tracey.ohm@stinson.com

                                                and

                                                Bethany R. Benes (Va. Bar No. 85408;
                                                DC Bar No. 1686123)
                                                *Admitted Pro Hac Vice*
                                                BETHUNE BENES, PLLC
                                                3975 Fair Ridge Drive

South Suite 246
Fairfax, Virginia 22033
Tel.: (703) 260-9322
bbenes@bethunebenes.com

*Counsel for Karl Garcia*

CORE/3525930.0002/182737582.2

## CERTIFICATE OF SERVICE

I certify that on this 31st day of August, 2023, I caused a true and correct copy of the foregoing Opposition of Karl Garcia to Trustee's Motion to Approve Compromise with Settling Defendants to be served via the Court's ECF system upon the attorneys for all counsel who have entered an appearance in this case.  In addition, I have caused copies to be sent via first class mail, postage prepaid, to the following:

Stephen E. Leach
Kristen Elizabeth Burgers
Hirschler Fleischer PC
8270 Greensboro Dr., Suite 700
Tysons Corner, VA 22102

Michael T. Freeman
Kristen S. Eustis
Sara Kathryn Mayson
Office of the U.S. Trustee
1725 Duke Street
Alexandria, VA 22314

Alexander McDonald Laughlin
Odin, Feldman & Pittelman, P.C.
1775 Wiehle Avenue, Suite 400
Reston, VA 20190

Christopher Allan Glaser
Jackson & Campbell, P.C.
2300 N. St. NW, Suite 300
Washington, DC 20037

Laurin H. Mills
Mansitan Sow
Brian C. Clarry
Samek Werther Mills LLC
2000 Duke Street, Suite 300
Alexandria, VA 22314

Christopher Rogan
Rogan Miller Zimmerman, PLLC
50 Catoctin Circle, NE, Suite 300
Leesburg, VA 20176

Maurice Belmont VerStandig
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, NV 89012

Douglas E. McKinley
P O BOX 7395
Alexandria, VA 22307

John A. C. Keith
William B. Porter
Ian J. McElhaney
Blankingship & Keith
4020 University Drive, Suite 300
Fairfax, VA 22030

Justin Philip Fasano
McNamee Hosea, P.A.
6404 Ivy Lane, Ste 820
Greenbelt, MD 22070

Timothy G Casey
Law Office of Timothy G. Casey
451 Hungerford Drive, Suite 505
Rockville, MD 20850

Robert Michael Gittins
Eccleston and Wolf, P.A.
7240 Parkway Drive, 4th Floor
Hanover, MD 21076

/s/ Tracey M. Ohm
Tracey M. Ohm

CORE/3525930.0002/182737582.2