**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **819D LLC** | ) | **Case No. 22-101 - ELG** |
| | ) | **(Chapter 7)** |
| **Debtor** | ) | |
| | ) | |

**TYGIER PARTIES' OPPOSITION TO**
**KARL GARCIA'S SECOND MOTION TO DISMISS CASE**

**COME NOW** Michelle A. Tygier, Robert Rubin, The Rubin Group LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, 638 Newton Partners LLC, and K Street Holdings LLC (the "Tygier Parties"), parties in interest in this case and Defendants in the adversary proceedings pending herein, by and through the undersigned counsel, and respectfully file this Opposition to the second Motion to Dismiss, filed by Karl Garcia [Doc. No. 179], and state as follows:

**Introduction**

1. Mr. Garcia has filed a *second* Motion to Dismiss the Debtor's Chapter 7 Case [Doc. No. 179] (the "Second Motion to Dismiss"), which is identical in all material respects to his *first* Motion to Dismiss [Doc. No. 41], that was filed on August 1, 2022, and withdrawn on June 1, 2023 [Doc. No. 156]. The Tygier Parties oppose the Second Motion to Dismiss for the same reasons the First Motion to Dismiss was opposed by the

---

Christopher L. Rogan, Esquire (#431849)
ROGANMILLERZIMMERMAN, PLLC
50 Catoctin Circle, NE, Suite 300
Leesburg, Virginia  20176
(703) 777-8850/Telephone
(703) 777-8854/Facsimile
crogan@RMZLawFirm.com
*Counsel to Defendants Michelle A. Tygier, et al.*

1

Debtor and other parties. The Debtor's bankruptcy was filed and has been prosecuted in good faith and for legitimate purposes consistent with the provisions and policies of the Bankruptcy Code and process.

2. Mr. Garcia has scheduled the Second Motion to Dismiss for hearing on September 7, 2023, the same day that the Court already has a number of other matters scheduled in this case – matters that have been pending before the Court for many months.

3. After much delay, on May 11, 2023, the Court scheduled an omnibus hearing for June 6, 2023, on approximately a dozen matters, including the Chapter 7 Trustee's motion to sell certain claims to Mr. Garcia and Mr. Garcia's First Motion to Dismiss. Several of the matters to be heard on June 6th had been pending since shortly after the case was filed approximately one year prior, but for various reasons had not been pursued.

4. On April 27, 2023, Trustee Ross filed a motion for approval of a sale of fraudulent conveyance claims to Mr. Garcia, for $50,000 and a percentage of the net amount of any recovery on those claims [Doc. No. 131]. The sale anticipated that Mr. Garcia could return to state court to pursue the claims, but also that he could control the D.C. construction defect/warranty claim litigation (and presumably consent to entry of a judgement in his favor). The legal and procedural defects with the proposed sale were never addressed by the Court, as the Trustee never moved forward on the motion and is not expected to do so in light of his agreement to settle the claims against the individual defendants.

5. On May 31, 2023, the Trustee filed a motion for approval of a settlement that he had reached with Tygier Parties and others regarding the fraudulent conveyance claims that he had previously indicated would be sold to Mr. Garcia [Doc. No. 142].

6. The following day, on June 1, 2023, Mr. Garcia withdrew his First Motion to Dismiss and sought continuances of certain other matters [Doc. Nos. 147 and 148].

7. In addition, on the morning of the June 6th hearing, Mr. Garcia moved to withdraw his motion seeking abstention/remand or relief from stay regarding the D.C. Litigation (discussed below) [Doc. No. 156]. There had been no opposition to this motion. In fact, the Debtor had also filed a motion seeking relief from the stay to continue the D.C. Litigation [Doc. Nos. 88 and 89], so as to resolve whether Mr. Garcia even has a claim against the Debtor and, if so, how much. At the June 6th hearing, the Tygier Parties argued that relief from stay (or remand), as previously requested by *both* Mr. Garcia and the Debtor, should be granted and the D.C. matter should be allowed to proceed.

8. As a result of the last-minute filings, requests for continuance and other considerations, the Court continued most of the June 6th matters to July 6, 2023, and indicated that the disposition of the D.C. Litigation would be resolved at that hearing. *See* Court's Further Scheduling Order, dated June 6, 2023 [Doc. No. 155].

9. In late June 2023, Trustee Ross resigned and the Court appointed a replacement trustee. In recognition of the change in trustees and the time necessary for the new trustee, Wendal Webster, to become acquainted with the facts of this case to get up to speed, the Court granted a motion to further continue the July 7th hearing to September 7, 2023.

3

10. After he was apparently unable to convince Trustee Webster to abandon the settlement of the fraudulent conveyance claims negotiated by Trustee Ross with the defendants, Mr. Garcia filed the Second Motion to Dismiss, on August 16, 2023, and an Opposition to the Trustee's Motion to Approval Compromise, on August 31, 2023.

### Background of Pre-Petition Litigation

11. In his First Motion to Dismiss (and repeated in the Second Motion to Dismiss), Mr. Garcia outlines his version of the background of the issues and litigation between himself and the Debtor, the Debtor's principals, and a variety of other parties, related to his purchase of a luxury condominium in Washington, D.C. and the alleged construction defects with the unit and his resulting warranty claims. In its Opposition to the First Motion to Dismiss [Doc. No. 82], the Debtor disputes Mr. Garcia's factual recitation and his legal arguments.

12. As detailed in both Motions to Dismiss, Mr. Garcia began his litigation campaign in the D.C. Superior Court on May 18, 2020. His D.C. compliant alleged claims for breach of contract, fraud, violation of the D.C. Consumer Protection Act, and recission (the "D.C. Litigation").

13. In the D.C. Litigation, Mr. Garcia sought damages of at least $4,575,000, despite the fact that he paid $1,525,000 for the unit upon which his claims are based. Mr. Garcia also sought interest, punitive damages, and attorney's fees, of unspecified amounts.

14. In addition to suing the Debtor in D.C., Mr. Garcia sued the Debtor's principals, Andrew Rubin and Michelle Tygier, under an alter ego theory of liability. D.C. Superior Court Judge Hiram Puig-Lugo quickly dismissed the cases against Andrew

4

Rubin and Ms. Tygier for failure to state a claim. *See* D.C. Superior Court Order, dated July 29, 2020, attached hereto as Exhibit 1.

15. The Debtor and other defendants in the D.C. Litigation have denied any liability to Mr. Garcia for the alleged defects in the condo. Even if liability was proven, the damage (or cost to repair) would be no more than $25,000, rather than the $4.5M+ that has been demanded by Mr. Garcia. The Debtor has categorically denied any fraud or breach of any applicable consumer protection or other such laws.

16. By its Order of February 3, 2001, the D.C. Superior Court referred the remaining portion of the D.C. Litigation to arbitration, per the terms of the contract between the Debtor and Mr. Garcia. A copy of the Oder referring the matter to arbitration is attached hereto as Exhibit 2. Mr. Garcia opposed arbitration, preferring instead to continue litigating, and appealed the Superior Court's referral. Both the arbitration and appeal of the referral were stayed by the bankruptcy filing.

17. Unsatisfied with his progress in the D.C. courts, Mr. Garcia moved on to a new court. As detailed in the Motions to Dismiss, five months after commencing the D.C. Litigation, on October 30, 2020, Mr. Garcia filed a second lawsuit against the Debtor and others in the Circuit Court of Fairfax County, Virginia (the "Fairfax Litigation"), alleging fraudulent conveyances by the Debtor to its principals and various other parties. This matter was filed in Virginia, notwithstanding the fact that the initial case was still pending in D.C., the real property is located in D.C., and all parties were (at that time) D.C. residents, with little or no connections to Virginia.

18. In the Fairfax Litigation, Mr. Garcia alleged that distributions made by the Debtor to its principals and investors, following the completion of the condominium

development project, constituted fraudulent conveyances *under Virginia law* and were recoverable by him – regardless of whether he actually has a claim against the Debtor.

19. Mr. Garcia incorrectly asserts (in the Fairfax Litigation and the Motions to Dismiss) that, by virtue of the distributions, the Debtor was left with inadequate resources to pay its alleged debt to Mr. Garcia. Mr. Garcia makes these claims despite the undisputed facts that the amount of Mr. Garcia's claim (assuming he has one) has yet to be determined *and* the Debtor posted and maintained a warranty bond, as required by D.C. law, which is secured by a cash account of $363,000 and the Debtor maintained general liability and other insurance coverage. In addition, Potomac Construction Group, LLC ("**PCG**") was the general contractor for the Project. PCG was contractually obligated to the Debtor to provide a warranty that matched the terms of D.C. Code Section 42-1903.16 and was required to post a payment and performance bond in the amount of $5,883,560 for the benefit of the Debtor. The Debtor also required that PCG name the Debtor as an additional insured on its commercial general liability insurance policy and obtain a builders risk insurance policy for the benefit of the Debtor. As such, it would be impossible for the Fairfax Court (or any other court) to determine that the alleged transfers left the Debtor unable to pay its obligation when it has not been determined what that obligation is or if there is an obligation at all. Nevertheless, the Fairfax Court allowed the case to proceed.

20. Notwithstanding the extensive motions practice that occurred in Fairfax, including various demurrers and discovery matters (some of which are reported in the Motions to Dismiss), the Fairfax Court had yet to conduct a trial or to make any substantive findings regarding Mr. Garcia's allegations, prior to that matter being stayed as a result of the Debtor's bankruptcy filing.

21. While Mr. Garcia does not address it in his Motion to Dismiss, his litigation in the D.C. Litigation and with respect to improperly filed *lis pendens* discussed below was also extremely aggressive and expensive.

22. In an apparent effort to gain leverage in the litigation then pending in both D.C. and Fairfax, Mr. Garcia returned to D.C. (and Maryland) and launched additional legal attacks through the improper recordation of *Notices of Lis Pendens* against the homes of both Andrew Rubin (in Maryland) and Michelle Tygier and Robert Rubin (filed in the District of Columbia on May 28, 2021). This action required the individual defendants to take legal action to have the *lis pendens* extinguished.

23. The D.C. Superior Court once again sided with Ms. Tygier (and Mr. Rubin, Ms. Tygier's husband and co-owner of the couple's D.C. residence). On September 30, 2021, the D.C. court granted Ms. Tygier's Motion to cancel the improperly filed *lis pendens*, in no uncertain terms, finding that the Fairfax fraudulent conveyance action (upon which Mr., Garcia based his *lis pendens* had no relation to Ms. Tygier's D.C. home, and no judgment had been entered in Virginia. A copy of the court's order is attached hereto as <u>Exhibit 3</u>. In addition to extinguishing the *lis pendens*, the order held Ms. Tygier's request for sanctions in abeyance, pending a further hearing.

24. Subsequently, the D.C. Superior Court did award Ms. Tygier and Mr. Rubin Rule 11 sanctions (equal to their attorney's fees) against Mr. Garcia for the improper filing of the *lis pendens*. Mr. Garcia appealed the sanctions award to the D.C. Court of Appeals. In June 2023, the D.C. Court of Appeals confirmed the sanction, but remanded the matter back to the Superior Court for clarification that the sanction was to be imposed against counsel rather than Mr. Garcia personally. Subsequently, as a result of Garcia's counsel seeking reconsideration, the D.C. Court of appeals modified its

7

Order. A copy of the Court of Appeals June 1, 2023 decision, as amended on June 29, 2023 is attached hereto as <u>Exhibit 4</u> and reported as *Garcia v. Tygier*, 295 A.3d 594 (2023). The Court took pains to reiterate the Fairfax court's admonishment that property acquired prior to Mr. Garcia's purchase was not subject to any fraudulent conveyance "claw back". Mr.. Rubin has owned his home since 1972, long before Mr. Garcia purchased his condominium unit from the Debtor.

25. The D.C. litigation and *lis pendens* history is relevant to the Court's consideration of Mr. Gracia's Motion to Dismiss and discussion and arguments concerning the background and nature of the litigation that transpired prior to the Debtor's bankruptcy filing and the allegations that it is the parties adverse to Mr. Garcia who have inappropriately availed themselves of the legal process.

## **Argument**

26. As indicated above, Mr. Garcia's factual allegations and legal arguments in his Second Motion to Dismiss are essentially the same as those presented in the First Motion to Dismiss, with much repeated verbatim. Rather than repeating the prior responses and oppositions previously filed and further burdening the record in this case, the Tygier Parties refer the Court to the following pleadings in the record, which are incorporated as if fully restated herein:

| | |
|---|---|
| Doc. No. 52 | Amended Opposition of 11 Defendants to Motion to Remand (Doc. No. 33) |
| Doc. No. 56 | Debtor's Opposition to Motion to Remand (Doc. No. 33) |
| Doc. No. 57 | Auger Opposition to Motion to Remand (Doc. No. 33) |
| Doc. No. 58 | Debtor's Opposition to Motion for Relief from Stay (Doc. No. 35) |

8

> Doc. No. 81   Opposition of 11 Defendants to First Motion to Dismiss (Doc. No. 41)
>
> Doc. No. 82   Debtor's Opposition to First Motion to Dismiss (Doc. No. 41)

27. Without restating the arguments presented in the foregoing Oppositions, the Tygier Parties, state as follows, in response to Mr. Garcia's arguments in his Second Motion to Dismiss:

### A.   The Debtor's Business Operations.

Mr. Garcia asserts that the Debtor has had no business operations since 2017. The Debtor's principal business activity was that of renovating and re-purposing a historic church building in Washington, D.C. as a residential condominium project, and selling the developed units. The Debtor did so and sold the condominium unit 34 to Mr. Garcia on April 28, 2017, and the last of the individual units on or about October 13, 2017.

At that point, the development project was completed and the Debtor set about to wind-up its business and affairs, which included payment of creditors and the distributions of profits to its owners and investors. Unfortunately, issues arose with Mr. Garcia that ultimately led to the D.C. litigation filed by Mr. Garcia in 2020 days before the statute of limitations expired. As indicated in Mr. Gacia's Motion to Dismiss, and in the pleadings filed in the underlying litigation, Mr. Garcia's claims initially involved relatively minor issues including: high humidity levels, an unfished opening in an HVAC closest, missing mortar on the exterior of the building (a common element outside of Mr. Garcia's unit), missing bricks on the exterior chimney (another common element), birds getting into the attic (a common element), and a water leak that infiltrated Mr. Garcia's unit. *See* First Motion to Dismiss, para 10; Second Motion to Dismiss, para 5.

9

The Debtor anticipated that the identified items could and would be addressed and resolved, and that the alleged defects could certainly be addressed with the $363,000 in bond funds and that any resulting damage would be covered by the available insurance. However, by the time Mr. Garcia retained counsel and commenced litigation in D.C., his claim had ballooned to ("at least") $4.5M, and his subsequent fraudulent conveyance claim against the Debtor and the other defendants was for $6M+. While the Debtor's business should have been wrapped up in 2017, it has had to continue to deal with the claims and litigation asserted by Mr. Garcia.

It is certainly true, as alleged by Mr. Garcia, that the Debtor no longer has any employees or cash flow. But that does not evince any bad faith or improper motive or purpose, under the circumstances of this case. Instead, such merely reflects the point at which the Debtor was in its business lifecycle when Mr. Garcia decided to go on the attack.

The Debtor's business had been profitably and responsibly managed, and its business objectives were achieved. The Debtor successfully developed the condominium project and sold all of the individual units. Creditors were paid and a profit was realized. The Debtor made provision for any warranty or other contingent liabilities and anticipated winding up its remaining affairs.

More than *three years after* the purchase of his condo unit, when Mr. Garcia began asserting claims against the Debtor, and its insurers, bond, principals and investors, the Debtor and other defendants had no choice but to defend themselves, incurring significant legal fees and expenses in the process. When the Debtor's resources were drained, it elected to file this proceeding to protect its remaining assets, liquidate the

remaining alleged claims, and ensure the fair and equitable liquidation and distribution of its remaining assets.

### B.   The Debtor's Assets.

Mr. Garcia repeatedly and incorrectly asserts that the Debtor is "assetless" or "asset poor." At the time the bankruptcy was filed, the Debtor held approximately $363,000 as security for the bond posted with the District of Columbia, consistent with the law of that jurisdiction. While it is true that these funds were and are "restricted," that is only to the extent that legitimate bond claims are asserted and proven.

At this point, it is believed that the only claim that has been asserted against the bond is that of Mr. Garcia. If, as the Debtor and its principals believe will be the case, , the amount necessary to resolve that claim will be determined to be significantly less than the amount of the bond account as soon as Mr. Garcia's is heard and resolved by the D.C. Court or arbitrator (or by this Court, should the matter not be remanded to D.C.). This will enable most if not all of the $363,000 to be returned to the Debtor or its bankruptcy estate. As previously indicated, it is believed that the maximum amount of liability that could result from the alleged defects would be $25,000 or less, thereby leaving almost $340,000 for the payment of other creditors (unsecured and administrative).

In addition, while the Tygier Parties do not believe that there is any merit in Mr. Garcia's fraudulent conveyance claims, to the extent such claims are established, any recovery would also be an asset of the estate. Although the Tygier Parties deny any wrongdoing or liability regarding distributions made by the Debtor following the completion of the development project, they and certain of the other defendants have agreed to pay the Chapter 7 trustee $150,000 to settle any potential claims. So, at a minimum, the alleged claims are worth that amount.

**Conclusion**

For the reasons stated in the above-referenced pleadings which have been incorporated herein and as stated above, the Debtor's pending bankruptcy was not filed or prosecuted in bad faith and this case should not be dismissed.

WHEREFORE, based upon the foregoing, the Tygier Parties respectfully requests entry of an order DENYING the second Motion of Karl Garcia to Dismiss the Debtor's pending bankruptcy proceeding, and for such other and further relief as is appropriate.

| | |
|---|---|
| Dated:  September 5, 2023 | Respectfully submitted, |
| | RoganMillerZimmerman, PLLC<br>and<br>Samek \| Werther \| Mills LLC |
| | Co-Counsel to Defendants Michelle A. Tygier, Robert Rubin, The Rubin Group LLC, TR Holdings LLC, 2233-40th Partners LLC, South Glebe LLC, 638 Newton Partners LLC and K Street Holdings LLC |

/s/ Christopher L. Rogan
Christopher L. Rogan, Esquire (#431849)
ROGANMILLERZIMMERMAN, PLLC
50 Catoctin Circle, NE, Suite 333
Leesburg, Virginia  20176
(703) 777-8850/Telephone
(703) 777-8854/Facsimile
crogan@RMZLawFirm.com
*Co-Counsel to Michelle A. Tygier, et al.*

and

/s/  Laurin H. Mills
Laurin H. Mills, Esq.
Samek | Werther | Mills LLC
2000 Duke Street, Suite 300
Alexandria, Virginia 22314
(703) 547-4693/Telephone
laurin@samek-law.com
*Co-Counsel to Michelle A. Tygier, et al.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 5th day of September 2023, a true and accurate copy of the foregoing OPPOSITION was served upon the following *via* email and ECF:

| | |
|---|---|
| Maurice B. VerStandig, Esq. | Justin Fasano, Esq. |
| Marc Albert, Esq. | Benjamin Peoples, Esq |
| Tracey Michell Ohm, Esq. | Alexander M. Laughlin, Esq. |
| Bethany R. Benes, Esq. | Stephen E. Leach, Esq. |
| | Kristen E. Burgers, Esq. |

and upon all other parties who have requested notice through the Court's ECF system

  /s/ Christopher L. Rogan
Christopher L. Rogan, Esq.