IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-101-ELG |
| | ) | |
| 819D LLC | ) | (Chapter 7) |
| | ) | |
|     Debtor. | ) | |
| | ) | |

## MOTION TO ENFORCE SETTLEMENT AGREEMENT

Comes now Wendell W. Webster (the "Trustee"), in his capacity as trustee of the Chapter 7 bankruptcy estate of 819D LLC ("819D" or the "Debtor"), pursuant to Federal Rule of Bankruptcy procedure 9019, and moves to enforce an as-yet-unsigned settlement agreement (the "Agreement"), and states as follows:

### I.    Introduction

The Court is familiar with the history of this case, as are all major creditors, so the Trustee will not rehash this case's lengthy history here. Briefly, following extensive negotiations with various defendants in the case of *Garcia v. 819 Capital, et al.*, Case No. 22-10009-ELG (the "Adversary Case"), the Debtor's insurer and related insurers, and the Debtor's two major creditors, the Debtor's Chapter 11 counsel (who holds a Chapter 11 administrative claim), the Trustee and others reached a global settlement. The terms of that settlement were read into the record on September 7, 2023. Confident that the matter was settled, the Trustee filed a motion to approve the settlement even before it was signed.

---

Justin P. Fasano, Esq.
Bar No. MD21201
McNamee Hosea, P.A.
6404 Ivy Lane, Ste 820
Greenbelt, MD 22070
Phone: (301) 441-2420
Facsimile: (301) 982-9450
jfasano@mhlawyers.com
*Counsel for Wendell W. Webster*

A comprehensive settlement agreement has been drafted, to which all parties have signed off, with the exception of, as they have defined themselves, the "Rubin Parties,"[1] the "Tygier Parties"[2] and the "Auger Parties.[3]" A copy of the settlement agreement is attached as Exhibit A. The dispute between the Rubin Parties on the one hand, and the Tygier Parties and the Auger Parties is not with the estate, Karl Garcia, or the Sanctuary Condominium Unit Owners Association. Rather, the Rubin Parties, upon information and belief, wish to sue the Auger Parties based on supposed fraud the Auger Parties committed against the Rubin Parties. Accordingly, the Rubin Parties insist on including the following language (the "Clause in Controversy")[4] in the agreement as follows:

> Notwithstanding the foregoing, nothing herein shall release claims between and amongst the Rubin/ Auger Parties except that the Insurance Companies are released from such claims.

The Auger Parties and the Tygier Parties have refused to agree to such language, although the Trustee believes the main objectors are the Auger Parties.

Counsel for the Rubin Parties, the Auger Parties, and counsel for the Tygier Parties were present at the September 7, 2023 hearing. (the "Hearing"). The agreement was initially read into the record by counsel for the Tygier Parties, Christopher Rogan. At the hearing, Mr. Rogan stated "The releases in the DC litigation would be pursuant to standard terms and conditions, including waiver and indemnification provisions, and those provisions are really guided by the insurance

---

[1] The Rubin Group LLC ("Rubin Group"), 819 Capital LLC ("819 Capital"), K Street Holdings LLC ("K Street"), TR Holdings LLC ("TR Holdings"), 2233-40th Partners LLC ("2233"), South Glebe LLC ("South Glebe"), Woodmore Partners LLC ("Woodmore"), TRG Development LLC ("TRG"), 638 Newton Partners LLC ("638 Newton"), Andrew Rubin ("A. Rubin").

[2] Michelle A. Tygier ("Ms. Tygier"), Robert Rubin ("R. Rubin"), Canal View Holdings LLC ("Canal View").

[3] Gregory Auger, II ("Auger II"), Gregory Auger, III ("Auger III"), and Regua, LLC ("Regua").

[4] The Clause in Controversy is bolded in the Settlement Agreement.

2

carrier… and the actions and claims asserted by 819D, the Sanctuary Condominium Association and Potomac, my understanding is that those would be subject to mutual releases as well." The Court then asked: "By claims, you mean the insurance claims for the payout from the Companies," to which Mr. Rogan responded "Yes, your honor." After those terms were reached, counsel for the Rubin Parties, stated that "we have reached what we believe to be a definitive and final resolution that will incorporate all of the terms that were expressed by Mr. Rogan previously," subject to exceptions not pertinent now.

After the hearing, counsel has spent two months drafting the language settlement agreement. It was always understood that the Rubin Parties and the Tygier Parties had separate rights against each other which were not being released in the Agreement. Never did the Auger Parties seek a release from the Rubin Parties until the releases were combined into one paragraph for simplicity. At that point, it was necessary for the Clause in Controversy to be inserted. Counsel for the Insurance Companies approved the Clause in Controversy. It was only at that point that the Auger Parties insisted on a release from the Rubin Parties.

"State law governs the enforcement of settlement agreements in federal court." *In re Larkin,* No. 12-14635, 2017 WL 1067745, at *1 (Bankr. D.N.J. Mar. 21, 2017). As the United States District Court for the District of Columbia recently stated:

> "Where, as here, a motion to enforce a settlement agreement is before a district court and there is a genuine dispute as to whether the parties have agreed to enter into a binding settlement, the court must hold an evidentiary hearing and provide an opportunity for cross-examination, as this Court did." *Blackstone v. Brink*, 63 F. Supp. 3d 68, 76 (D.D.C. 2014). The movant bears the burden of proving by clear and convincing evidence that the parties formed a binding agreement to resolve the disputed issues in the underlying litigation. *See id.* The "clear and convincing" standard requires evidence "sufficient to allow the court to reach a firm conviction of the truth on the evidence about which [it] is certain." *Id.*(internal citations and quotation marks omitted).

3

> State contract law governs the enforcement of settlement agreements. *Makins v. Dist. of Columbia*, 277 F.3d 544, 547–48 (D.C. Cir. 2002). Under District of Columbia law, "a complete enforceable contract exists when there is (1) an agreement as to all the material terms; and (2) an intention of the parties to be bound." *Hood v. Dist. of Columbia*, 211 F. Supp. 2d 176, 179 (D.D.C. 2002) (citing *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001); *Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 152 (D.D.C. 2002)). The record here provides clear and convincing evidence that the parties agreed on all material terms of an agreement to resolve Plaintiff's claims in this lawsuit and that they intended to be bound by that agreement.

*Whittaker v. United States*, No. CV 19-199 (CKK), 2021 WL 2913626, at *5 (D.D.C. July 12, 2021).

Bankruptcy Court have repeatedly enforced settlement agreements read into the record. *In re Stovall*, No. ADV.PRO. 06-70009, 2008 WL 5155661, at *4 (Bankr. N.D. Ala. Dec. 5, 2008) (enforcing settlement read into record against Debtor when Debtor refused to file motion to approve settlement because he could not fund it); *In re Combs*, No. 05-6498-PHX-SSC, 2008 WL 509408, at *3 (Bankr. D. Ariz. Feb. 22, 2008) (citing *In re Haynes,* 97 B.R. 1007 (9th Cir.BAP1987)) (enforcing oral settlement against Debtor); *In re Ryder*, No. ADV. 95-95137, 2000 WL 35799021, at *2 (Bankr. S.D. Iowa July 14, 2000) ([t]he court has "inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous… Unless Defendant–Debtors can demonstrate that the agreement was invalid under state law at the time it was made, this court may hold the parties to their word and incorporate the terms of the agreement into a final judgment). As the United States Bankruptcy Court for the Middle District of Florida recently stated:

> This Court possesses the inherent authority to summarily enforce a settlement agreement entered into by parties litigant in a pending case. *Ford v. Citizens & Southern Nat'l Bank,* 928 F.2d 1118, 1121 (11th Cir.1991). This adversary proceeding has been pending since 2009, and Kafka and the Bank commenced their settlement negotiations in early January, 2011. Thus, upon a finding that an

> enforceable settlement agreement was reached, this Court may enforce it. Furthermore, courts have recognized the bankruptcy court's power to enforce settlement agreements under § 105, which allows the bankruptcy court to issue a decree of specific performance of a contract. *In re Stokes,* 198 B.R. 168, 175 (E. D. Va. 1996); *In re Hillsborough Holdings Corp.,* 267 B.R. 882, 889 (Bankr. M. D. Fla. 2001). The burden rests with the party seeking judgment on the basis of compromise or settlement to establish by a preponderance of the evidence that the opposing party has assented.

*In re Rolsafe Int'l, LLC*, 477 B.R. 884, 901 (Bankr. M.D. Fla. 2012).

A dispute amongst defendants should not hold up approval of a "definitive and binding" settlement. *In re Christie*, 173 B.R. 890 (Bankr. E.D. Tex. 1994). *In Christie*, the Court enforced a settlement with multiple defendants which was read into the record, even though the Defendants later disputed how it would be funded, stating.

> The court determined that an oral announcement made in open court and entered as of record is binding on all the parties to the settlement. *Id.* at 25. It is the wording of the settlement and not the subjective understanding of the parties which is controlling. *Id.* "An agreement announced on the record becomes binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing." *Id.* at 26. If necessary, "[a] federal court has the inherent power to enforce an agreement which settles litigation." *Id.* at 26. Finding that the disputes among the defendants was not relevant to the binding effect of the oral settlement the court ordered judgment jointly and severally against all the defendants in favor of the plaintiffs. Applying this rationale to the facts of the instant case the Court must conclude that the Motion must be denied.

*Id.*, at 891–92.

## ARGUMENT

There can be no dispute that the parties reached a "definitive and final resolution that… incorporate[s] all of the terms that were expressed by Mr. Rogan" on the record on September 7, 2023. The Auger Parties now seek to retread that deal. The Tygier Parties and the Rubin Parties had significant separate disputes and it was always understood they would not be releasing each

5

other through the Agreement. The only Auger Party to the DC litigation was Regua, LLC. The Rubin Parties had been dismissed from the DC litigation[5] long ago, as had Michelle Tygier. The Rubin Parties, Auger Parties, and Tygier Parties were all parties to the fraudulent conveyance litigation not covered by insurance. The insurance companies do not have an issue with the Clause in Controversy. It cannot be asserted that the Rubin Parties intended to release the Auger Parties or Tygier Parties were necessary by agreeing to mutual releases required for the DC litigation or the insurance companies. It certainly cannot be asserted that the Rubin Parties and the Tygier Parties ever agreed to release each other.

There is a reason the settlement was read into the record rather than just negotiated between the parties. The parties have a lengthy history of litigation and it was important to document everything that everyone was agreeing. The Auger Parties reached a deal with the Trustee that would provide significant funds to the estate and creditors. The Trustee is giving them a release. They cannot back out of it now based on an insistence on new releases not read into the record.

### **Alternatively, the Bankruptcy Court should enforce the Settlement Agreement against the Rubin Parties**

Alternatively, the Bankruptcy Court should enforce the Settlement Agreement against the Rubin Parties. If the Court finds that the releases read into the record were meant to include the Rubin/Auger Parties releasing each other, then the Court should require the Rubin Parties to sign the Settlement Agreement with the release of the Tygier Parties and the Rubin Parties.

WHEREFORE, the Trustee asks the Agreement be enforced against the Tygier Parties and the Auger Parties and for such other and further relief as may be just and proper.

---

[5] The DC litigation consisted of Garcia's claims against 819D, LLC and related parties based on, *inter alia*, faulty construction. The fraudulent conveyance actions to which the Augers were a party was filed in Virginia.

Dated: November 9, 2023          Respectfully submitted,

/s/ Justin P. Fasano
Janet M. Nesse, Esq.
Justin P. Fasano, Esq.
6404 Ivy Lane, Suite 820
Greenbelt, Maryland 20770
(301) 441-2420: Telephone
(301) 982-9450: Facsimile
jnesse@mhlawyers.com
jfasano@mhlawyers.com
*Attorneys for the Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2023, a true and correct copy of the foregoing was served by CM/ECF upon all parties receiving notice thereby.

/s/ Justin P. Fasano
Justin P. Fasano