**11/7/23 9 am**

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made as of the date of the entry of a final and non-appealable order approving the Agreement by the United States Bankruptcy Court for the District of Columbia (the "Effective Date"), by and between (a) Wendell Webster in his capacity as the trustee of the bankruptcy estate of 819D LLC (the "Trustee," with the underlying estate being referred to herein as the "Estate" and the debtor in bankruptcy being referred to herein  as "819D" or the "Debtor"), (b) The Rubin Group LLC ("Rubin Group"), 819 Capital LLC ("819 Capital"), K Street Holdings LLC ("K Street"), TR Holdings LLC ("TR Holdings"), 2233-40th Partners LLC ("2233"), South Glebe LLC ("South Glebe"), Woodmore Partners LLC ("Woodmore"), TRG Development LLC ("TRG"), 638 Newton Partners LLC ("638 Newton"), Andrew Rubin ("A. Rubin"), Michelle A. Tygier ("Ms. Tygier"), Robert Rubin ("R. Rubin"), Canal View Holdings LLC ("Canal View"), Gregory Auger, II ("Auger II"), Gregory Auger, III ("Auger III"), and Regua, LLC ("Regua"), (Rubin Group, 819 Capital, K Street, TR Holdings, 2233, South Glebe, Woodmore, TRG, 638 Newton, A. Rubin, Ms. Tygier, R. Rubin, Canal View, Auger II, Auger III, and Regua (collectively referred to as the "Rubin/Auger Parties"), (c) Thomas D. Madison ("Mr. Madison"), (d) Jeffrey Houle ("Mr. Houle"), (e) Karl Garcia ("Mr. Garcia"), (f) the Sanctuary Condominium Unit Owners' Association (the "SCUOA"), (g) Potomac Construction Group LLC ("PCGL") and (h) Long & Foster Real Estate, Inc. d/b/a Urban Pace ("Urban Pace"). The Debtor, the Rubin/Auger Parties, Mr. Madison, Mr. Houle, PCGL, Urban Pace, and SCUOA hereinafter may be collectively referred to as the "Settling Defendants," and each sometimes referred to as a "Settling Defendant." The Trustee, the Settling Defendants, and Mr. Garcia hereinafter may be collectively referred to as the "Parties" and each sometimes known as a "Party."

1 of 28

Exhibit A

**11/7/23 9 am**

WHEREAS, on June 19, 2022 (the "Petition Date"), 819D filed a petition for relief, pursuant to Section 301 of Title 11 of the United States Code, and thereby commenced bankruptcy case number 22-101-ELG in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Proceeding," with the court being referred to as the "Bankruptcy Court") as a debtor-in-possession under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, on July 29, 2022, the matter of *Garcia v. Rubin Group LLC, et al.*, originally filed as case number CL-2020-17040 in the Circuit Court for Fairfax County, Virginia and thereafter removed to the United States District Court for the Eastern District of Virginia, before being transferred to the United States District Court for the District of Columbia, was referred to the Bankruptcy Court, thereby initiating adversary proceeding case number 22-10009-ELG (the "First Adversary Proceeding"); and

WHEREAS, on August 9, 2022, the matter of *Garcia v. 819D LLC, et al.*, originally filed as case number 2020 CA 002540 B in the Superior Court for the District of Columbia, and appealed to the District of Columbia Court of Appeals and assigned Case No. 21-CV-104, was removed to the United States District Court for the District of Columbia and, by standing order, referred to the Bankruptcy Court, thereby initiating adversary proceeding case number 22-10010-ELG (the "Second Adversary Proceeding"); and

WHEREAS, on September 16, 2022, the matter of *Sanctuary Condominium Unit Owners' Association v. 819D LLC*, inclusive of a third party claim by 819D LLC against Potomac Construction Group, LLC set forth therein, originally filed as case number 2021 CA 004683 B in the Superior Court for the District of Columbia, was removed to the United States District Court for the District of Columbia and, by standing order, referred to the Bankruptcy Court, thereby

**11/7/23 9 am**

initiating adversary proceeding case number 22-10012-ELG (the "Third Adversary Proceeding"); and

WHEREAS, on October 12, 2022, the Bankruptcy Court entered an order converting the Bankruptcy Proceeding to a case under Chapter 7 of the Bankruptcy Code; and

WHEREAS, on October 12, 2022, Brian Ross was appointed to serve as the interim Chapter 7 Trustee of the Debtor's Estate, with such appointment thereafter being made permanent by operation of law; and

WHEREAS, on June 15, 2023, the Bankruptcy Court entered its Order Compelling Turnover of Client Files [Docket No. 160] pursuant to which the Law Offices of Mark Crawford, PLLC, has turned over two thumb drives containing attorney-client privileged information to counsel for the Trustee (the "Privileged Documents"); and

WHEREAS, on June 23, 2023, Brian Ross resigned as permanent trustee of the Debtor's Estate; and

WHEREAS, on June 23, 2023, the United States Trustee appointed the Trustee to serve as permanent trustee of the Debtor's Estate, with the Trustee having served in said capacity at all times since and continuing to serve in said capacity; and

WHEREAS, the First Adversary Proceeding alleges, *inter alia*, that certain of the Settling Defendants orchestrated, facilitated, engaged in, benefited from, and/or were otherwise parties to one or more avoidable conveyances of money, in connection with the operation of the Debtor's business and the flow of monies to various Parties, including the equity interests of the Debtor and derivative equity interests thereof; and

WHEREAS, the Second Adversary Proceeding alleges, *inter alia*, that the Debtor and certain Settling Defendants breached a duty of warranty and caused or were responsible for certain

**11/7/23 9 am**

construction defects related to a condominium unit purchased by Mr. Garcia (the "Condo Unit") in The Sanctuary, a condominium project developed by the Debtor in Washington, D.C.; and

WHEREAS, the Third Adversary Proceeding alleges, *inter alia*, that the Debtor and PCGL breached a duty of warranty and caused or were responsible for certain construction defects to the SCUOA with respect to The Sanctuary condominium project; and

WHEREAS, the Trustee, upon appointment, assumed the rights and powers of creditors of the Debtor insofar as such rights and powers relate to the pursuit of civil actions for the avoidance of conveyances of money such as those asserted in the First Adversary Proceeding; and

WHEREAS, on March 3, 2023, A. Rubin and Canal View filed an adversary proceeding, against the Trustee, seeking declaratory relief concerning the existence, *vel non*, of any fraudulent conveyances of the Debtor benefiting A. Rubin and/or Canal View, and thereby commenced adversary proceeding number 23-10009-ELG in the Bankruptcy Court (the "DJ Adversary Proceeding"), in which proceeding Ms. Tygier, R. Rubin, TR Holdings and Rubin Group intervened as third-party plaintiffs; and

WHEREAS, in connection with the development of The Sanctuary condominium project, the Debtor posted a bond (the "Bond"), with the District of Columbia, against which Mr. Garcia has made a claim in connection with one or more of the claims set forth in the Second Adversary Proceeding and against which, upon reasonable investigation, no other party has made a claim, and against which, upon reasonable legal inquiry, no other party in existence may heretofore make a timely claim; and

WHEREAS, the Bond is secured by a Business Money Market account at Eagle Bank in an account numbered XXXXXX4854 (the "Bond Account") in the approximate amount of Three Hundred Seventy-Seven Thousand, Two Hundred and Seventeen Dollars ($377,217.05) as of

**11/7/23 9 am**

September 30, 2023, and any and all interest that has accrued on such amount, which account is maintained at EagleBank (the "Bond Account Amount"); and

WHEREAS, prior to the Petition Date, the Debtor established an escrow account, in the amount of Seven Thousand Five Hundred Dollars ($7,500.00) (the "Escrow Account Amount") for a glass partition to be installed in Mr. Garcia's Unit, and any and all interest that has accrued on such amount, which account is maintained at District Title, Inc. (the "Escrow Account"); and

WHEREAS, certain policies of liability insurance (the "Insurance Policies") may provide coverage for claims against (i) the Debtor; (ii) PCGL, a contractor; and (iii) SCUOA, a unit-owners association of which Mr. Garcia is a member; and

WHEREAS, there exists a desire between and amongst the Parties to amicably resolve all claims, causes, and actions – alleged or which could have been alleged in the First Adversary Proceeding, the Second Adversary Proceeding, the Third Adversary Proceeding, the DJ Adversary Proceeding, and otherwise – that now exist, whether known or unknown, between each and any of the Settling Defendants, Mr. Garcia, the Trustee, the Debtor, and/or the Debtor's Estate.

IT IS NOW, THEREFORE, agreed by and between the Parties, and for their respective heirs, personal representatives, agents, officers, directors, members, equity holders, successors, abandonees, and assigns, in consideration of the mutual covenants, promises, and agreements contained herein, the sufficiency and receipt of which is acknowledged by all Parties hereto, that:

1. **Bond**. In exchange for, and in express reliance upon, the releases and other promises set forth herein, the Trustee, the Rubin/Auger Parties and SCUOA shall not contest Mr. Garcia's claim against the Bond and shall instead take all actions requisite and necessary to ensure that the Bond and/or the Bond Account Amount is disbursed, *en toto*, in favor of Mr. Garcia within thirty (30) days of the Effective Date. To facilitate release of the Bond and/or the Bond Account

**11/7/23 9 am**

Amount to Mr. Garcia as contemplated herein, immediately following the Effective Date, the Trustee will file with the Bankruptcy Court a motion for turnover of the funds in the Bond Account by EagleBank with notice to the District of Columbia.  The Settling Defendants represent that the funds in the Bond Account are immediately available for withdrawal and not held in any certificates of deposit or any other financial instrument that may prevent immediate turnover of the funds to the Trustee.  None of the Parties will oppose the Trustee's motion for turnover, and, to the extent necessary, will endorse the order granting the requested relief.  To the extent further necessary to effectuate the release of the Bond Account Amount to Mr. Garcia, the Trustee and any necessary Rubin/Auger Parties shall execute such forms, notices, and other paperwork as may be required to ensure the turnover and full disbursement of the Bond and/or Bond Account Amount to  Mr. Garcia, including but not limited to (i) a withdrawal of the Opposition filed by the Debtor on or about October 7, 2019; and/or (ii) an agreed order directing the Bond Account Amount be released to Mr. Garcia.

       2.    **Escrow Account**.  In exchange for, and in express reliance upon, the releases and other promises set forth herein, the Trustee and any necessary Rubin/Auger Parties shall take all actions reasonably requisite and necessary to ensure that the Escrow Account Amount is disbursed, *en toto*, in favor of Mr. Garcia within five (5) days of the release of the Bond Account Amount to Mr. Garcia.

       3.    **Insurance**. In exchange for, and in express reliance upon, the releases and other promises set forth herein, the following payments shall be made on account of the Insurance Policies by Harford Mutual Insurance Company, Erie Insurance Exchange, and CNA Financial Corporation (the "Insurance Companies"): (i) The Harford Mutual Insurance Company, having an alleged obligation to insure the Debtor, shall cause to be paid to Mr. Garcia the sum of One

**11/7/23 9 am**

Hundred and Twenty Thousand Dollars ($120,000.00); (ii) Erie Insurance Exchange, having an alleged obligation to insure the Debtor and Potomac Construction Group LLC, shall cause to be paid to Mr. Garcia the sum of Twenty Thousand Dollars ($20,000.00); and (iii) CNA Financial Corporation, having an alleged obligation to insure SCUOA, shall cause to be paid to Mr. Garcia the sum of Forty Thousand Dollars ($40,000.00) (the $180,000.00 total of such amounts being referred to as the "Insurance Amount"). Each payment called for in this Section 3 shall be made in the lawful currency of the United States, via commercial check or wire, on or before thirty (30) days after the release of the Bond Account Amount to Mr. Garcia. These payment obligations shall be several and not joint, and no entity shall be liable for payment of any amount in excess of its designated payment amount.

4.      **Payment to Garcia**. In exchange for, and in express reliance upon, the releases and other promises set forth herein, the Rubin/Auger Parties shall cause to be paid to Mr. Garcia the difference between the Garcia Settlement Sum (as defined in Section 5 below) and the total of the Bond Account Amount plus the Escrow Account Amount plus the Insurance Amount, not to exceed Sixty-Five Thousand Dollars ($65,000) (the "Rubin/Auger Payment").  The Rubin/Auger Payment will be paid within five (5) days of the last to be paid of the Bond Account Amount, the Escrow Account Amount and the Insurance Amount. The Rubin/Auger Parties may apportion or prorate the Rubin/Auger Payment, between and amongst themselves, as they see fit, without disclosure of such apportionment or proration.

5.      **Garcia Settlement Sum.** All parties agree that Mr. Garcia is entitled to Six Hundred Twenty-Seven Thousand Five Hundred Dollars ($627,500) (the "Garcia Settlement Sum"), and that in no event shall the Rubin/Auger Parties be required to fund more than $150,000.00, in payments to Mr. Garcia, the Estate or any other Party herein. If Mr. Garcia does

**11/7/23 9 am**

not receive the Bond Account Amount within ninety (90) days, Mr. Garcia shall have the option, in his sole discretion, to either (a) declare this Agreement and all terms stated herein null and void, in which case all Parties shall be relieved of any and all obligations hereunder and the releases provided for in Section 13 below shall be of no effect, or (b) accept the payment of the Insurance Amount,  Escrow Account Amount and Rubin/Auger Payment, while retaining his rights in and to the Bond  and Bond Account, in which event the releases provided in Section 13 below shall be effective.  Notwithstanding the foregoing, the Trustee may move to extend such ninety (90) day period for cause, prior to the expiration of such period, in which case such period will be deemed extended without further order until the Bankruptcy Court rules on the Trustee's motion.  The Trustee will schedule any motion filed to extend such period on the first available court date available to Mr. Garcia and the Trustee.

6.    **Payment to SCUOA**.  In exchange for, and in express reliance upon, the releases and other promises set forth herein, Erie Insurance Exchange, having an alleged obligation to insure the Debtor, shall cause to be paid to SCUOA the sum of Twenty Thousand Dollars ($20,000.00) (the "SCUOA Settlement Sum"), within five (5) days of the payment of the Bond Account Amount to Mr. Garcia or Mr. Garcia's exercise of his option provided in Section 5(b) above.  The payment called for in this Section 6 shall be made in the lawful currency of the United States, via commercial check or wire.

7.    **Payment to Estate**. In exchange for, and in express reliance upon, the releases and other promises set forth herein, the Rubin/Auger Parties shall cause to be paid to the Estate, in the care of the Trustee, the sum of Eighty-Five Thousand Dollars ($85,000.00) (the "Estate Settlement Sum"), in the lawful currency of the United States, within five (5) days of the payment of the Bond Account Amount to Mr. Garcia or Mr. Garcia's exercise of his option provided in Section 5(b)

**11/7/23 9 am**

above. The Rubin/Auger Parties may apportion or prorate payment of the Estate Settlement Sum, between and amongst themselves, as they see fit, without disclosure of such apportionment or proration.

8.      **Nature of Monies Recovered from the Bond**. Should it be necessary for the Trustee to collect the Bond Account Amount for the benefit of Mr. Garcia, these monies shall not become an asset of the Debtor's Estate, shall not accrue to the benefit of the Trustee, shall not be paid for the benefit of the Trustee, shall not be paid to the Debtor's Estate, shall not be available for distribution by the Bankruptcy Court or Trustee (except for distribution to Mr. Garcia), and shall be solely regarded as a sum paid by the Debtor's Estate as partial satisfaction of Mr. Garcia's claims and in consideration of the release by Mr. Garcia of any claims he may so hold directly against the Settling Defendants. Should it be necessary for the SCUOA to collect the bond amount for the benefit of Mr. Garcia, these monies shall not become an asset of the SCUOA, nor should it be considered satisfaction of the SCUOA's claims against the Debtor's estate. Instead, should it be necessary for either the Trustee or the SCUOA to collect the bond amount for the benefit of Mr. Garcia, the parties agree the Trustee and/or the SCUOA function as simple intermediaries and distribute the funds to Mr. Garcia within five (5) days of receiving the monies from the Bond Account.

9.      **Nature of Garcia Settlement Sum**. For the avoidance of doubt, any amounts apportioned in the Agreement to Mr. Garcia, including the Garcia Settlement Sum shall not become an asset of the Debtor's Estate, shall not accrue to the benefit of the Trustee, shall not be paid to the Trustee, shall not be paid to the Debtor's Estate, shall not be available for distribution by the Bankruptcy Court or the Trustee, and shall be solely regarded as a sum paid by the Rubin/Auger Parties in consideration of the release by Mr. Garcia of any claims he may so hold

**11/7/23 9 am**

directly against the Settling Defendants, including any claims stemming from orders concerning discovery sanctions.

10.    **Nature of Insurance Policy Payments**. For the avoidance of doubt, each of the Insurance Companies with an alleged obligation pursuant to the Insurance Policies is making payments to Mr. Garcia and/or SCUOA, consistent with this Agreement, so as to avoid any duty to defend any claim or litigation, any duty to indemnify relating to any claim or litigation, and any duty to suffer the perils thereof and to settle any and all actual or alleged claims of Mr. Garcia and SCUOA against the Debtor, with said payments being made directly by the insurers to Mr. Garcia and/or SCUOA and with said sums not accruing to the benefit of the Trustee, not being paid to the Trustee, not being paid to the Debtor's Estate, not being available for distribution by the Bankruptcy Court or the Trustee, and being solely regarded as a sum paid by those third-party Insurance Companies in consideration of the releases of liability contained in this Agreement and the cessation of all litigation accomplished through the provisions of this Agreement.

11.    **Manner of Payment**. The Rubin/Auger Parties shall make the payment called for in Sections 4 and 7 hereof either by (i) check, drawn from the trust account(s) of any lawyer(s) who represents one or more of the Rubin/Auger Parties; or (ii) wire transfer, from the trust account(s) of any lawyer(s) who represents one or more of the Rubin/Auger Parties.

12.    **Claims for Non-Payment**. All parties shall bear their own attorneys' fees and costs incurred in the drafting of this Agreement. Any claims brought under this Agreement for non-payment shall also include claims for any legal fees associated with the recovery of those funds. In the event any Party files a claim to enforce any term of this Agreement, the prevailing party shall be entitled to all attorneys' fees, costs, and interest at the rate of Ten Percent (10%) from the date such payment was due until satisfied.

**11/7/23 9 am**

13.    **Mutual Release.**    The Parties, on behalf of their respective selves, directors, shareholders, members, officers, attorneys, agents, successors, subsidiaries, parents, affiliates, insurers, heirs and assigns, do hereby settle, release, waive, remise and discharge each other, Christos Economakis, Andrew Economakis, and Liliana Economakis, and the Insurance Companies from all causes of action, claims, rights, or demands, whatsoever, whether sounding in law or equity, whether known or unknown, whether direct or derivative, which any of them have or ever had against each other, Christos Economakis, Andrew Economakis, and Liliana Economakis, or the Insurance Companies, since the beginning of time through the Effective Date, relating to, or asserted in, the First Adversary Proceeding, the Second Adversary Proceeding, the Third Adversary Proceeding, the DJ Adversary Proceeding, any pending state or municipal court proceeding, and/or the Bankruptcy Proceeding. For the avoidance of doubt, this release shall be construed in the broadest terms permitted by controlling law, and shall be inclusive of all claims, causes, and actions brought in any or all of the litigation and proceedings mentioned in this Agreement, as well as any claims, causes and actions - known or unknown - that could have been brought, including but not limited to cross-claims, third-party claims, claims for defense and/or indemnification, and/or claims for additional insurance coverage and/or fraudulent, voluntary or preferential transfer claims. This release includes all claims, causes and actions that could be brought derivatively through any third-party, whether natural or legal, under any law, doctrine, ordinance, or other theory.  This release shall include a release and withdrawal of any proofs of claim or requests for any administrative expense filed by the Rubin/Auger Parties or any of them in the Bankruptcy Proceeding. Notwithstanding the foregoing, nothing herein shall release claims between and amongst the Rubin/ Auger Parties except that the Insurance Companies are released from such claims. Notwithstanding the foregoing, nothing herein shall waive or release rights and

**Commented [CR1]:** CLR Change

**Commented [CR2]:** CLR Change

**Commented [CR3]:** CLR Change

**11/7/23 9 am**

obligations of the Parties and/or the Insurance Companies under this Agreement.  Notwithstanding

the foregoing, nothing herein shall waive or release rights and obligations of Mr. Garcia and

SCUOA, together with SCUOA's insurer(s), under any applicable law, this Agreement, the

recorded Declaration and Bylaws of the Sanctuary Condominium and/or any other pre-existing

Agreement(s) Mr. Garcia and SCUOA may have amongst and / or between themselves relating to

the claims at issue.  Notwithstanding the foregoing, nothing herein shall constitute a waiver or

release of the Rubin/Auger Parties' respective direct or indirect equity interests in the Debtor.

14.     **Dismissal of First, Second, Third and DJ Adversary Proceedings & Related**

**Proceedings**.  Within five (5) days of the last of the payment of the Bond Account Amount,

Escrow Account Amount, Insurance Amount, and Rubin/Auger Payment to Mr. Garcia or Mr.

Garcia's exercise of his option provided in Section 5(b) above, (i) Mr. Garcia shall cause the First

Adversary Proceeding and the Second Adversary Proceeding to be dismissed with prejudice

against all defendants in each case; (ii) SCUOA shall cause the Third Adversary Proceeding to be

dismissed with prejudice against the Debtor; (iii) ~~and the~~ A. Rubin, Canal View, Ms. Tygier, R.

Rubin, TR Holdings, and Rubin Group shall cause the DJ Adversary Proceeding to be dismissed

with prejudice against the Trustee; and (iv) Ms. Tygier and R. Rubin shall cause their counterclaim

against Mr. Garcia filed in the Fairfax County Circuit Court to be dismissed with prejudice.   To

the extent that any document needs to be filed with the Superior Court for the District of Columbia,

the District of Columbia Court of Appeals, and/or the Circuit Court of Fairfax County to dismiss

with prejudice any actions currently stayed there in whole or in part, the Parties shall undertake

best efforts to have such proceedings dismissed with prejudice against all Parties.

15.     **Retention of Jurisdiction**. The Parties agree, except as otherwise set forth above,

that the Bankruptcy Court shall retain jurisdiction to adjudicate any disputes concerning this

**11/7/23 9 am**

Agreement or concerning any subject matter arising from or otherwise related to this Agreement. Said jurisdiction shall be retained even after closure of the Bankruptcy Proceeding, and without regard to the ultimate disposition of the Bankruptcy Proceeding. If any dispute arising under, related to, or impacting the subject matter of this Agreement is brought or continued in any other tribunal, the Parties agree the same shall be properly removed to the Bankruptcy Court, pursuant to the allowances of Section 1452 of Title 28 of the United States Code. If any dispute arising under, related to, or impacting the subject matter of this Agreement is brought or continued in any tribunal outside the District of Columbia, the Parties agree such dispute shall be removed to the United States District Court for the judicial district where such civil action is pending and the Parties shall thereafter stipulate to the transfer of said dispute to the United States Bankruptcy Court for the District of Columbia. To the greatest extent permitted by controlling law, the Parties agree to not contest such removal. The Parties do each irrevocably consent to the personal jurisdiction of the Bankruptcy Court with respect to the enforcement of or any disputes regarding this Agreement, and consent to final orders and judgments by the Bankruptcy Court.

16.    **Further Assurances**. The Parties shall execute such further and additional documents as may be necessary to effectuate the terms of this Agreement.

17.    **No Admission of Liability**. Neither the Settling Defendants nor the Trustee enter into this Agreement for purposes of admitting any liability and, to the contrary, this Agreement is entered into solely out of a desire to resolve the First Adversary Proceeding, the Second Adversary Proceeding, the Third Adversary Proceeding, the DJ Adversary Proceeding, and related matters without incurring further efforts and expenses associated with said litigation.

18.    **Terminology**. When the masculine gender is used herein, it shall also mean the feminine gender, where appropriate, and the plural shall mean the singular, and vice-versa, where

**11/7/23 9 am**

appropriate. The words "and" and "or" shall be construed as meaning "and/or" except where contextually inappropriate.

19.    **Entire Understanding**. This Agreement contains the entire understanding between the Parties.  No modification or waiver of any of the terms of this Agreement shall be valid unless made in writing and signed by the Parties in a manner no less formal than that with which this Agreement is executed.

20.    **Savings Clause**. If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

21.    **No Waiver**. Any waiver or breach or default of this Agreement shall not be deemed a waiver of any subsequent breach or default.  If any Party fails in due performance of any of his or her obligations hereunder, the aggrieved Party shall have the right to sue for damages for the breach thereof, or to seek other legal remedies as may be available to him or her.

22.    **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed to be an original instrument but all of which together shall constitute one agreement.  Signature pages transmitted via facsimile or by email in Portable Document Format (PDF) shall be deemed original signatures for all purposes. This Agreement may be executed in duplicate and the duplicate shall have the same force and effect as if it were the original copy. This Agreement may be executed by electronic means if done through a reputable third party purveyor of electronic signatures, with DocuSign and Adobe expressly being such reputable third party purveyors.

23.    **Governing Law**. This Agreement shall be governed by and interpreted in accordance with the laws of the District of Columbia, except as otherwise set forth above.

**11/7/23 9 am**

24.    **Headings**. The headings used in this Agreement are for ease of reference only and shall not be deemed a substantive portion of this Agreement.

25.    **Construction**. This Agreement shall be construed without regard to any presumption or other rule of law requiring construction against the party who caused it to be drafted.

26.    **Judicial Approval**. This Agreement shall not become effective unless and until approved by the Bankruptcy Court, pursuant to a final, non-appealable order; should such approval be denied with prejudice, this Agreement shall be regarded as void ab initio.  In the event that the Agreement is not so approved, the deadline for the Trustee to commence any cause of action against the Settling Defendants shall be tolled for the period beginning the date this Agreement is executed through and including the day such approval was denied (the "Tolling Period").  Any statute of limitations or repose shall be deemed extended to the extent of the Tolling Period.  The provisions of this paragraph regarding tolling shall be effective immediately and without court approval.

27.    **Recitals**. The above recitals form an integral and substantive part of this Agreement and are incorporated herein by reference.

28.    **Privileged Documents**.  Upon, but not until, the approval of the Trustee's Final Report, the Trustee shall return all copies, whether electronic or tangible, of the Privileged Documents to the Law Offices of Mark Crawford, PLLC.

29.    **No Statements**. The Settling Defendants shall not make any written or oral statements whatsoever, whether directly or indirectly, about Mr. Garcia, SCUOA, and/or the Property located at 819 D Street NE, Washington, DC (or any individual units) to any third-party except: (a) where mutually agreed to in writing by the Parties; (b) where disclosure is made while

**11/7/23 9 am**

testifying under oath during a court proceeding or is compelled pursuant to a subpoena, Notice of

Deposition, or order of a court of competent jurisdiction; (c) in a legal proceeding to enforce the

terms of this Agreement; (d) to medical providers and/ or mental health professionals for treatment

purposes or (e) any information required during the leasing, transferring, or selling of Unit 34

located at 819D Street NE, Washington, DC.   Mr. Garcia shall not make any written or oral

statements whatsoever, whether directly or indirectly, about any or each of the Settling Defendants

and/or SCUOA to any third-party except: (a) where mutually agreed to in writing by the Parties;

(b) where disclosure is made while testifying under oath during a court proceeding or is compelled

pursuant to a subpoena, Notice of Deposition, or order of a court of competent jurisdiction; (c) in

a legal proceeding to enforce the terms of this Agreement; or (d) to medical providers and/ or

mental health professionals for treatment purposes. SCUOA shall not make any written or oral

statements whatsoever, whether directly or indirectly, about any or each of the Settling Defendants

and/or Mr. Garcia to any third-party except: (a) where mutually agreed to in writing by the Parties;

(b) where disclosure is made while testifying under oath during a court proceeding or is compelled

pursuant to a subpoena, Notice of Deposition, or order of a court of competent jurisdiction; (c) in

a legal proceeding to enforce the terms of this Agreement; or (d) to medical providers and/ or

mental health professionals for treatment purposes.

      30.    **Time is of the Essence**.  Time is of the essence in each Party's performance of all

obligations under this Agreement.

      31.    **Transfer or Sale of Unit 34**. Nothing in this Agreement shall prevent Mr. Garcia

from leasing, transferring, or selling Unit 34 of the property located at 819 D Street NE,

Washington, DC. Nor will the leasing, transferring, or selling of Unit 34 prevent the collection of

**11/7/23 9 am**

the funds detailed in this Agreement by Mr. Garcia, nor dispense the duties of the Settling Defendants and Trustee.

32.     **Declarations**. The undersigned declare that the undersigned are at least 18 years of age, that the undersigned have carefully read this Agreement and understand the content and meaning thereof, that the undersigned have authority to execute this Agreement, that the undersigned signs the same as the undersigned's own free act, and that none of the parties to this Agreement have sold, assigned, transferred, conveyed or otherwise disposed of any claim, demand, obligation or cause of action referred to in this Agreement. The undersigned do hereby declare that they were not induced by representations, if any, regarding the nature and extent of legal liability or financial responsibility of any Party.

33.     **Successors and Assigns**. This Agreement shall bind the Parties and their successors and assigns, and the benefits hereof shall inure to the benefit of the Parties and their successors and assigns.

34.     **Negotiated Agreement**. This Agreement has been negotiated. None of the Parties shall be considered to have been the drafter or have the Agreement construed against them as the drafter to resolve any ambiguity claimed to exist in the Agreement.

35.     **Additional Documents.**  The Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

**[CONTINUED ON FOLLOWING PAGE]**

**Formatted:** Underline

**11/7/23 9 am**

IN WITNESS WHEREOF, and being fully advised by their attorneys in the premises, the Parties hereto have hereunder subscribed their names and seals to this Agreement.

THE RUBIN GROUP LLC

_____          _____
Date                              By:
                                  Its: Authorized Agent


819 CAPITAL LLC

_____          _____
Date                              By:
                                  Its: Authorized Agent


K STREET HOLDINGS LLC

_____          _____
Date                              By:
                                  Its: Authorized Agent


TR HOLDINGS LLC

_____          _____
Date                              By:
                                  Its: Authorized Agent


2233-40TH PARTNERS LLC

_____          _____
Date                              By:
                                  Its: Authorized Agent


18 of 28

**11/7/23 9 am**

SOUTH GLEBE LLC

_____         _____
Date                             By:
                                 Its: Authorized Agent

WOODMORE PARTNERS LLC

_____         _____
Date                             By:
                                 Its: Authorized Agent

TRG DEVELOPMENT LLC

_____         _____
Date                             By:
                                 Its: Authorized Agent

638 NEWTON PARTNERS LLC

_____         _____
Date                             By:
                                 Its: Authorized Agent

CANAL VIEW HOLDINGS LLC

_____         _____
Date                             By:
                                 Its: Authorized Agent

_____         _____
Date                             Andrew Rubin

_____         _____
Date                             Michelle A. Tygier

19 of 28

**11/7/23 9 am**

_____          _____
Date                                               Robert Rubin

_____          _____
Date                                               Gregory Auger, II

_____          _____
Date                                               Gregory Auger, III

                                                       REGUA, LLC

_____          _____
Date                                               By: Gregory U. Auger, III
                                                       Its: Authorized Agent

_____          _____
Date                                               Thomas D. Madison

_____          _____
Date                                               Jeffrey Houle

                                                       SANCTUARY CONDOMINIUM UNIT
                                                       OWNERS ASSOCIATION

_____          _____
Date                                               By:
                                                       Its: Authorized Agent

                                                       LONG & FOSTER REAL ESTATE, INC.
                                                       D/B/A URBAN PACE

_____          _____
Date                                               By:
                                                       Its: Authorized Agent

                                                       20 of 28

**11/7/23 9 am**

_____          _____
Date                         Karl Garcia

_____          _____
Date                         Wendell Webster
                             *In His Capacity as Trustee of the Chapter*
                             *7 Estate of 819D LLC*


                             POTOMAC CONSTRUCTION GROUP, LLC

_____          _____
Date                         By:
                             Its: Authorized Agent

21 of 28

**11/7/23 9 am**

## Exhibit A
### (Joint Stipulation of Dismissal with Prejudice in DJ Adversary)

**11/7/23 9 am**

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Plaintiffs*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-101-ELG |
| | ) | |
| 819D LLC | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | ) | |
| Andrew Rubin, et a. | ) | |
| | ) | Adversary Case No. 23-10009-ELG |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Wendell Webster, in his official capacity | ) | |
| as chapter 7 trustee of the chapter 7 | ) | |
| estate of 819D LLC | ) | |
| | ) | |
| Defendant, | ) | |

**JOINT STIPULATION OF DISMISSAL WITH PREJUDICE**

Come now Wendell Webster, in his Official Capacity as Trustee of the Estate of 819D LLC

(the "Trustee"), Canal View Holdings LLC ("Canal View"), Andrew Rubin ("A. Rubin"),

Michelle Tygier ("Ms. Tygier"), TR Holdings LLC ("TR Holdings"), The Rubin Group LLC

("Rubin Group"), and Robert Rubin ("R. Rubin"), by and through respective undersigned counsel,

pursuant to Federal Rule of Bankruptcy Procedure 7041 and Federal Rule of Civil Procedure

41(a)(1)(A)(ii), and hereby stipulate to dismissal of the above-captioned proceeding, *with*

23 of 28

**11/7/23 9 am**

*prejudice*, each side to bear its own fees and costs.

Respectfully submitted,

Dated:                                    By: _____
                                               Maurice B. VerStandig, Esq.
                                               Bar No. MD18071
                                               The VerStandig Law Firm, LLC
                                               1452 W. Horizon Ridge Pkwy, #665
                                               Henderson, Nevada 89012
                                               Phone: (301) 444-4600
                                               Facsimile: (301) 444-4600
                                               mac@mbvesq.com
                                               *Counsel for the Plaintiffs*

                                          By: _____
                                               Justin P. Fasano, Esq.
                                               Bar No. MD21201
                                               McNamee Hosea, P.A.
                                               6404 Ivy Lane, Ste 820
                                               Greenbelt, MD 22070
                                               Phone: (301) 441-2420
                                               Facsimile: (301) 982-9450
                                               jfasano@mhlawyers.com
                                               *Counsel for the Defendant*

                                          By: _____
                                               Christopher Rogan, Esq.
                                               Bar No. 431849
                                               Rogan Miller Zimmerman, PLLC
                                               50 Catoctin Circle, NE
                                               Suite 300
                                               Leesburg, VA 20176
                                               Telephone: (703) 777-8850
                                               crogan@rmzlawfirm.com
                                               *Counsel for the Intervenors*

**11/7/23 9 am**

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this _____ day of _____, 2023, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein.

                                                   _____
                                                   Maurice B. VerStandig

#5771864v2 084602/000002